# **<u>EXHIBIT H</u>**

## THIRD AMENDMENT TO PURCHASE AND SALE AGREEMENT

**THIS THIRD AMENDMENT TO PURCHASE AND SALE AGREEMENT** (this "Amendment" or "Third Amended PSA") is made and entered into as of January 6, 2025 by and between (i) Supor Properties Enterprises LLC; J Supor 136-1 Realty LLC; and Supor-172 Realty LLC (each a referred to as a "Seller" and collectively as the "Sellers"), and (ii) H Capital Holdings, LLC ("Purchaser"). Sellers and Purchaser are each referred to as a "Party" and collectively as the "Parties".

### Recitals

**WHEREAS**, Sellers and Purchaser are parties to that certain Purchase and Sale Agreement made and entered into as of August 15, 2024 (the "PSA"). A true and complete copy of the PSA is attached at **Schedule "A"** hereto.

**WHEREAS**, pursuant to the terms of the PSA, Sellers agreed to sell and Purchaser agreed to buy properties commonly known as 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 5.02 in block 151, lot 17.02 in block 137 and lot 1.02 in block 149) ("FER 1 Property"); 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1.07 in block 136) ("FER 2 Property"); and 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1 in block 172) ("FER 3 Property"), in the Town of Harrison, County of Hudson and State of New Jersey. FER 1 Property, FER 2 Property and FER 3 Property are collectively referred to as the "FER Properties".

**WHEREAS**, pursuant to the *Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief,* dated October 7, 2024, ECF #279, (the "Sale Order"), the PSA was amended, approved and authorized. A true and complete copy of the Sale Order is attached at **Schedule "B"** hereto.

**WHEREAS**, Sellers and Purchaser are parties to that certain Amendment to Purchase and Sale Agreement made and entered into as of November 25, 2024 (the "Second Amended PSA"). A true and complete copy of the Second Amended PSA is attached at **Schedule "C"** hereto.

### Agreement

**NOW, THEREFORE**, in consideration of the terms, conditions, representations, promises, and covenants set forth in this Amendment and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers and Purchaser hereby agree as follows:

321411974.5

1.	**Incorporation by Reference**. The statements and representations set forth in the Recitals above are fully affirmed by Sellers and Purchaser and incorporated herein with the same force and effect as if restated hereby.

2.	**Definitions**. To the extent terms used herein are not otherwise defined to the contrary, all defined terms used in this Amendment shall have the respective meaning ascribed to them in the PSA and Sale Order.

3.	**Acknowledgement and Affirmation**. Unless _specifically_ set forth herein, nothing contained herein shall be deemed to modify, nullify, discharge, or extinguish the obligations of Sellers or Purchaser under the PSA, Sale Order or Second Amended PSA. Except as may be _specifically_ set forth herein, the terms, conditions and obligations of the Sellers or Purchaser under the PSA, Sale Order and Second Amended PSA, and any written and executed amendments thereto: (a) have not been waived or modified by this Amendment; (b) remain unchanged; (c) are hereby ratified and affirmed in their entirety; and (d) are legally valid, binding and enforceable in accordance with their respective terms.

4.	**Extension of Closing Date and Payment of Extension Fee.** Section 10.1 of the PSA and Paragraph 43(ii) of the Sale Order, and Section 4 of the Second Amended PSA are amended as follows:

_The closing of the transaction described in this Agreement (the "Closing") shall occur on January 21, 2025, TIME OF THE ESSENCE, or such earlier date as agreed to in writing between Sellers and Purchaser (the date on which the Closing occurs is referred to herein as the "Closing Date"). Solely in exchange for Sellers' agreement to extend the Closing Date as set forth above, beginning January 7, 2025, and continuing on a daily basis until the Closing Date, Purchaser shall pay Sellers the sum of $32,000 per day (the "Extension Fee"). To fund such Extension Fee, on or prior to January 7, 2025, Purchaser shall deliver by wire transfer the sum of $448,000 to the Trust Account of Lender's attorney Kriss & Feuerstein LLP, representing the sum of $32,000 per day from January 7, 2025 to January 21, 2025 (the "Extension Fee Fund") and shall provide proof of same to Sellers upon funding the Extension Fee Fund. Payment of the Extension Fee Fund is TIME OF THE ESSENCE._

_The Extension Fee Fund shall be nonrefundable to Purchaser._

_The Extension Fee Fund may be disbursed from escrow by Kriss & Feuerstein LLP to Lenders and credited by Lenders against the interest component of Lenders' Allowed Secured Claim (as defined in the Sellers' First Amended Plan of Liquidation or Reorganization). If the Closing occurs prior to January 21, 2025, then the portion of the Extension Fee Fund that is payable after the Closing Date (and through January 21, 2025) shall be credited against the Purchase Price._

_If the Purchase and Sale Agreement is terminated as a result of a Purchaser Default, the entire Extension Fee Fund shall be retained by Lenders and credited by Lenders against the_

321411974.5

*interest component of Lenders' Allowed Secured Claim, for the benefit of Sellers, and as partial damages of such Purchaser Default as set forth in Section 12.3.*

*On January 7, 2025, Purchaser shall provide Sellers with written evidence demonstrating Purchaser's ability to pay the balance of the Purchase Price at Closing, including proof of liquid funds available to Purchaser equal to or greater than the balance of the Purchase Price.*

**5.** **Partial Release of Deposit.** The PSA, Sale Order and Second Amended PSA are amended as follows:

*The Additional Earnest Money Deposit ($1,200,000), Earnest Money Deposit ($4,800,000), and Second Additional Earnest Money Deposit ($2,407,500) (defined below) totaling $8,407,500 are collectively referred to as the "Deposit." Pursuant to the Second Amended PSA, the Escrow Agent has previously released $3,000,000 to the Lenders on November 26, 2024 (the "Released Deposit").*

*In exchange for Sellers' agreement to extend the Closing Date as set forth above, Purchaser authorizes the Escrow Agent to release an additional $3,000,000 of the Deposit to Lenders on January 7, 2025 (the "Additional Released Deposit"), which shall be credited by Lenders against the principal component of Lenders' Allowed Secured Claim (as defined in the Sellers' First Amended Plan of Liquidation or Reorganization). Additionally, Purchaser shall deposit an additional sum of $2,407,500.00 with the Escrow Agent on or before January 13, 2025 (the "Second Additional Earnest Money Deposit"). If the Second Additional Earnest Money Deposit is not delivered by January 13, 2025, it shall be deemed a Purchaser's Default under the PSA. Except in the case of a Seller Default under the Purchase and Sale Agreement, the Released Deposit, Additional Released Deposit and the Second Additional Earnest Money Deposit shall be nonrefundable to Purchaser. At Closing, the Released Deposit, Additional Released Deposit and Second Additional Earnest Money Deposit shall be credited against the Purchase Price. If the Purchase and Sale Agreement is terminated as a result of a Purchaser Default, the entire Released Deposit, Additional Released Deposit and Second Additional Deposit shall be retained by Lenders and credited by Lenders against the principal component of Lenders' Allowed Secured Claim, for the benefit of Sellers, and as partial damages of such Purchaser Default as set forth in Section 12.3.*

**6.** **Miscellaneous.**

**6.1** **Modifications.** This Amendment may not be amended, waived or modified except by an instrument in writing signed by the Parties hereto.

**6.2** **Governing Law.** Enforcement of this Amendment shall be construed in accordance with the laws of the State of New Jersey, its choice of law rules notwithstanding.

**6.3** **Construction of the Amendment.** The Parties hereto agree that the terms and language of this Amendment were the result of negotiations between the Parties, and, as a result, there shall be no presumption that any ambiguities in this Amendment shall be resolved against any Party. Any controversy over the construction of this Amendment shall be decided without regard to events of authorship or negotiation.

321411974.5

**6.4**   **Entire Agreement and Amendment.** This Amendment represents all of the terms and conditions of the agreement between the Parties with respect to the subject matter hereof. There have been no representations, warranties, promises, inducements or considerations of any kind given with respect to the transactions set forth herein except as are expressly memorialized in this Amendment.

**6.5**   **Headings.** Headings, titles and captions preceding the sections hereof are provided for convenience of reference and shall not be used to explain or to restrict the meaning, purpose or effect of any provision to which they refer.

**6.6**   **Binding Nature, Third Parties.** This Amendment is binding on the Parties and their successors, heirs, executors and assigns of each of them.

**6.7**   **Adequate Consideration.** The Parties hereby represent, confirm and acknowledge that execution of this Amendment is full, fair and ample consideration for the agreements, representations and covenants contained herein and for entering into, executing and performing every other agreement entered into by any of the Parties in connection with this Amendment.

**6.8**   **Counterparts.** This Amendment may be executed by one or more of the Parties to this Amendment on any number of separate counterparts and all such counterparts taken together shall be deemed to constitute one and the same instrument. This Amendment may be executed via facsimile or electronic signature.

**6.9**   **Severability.** Every provision of this Amendment is intended to be severable. If any term or provision of this Amendment is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such provision shall be adjusted, rather than voided, if possible, to achieve the intent of the Parties to the maximum extent possible. If any term or provision of this Amendment is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain in full force and effect.

**[Remainder of page intentionally left blank;
Signatures on following pages]**

321411974.5

THEREFORE, each of the undersigned, intending to be legally bound, has caused this Amendment to be executed and delivered in its name by a duly authorized officer or representative effective as of the date reflected above.

**SELLER:**

**Supor Properties Enterprises LLC**



By:
Name:
Title:

**SELLER:**

**J Supor 136-1 Realty LLC**

By:
Name:
Title:

**SELLER:**

**Supor-172 Realty LLC**

By:
Name:
Title:

**PURCHASER:**

**H Capital Holdings, LLC**

By:_____
Name:
Title:

321411974.5

**THEREFORE**, each of the undersigned, intending to be legally bound, has caused this Amendment to be executed and delivered in its name by a duly authorized officer or representative effective as of the date reflected above.

**SELLER:**

**Supor Properties Enterprises LLC**

By:_____
Name:
Title:

**SELLER:**

**J Supor 136-1 Realty LLC**

By:_____
Name:
Title:

**SELLER:**

**Supor-172 Realty LLC**

By:_____
Name:
Title:

**PURCHASER:**

**H Capital Holdings, LLC**

By:_____
Name: Anthony He
Title: Authorized Secretary

321411974.5

**The undersigned acknowledge and consent to the Amendment and agree to the provisions applicable to the Lenders in Paragraphs 4 and 5 above.**

**1000 FRANK E. RODGERS 1 LLC,**

A Delaware limited liability company

_____

Name: Brian Shatz

Title: Authorized Signatory

**1000 FRANK E. RODGERS 2 LLC,**

A Delaware limited liability company

_____

Name: Brian Shatz

Title: Authorized Signatory

321411974.5

# EXHIBIT A

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is made and entered into as of this 15th day of August, 2024 (the "Effective Date") by and between the entities identified on **Exhibit A** hereto (each, a "Seller", and collectively, the "Sellers"), and H Capital Holdings, LLC, a New Jersey limited liability company (the "Purchaser"). Seller and Purchaser are sometimes referred to herein individually as a "Party", and collectively as the "Parties".

**WHEREAS**, subject to the DILFs (defined below) Sellers are the owners of certain property located at 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 5.02 in block 151, lot 17.02 in block 137 and lot 1.02 in block 149) ("FER 1 Property"); 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1.07 in block 136) ("FER 2 Property"); and 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1 in block 172) ("FER 3 Property"), in the Town of Harrison, County of Hudson and State of New Jersey more particularly described on **Exhibit B** attached hereto. FER 1 Property, FER 2 Property and FER 3 Property are collectively referred to as the "Properties" (defined below).

**WHEREAS**, the Properties are subject of an Amended and Restated Redevelopment Agreement dated February 24, 2021, by and between Seller, the Harrison Redevelopment Agency (the "HRA"), the Town of Harrison (the "Town"), Supor 136-1 Realty LLC, Supor Properties Enterprises LLC and Supor-172 Realty LLC. (the "RDA"). The RDA was recorded with the Hudson County Register on April 20, 2021, at book 9552, page 39, index number 20210420010031740.

**WHEREAS**, 1000 Frank E. Rodgers 1, LLC ("FER 1 Lender") has recorded mortgages on the FER Properties to secure a certain mortgage loan. FER 1 Lender caused to be recorded the following deeds in lieu of foreclosure (collectively, the "DILFs") to 1000 Frank E. Rodgers Blvd Owner LLC (the "DILF Holder"), a single purpose entity owned or controlled by FER 1 Lender:

1. DILF for FER Property 1 recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006630 for stated consideration of $19,000,000 to DILF Holder;

2. DILF for FER Property 2 recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006640 for stated consideration of $500,000 to DILF Holder; and

3. DILF for FER Property 3 recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006650 for stated consideration of $5,500,000 to DILF Holder.

**WHEREAS,** Sellers contend, among other things, that: (i) the fair market value of the Properties, and related properties, exceeds the outstanding amounts due to FER 1 Lender and 1000 Frank E. Rodgers 2, LLC ("FER 2 Lender" and together with FER-1 Lender collectively, the "Lenders" and each such entity, a "Lender") and exceeds the consideration reflected in the DILFs, and (ii) the transfers of the Properties and related properties subject to the DILFs are subject to avoidance under applicable law ("Debtor Avoidance Claims").

1

#319616022.1

**WHEREAS** Sellers, affiliates of Sellers, and Lenders negotiated resolution of the Debtor Avoidance Claims and certain transactions including a sale of the Property on the terms set forth in the Restructuring Support Agreement dated April 2, 2024 (the "RSA").

**WHEREAS,** on April 2, 2024, Sellers and certain affiliates each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, District of New Jersey ("Bankruptcy Court"), which is jointly administered under Case Number 24-13427 (SLM) ("Bankruptcy Cases"). The debtors in the Bankruptcy Cases are Supor Properties Enterprises LLC; J Supor 136-1 Realty LLC; Supor-172 Realty LLC; Supor Properties Breiderhoft LLC; Supor Properties Devon LLC; Shore Properties Associates North LLC; Supor Properties 600 Urban Renewal, LLC; JS Realty Properties, LLC; and Supor Properties Harrison Avenue LLC (each a referred to as a "Debtor" and collectively as the "Debtors").

**WHEREAS,** each Debtor remains a Chapter 11 debtor in possession. No trustee or committee has been appointed in the Bankruptcy Cases.

**WHEREAS,** on April 12, 2024, the Debtors filed a motion to assume the RSA pursuant to 11 U.S.C. § 365. Bankruptcy Case ECF. No. 51. That motion was granted by Bankruptcy Court order dated May 21, 2024. Bankruptcy Case ECF. No. 115.

**WHEREAS,** on April 22, 2024, the Debtors filed a motion for an order *(I) (a) Approving the Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing Sale of Assets and (b) Granting Related Relief*. Bankruptcy (the "Sale Procedures Motion"). Case ECF. No. 58. The Sale Procedures Motion was granted by Bankruptcy Court order dated April 29, 2024 (the "Sale Procedures Order"). Bankruptcy Case ECF. No. 80. This Agreement is entered in accordance with the Sale Procedures Order.

**WHEREAS,** on May 6, 2024, the Debtors filed a Combined Disclosure Statement and Plan of Reorganization and/or Liquidation for Debtors (the "Plan"). Bankruptcy Case ECF. No. 92.

**WHEREAS,** on May 30, 2024, the Bankruptcy Court entered an order *(I) Approving the Disclosure Statement Contained in the Combined Plan and Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Confirmation Notice; and (IV) Granting Related Relief*. Bankruptcy Case ECF. No. 133 (the "Order Approving the Disclosure Statement").

**WHEREAS,** a hearing to consider confirmation of the Plan is scheduled to be held before the Bankruptcy Court on July 23, 2024.

**WHEREAS,** on May 6, 2024, the Debtors filed a *Motion Seeking Entry of an Order Authorizing the Rejection of Certain Unexpired Leases and Granting Related Relief* (the "Rejection Motion") seeking to reject the Affiliate Leases (defined below), effective on the date of the closing of a Sale Transaction as to the applicable Debtor Property(ies). Bankruptcy Case ECF. No. 93. A hearing to consider the Rejection Motion is scheduled to be held before the Bankruptcy Court on July 23, 2024.

2

#319616022.1

**WHEREAS**, Purchaser is the "Successful Bidder" (as such term is defined in the Sale Procedures Motion, as hereinafter defined), and accordingly, Sellers desire to sell the Properties (defined below) to Purchaser, and Purchaser desires to purchase the Properties from Sellers, on the terms set forth in this Agreement, in accordance with and pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").

**NOW, THEREFORE**, in consideration of the mutual covenants set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

**ARTICLE I**
**DEFINITIONS**

**1.1**    Definitions. In addition to the terms defined elsewhere in this Agreement, the following terms when used in this Agreement shall have the meanings set forth in this Section 1.1. Any capitalized term in the Agreement that is not defined herein shall have the meaning ascribed to it in the Plan.

"Affiliate" means, with respect to the Person in question, any other Person that, directly or indirectly, (i) owns or controls fifty percent (50%) or more of the outstanding voting and/or equity interests of such Person, or (ii) controls, is controlled by or is under common control with, the Person in question. For the purposes of this definition, the term "control" and its derivations means having the power, directly or indirectly, to direct the management, policies or general conduct of business of the Person in question, whether by the ownership of voting securities, contract or otherwise.

"Affiliate Leases" means those master leases or sub-leases regarding the Property listed at **Exhibit C** hereto.

"Affiliate Tenants" means those tenants or subtenants identified in the Affiliate Leases.

"Anti-Terrorism Laws" means Executive Order 13224 issued by the President of the United States, the USA PATRIOT Act, and all other Applicable Law addressing or in any way relating to terrorist acts and acts of war.

"Applicable Law" means (i) all federal, state, and local statutes, laws, common law, rules, regulations, ordinances, codes or other legal requirements of any Governmental Authority, stock exchange, board of fire underwriters and similar quasi-governmental authority, and (ii) any judgment, injunction, order or other similar requirement of any court or other adjudicatory authority, in effect at the time in question and in each case to the extent the Person or property in question is subject to the same.

"Assumed Liabilities" has the meaning set forth in Section 2.4 hereof.

"Business Day(s)" shall mean every day other than (i) Saturdays, (ii) Sundays, (iii) all days observed by the Federal Government of the United States as legal holidays and (iv) all days on which commercial banks in New York State are required by law to be closed.

3

#319616022.1

"Buyer's Premium" means the 1% fee due to CBRE and to be paid by Purchaser at closing as set forth in the Sale Procedures Motion. The Buyer's Premium shall be in addition to the Purchase Price.

"Casualty" has the meaning set forth in Section 13.1 hereof.

"Closing" has the meaning set forth in Section 10.1 hereof.

"Closing Date" has the meaning set forth in Section 10.1 hereof.

"Closing Statement" means a title closing statement.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, and any regulations, rulings and guidance issued by the Internal Revenue Service.

"Condemnation" has the meaning set forth in Section 13.2 hereof.

"Contracts" means, collectively, the Leases and Executory Contracts and any written or oral note, bond, mortgage, contract, license, lease, sublease, covenant, commitment, power of attorney, proxy, indenture, or other binding agreement or arrangement.

"Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

"Cure Amounts" or "Cure Costs" mean the aggregate monetary sum required to be paid to the counterparties under the Purchased Contracts to be assigned by the applicable Sellers and assumed by Purchaser in accordance with Section 2 hereof, not to exceed Two Hundred Fifty Thousand Dollars ($250,000.00).

"Deeds" has the meaning set forth in Section 10.2.1(a) hereof.

"Earnest Money" means, at the time in question, the amounts then deposited with Escrow Agent (and any additional amounts as may be deposited with Escrow Agent pursuant to Section 10.1 hereof), together with all interest and any other amounts earned thereon.

"Earnest Money Escrow Agreement" has the meaning set forth in Section 3.2.1 hereof.

"Environmental Claims" means all claims for reimbursement, remediation, abatement, removal, clean up, contribution, personal injury, property damage or damage to natural resources made by any Governmental Authority or other Person arising from or in connection with the (i) presence or actual or potential spill, leak, emission, discharge or release of any Hazardous Substances over, on, in, under or from any one or more of the Properties, or (ii) violation of any Environmental Laws with respect to any one or more of the Properties.

"Environmental Laws" means any Applicable Laws which regulate the manufacture, generation, formulation, processing, use, treatment, handling, storage, disposal, distribution or transportation, or an actual or potential spill, leak, emission, discharge or release of any Hazardous Substances, pollution, contamination or radiation into any water, soil, sediment, air or other

4

environmental media, including, without limitation, (a) the Comprehensive Environmental Response Compensation and Liability Act (42 U.S.C. §§ 9601 et seq.) ("CERCLA"); (b) the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901 et seq.) ("RCRA"); (c) the National Environmental Policy Act (42 U.S.C. §§ 4321 et seq. (1969), as amended); (d) the Emergency Planning and Community Right to Know Act (42 U.S.C. §§ 11001 et seq.); (e) the Clean Air Act (42 U.S.C. §§ 7401 et seq.); (f) the Clean Water Act (33 U.S.C. §§ 1251 et seq.); (g) the Toxic Substances Control Act (15 U.S.C. §§ 2601 et seq.); (h) the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101 et seq.); (i) any state, county, municipal or local Applicable Laws similar or analogous to the federal statutes listed in parts (a)-(h) of this definition; and (j) any rules, regulations, directives, or orders pursuant to or implementing the Applicable Laws listed in parts (a)-(i) of this definition.

"Executory Contract Order" means a Final Order determining the Assumption/Rejection Motion.

"Executory Contract" means any existing executory contract or unexpired lease of personal property between any Seller and any other Person or Persons regarding the Properties. For avoidance of doubt, the RDA is an Executory Contract.

"Final Order" means an Order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

"Governmental Authority" means any federal, state or local government or other political subdivision thereof, including, without limitation, any Person exercising executive, legislative, judicial, regulatory or administrative governmental powers or functions, in each case to the extent the same has jurisdiction over the Person or property in question. For the avoidance of doubt, Governmental Authority shall include all Taxing Authorities.

"Hazardous Substances" means all substances, chemicals, wastes, materials, pollutants, or contaminants defined as Hazardous Substances, Oils, Pollutants or Contaminants in the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. § 300.5, or defined as hazardous or toxic by, or regulated as such under, any applicable Environmental Law, including RCRA hazardous wastes, CERCLA hazardous substances, asbestos, toxic mold, and polychlorinated biphenyls.

"Land" has the meaning set forth in Section 2.1.1 hereof.

"Lease" means, other than an Affiliate Lease, any lease, master lease, sublease or sub-sublease, letting, license, sublicense or sub-sublicense, concession, or other agreement (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy, all or any portion of the Property, and every modification, amendment, or other agreement

5

#319616022.1

(whether written or oral) relating to such lease, license, or other agreement entered into in connection with such lease, license, or other agreement, whether in existence before or after the Petition Date. A list of "Unexpired Leases" is attached at **Exhibit D** hereto.

"Liability" means any liability, obligation, damage, loss, diminution in value, cost or expense of any kind or nature whatsoever, whether accrued or unaccrued, actual or contingent, known or unknown, foreseen or unforeseen.

"Licenses and Permits" has the meaning set forth in Section 2.1.7 hereof.

"Lien" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in Section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

"Material Casualty" has the meaning set forth in Section 13.1.1 hereof.

"Material Condemnation" has the meaning set forth in Section 13.2.1 hereof.

"Order" means an order or judgment entered in the Bankruptcy Case by the Bankruptcy Court as entered on the Docket as well as any writ, judgment, decree, award, ruling, subpoena, verdict, injunction or similar order of any Governmental Authority (in each such case whether preliminary or final).

"Permitted Exceptions" has the meaning set forth in Section 5.3 hereof.

"Person" means any natural person, corporation, general or limited partnership, limited liability company, association, joint venture, trust, estate, Governmental Authority or other legal entity, in each case whether in its own or a representative capacity.

"Petition Date" means April 2, 2024, the date upon which the Debtors filed petitions commencing the Bankruptcy Case.

"Plans and Specifications" has the meaning set forth in Section 2.1.8 hereof.

"Properties" has the meaning set forth in Section 2.1 hereof.

"Prorations" has the meaning set forth in Section 11.1 hereof.

"Retained Liabilities" has the meaning set forth in Section 2.5 hereof.

"Release" means any release, spill, emission, discharge, leaking, leaching, pumping, pouring, dumping, emptying, injection, deposit, disposal of or migration into or through the indoor or outdoor environmental medium or into or out of any property.

"Rejected Contract(s)" means those Executory Contracts and Leases which are rejected by the Debtors pursuant to Section 365 of the Bankruptcy Code.

#319616022.1

"Rejection Claim" means any Claim under the Bankruptcy Code that arises in favor of the Third Party to any Executory Contract or Lease that is a Rejected Contract.

"Sale Order" shall mean the Final Order of the Bankruptcy Court, substantially similar to the form of Sale Order attached at **Exhibit E** hereto, approving the sale of the Property free and clear of all liens, encumbrances and claims other than the Permitted Exceptions.

"Tax Appeal" means those certain actions as set forth in **Schedule 3**.

"Taxes" means any federal, state, local or foreign, real property, personal property, sales, use, room, occupancy, ad valorem or similar taxes, assessments, levies, charges or fees imposed by any Governmental Authority on Sellers with respect to the Properties, including any assessment, interest, penalty or fine with respect thereto, but expressly excluding any (i) federal, state, local or foreign income, capital gain, gross receipts, capital stock, franchise, profits, estate, gift or generation skipping tax or (ii) transfer, documentary stamp, recording or similar tax, levy, charge or fee incurred with respect to the transaction described in this Agreement.

"Tenant" means a Person counterparty to a Lease entered into with a Seller.

"Title Commitments" has the meaning set forth in Section 5.1 hereof.

"Title Company" means Cortes & Hay

"Unpermitted Exceptions" has the meaning set forth in Section 5.3 hereof.

1.2     Unless the context clearly indicates to the contrary, the following rules shall apply to the construction of this Agreement:

1.2.1    All references herein to articles or sections without reference to a specific document are references to articles or sections of this Agreement.

1.2.2    The terms "hereby", "hereof", "hereto", "herein", "hereunder" and any similar terms, as used in this Agreement, refer to this Agreement in its entirety and not the article or section of this Agreement in which they appear.

1.2.3    The word "including" means "including but not limited to."

1.2.4    All Recitals and Exhibits to this Agreement, including any amendments and supplements hereto, are hereby incorporated herein and made a part of this Agreement.

## ARTICLE II
## THE PROPERTIES AND LIABILITIES

2.1     Description of the Properties. Subject to the terms set forth in this Agreement, including entry of the Sale Order by the Bankruptcy Court, at the Closing, Sellers shall sell, convey, transfer, assign and deliver to Purchaser, and Purchaser shall purchase and accept from Sellers, all right, title and interest of Sellers in and to the properties and assets set forth in this Section 2.1 (collectively, the "Properties"):

#319616022.1

2.1.1.  all of the fee simple interest in, to and under the land of FER 1 Property, FER 2 Property and FER 3 Property, described in **Exhibit B** attached hereto, (collectively, the "Land");

2.1.2.  all of Seller's right, title and interest in, to and under all privileges and easements appurtenant to the Land, including, without limitation, all of Seller's right, title and interest in, on and under the Land, all easements, rights of way or other appurtenances of Seller used in connection with the beneficial use and enjoyment of the Land and all assignable permits, licenses, approvals and authorizations issued by any Governmental Authority (collectively, the "Appurtenances");

2.1.3.  all of Seller's right, title and interest in and to all improvements and fixtures located on the Land, including, without limitation, all buildings and structures located on the Land (collectively, the "Improvements");

2.1.4.  subject to the provisions of Section 2.2 hereof, all of Seller's right, title and interest in and to the Executory Contracts and Unexpired Leases identified on **Schedule 1** hereto;

2.1.5.  subject to the provisions of Section 2.2 hereof, all leases and purchase money security agreements for any equipment, machinery, vehicles, furniture or other personal property located at the Properties, together with all deposits made thereunder, to the extent the same and such deposits are transferable or the Parties obtain any consent necessary to effectuate such a transfer (collectively, the "Equipment Leases") each if which are referenced on **Schedule 2** attached hereto;

**2.2**    Executory Contracts and Unexpired Leases.

2.2.1   On the Closing Date, pursuant to a Final Order granting the Rejection Motion, the Affiliate Leases shall be deemed rejected pursuant to Section 365(a) of the Bankruptcy Code and terminated and Purchaser shall take title to the Property free and clear of the Affiliate Leases and any rights, claims or interests of any Affiliate Tenants. Purchaser shall have no liability for any Rejection Claim of an Affiliate Tenant.

2.2.2   Purchaser herby designates the Executory Contracts and Unexpired Leases, Equipment Leases, identified on **Schedules 1-2** hereto as "Purchased Contracts" under this Agreement. Any Executory Contracts and Unexpired Leases, Equipment Leases that are not identified on **Schedules 1-2** hereto shall be deemed an "Excluded Contract" under this Agreement. Any Excluded Contract may be assumed or rejected by Sellers in their sole discretion.

2.2.3   Within seven (7) days after the execution of this Agreement, Purchasers shall deliver to the Town of Harrison the Requirements for Consideration of Assignment of the RDA, as identified in Exhibit F.

2.2.4   Within seven (7) days after the execution of this Agreement, the Sellers shall file a motion regarding the proposed assumption or rejection of Purchase Contracts and Excluded Contracts (the "Assumption/Rejection Motion"). The Assumption/Rejection Motion shall provide all applicable counterparties with (i) notice of the proposed treatment of their respective executory contract(s) or unexpired lease(s); (ii) the amount to be paid, if any, to cure any existing default(s) – the Cure Costs; (iii) establishing deadlines for objection to the proposed treatment of the

8

#319616022.1

executory contract/unexpired lease as set forth in the Assumption/Rejection Motion, including payment of the Cure Costs; and (iv) establishing a hearing date for the resolution of any filed objections to the Assumption/Rejection Motion.

2.2.5   Subject to entry of a Final Order on the Assumption/Rejection Motion and the Sale Order, on the Closing Date the Purchased Contracts shall be deemed assumed by the Seller and assigned to Purchaser pursuant to Sections 365(b)(l)(A) and (B) and 365(f) of the Bankruptcy Code. In addition to the Purchase Price, Purchaser shall assume all obligations and Liabilities under the Purchased Contracts, including any Cure Amounts allowed by Final Order. For the avoidance of doubt, after the Closing Sellers shall not be responsible for compliance with any Purchased Contract and shall not be responsible for any costs associated therewith. If there are any costs or fees associated with the assignment of a Purchased Contract to Purchaser, Purchaser shall be responsible for payment of all such costs and fees. All Cure Costs shall be the responsibility of Purchaser, in addition to the Purchase Price and payment of Cure Costs shall not be credited/deducted from the Purchase Price.

2.2.6   Purchaser shall have no Liability for any Cure Costs or Rejection Claim of a counterparty to an Excluded Contract.

2.2.7   Notwithstanding the foregoing, so long as an Excluded Contract has not been rejected by the Sellers pursuant to Section 365 of the Bankruptcy Code and Final Order of the Bankruptcy Court, Sellers shall, upon written request by Purchaser, seek to assign such Excluded Contract to Purchaser, and Purchaser shall assume the same in accordance with Sections 2.2 hereof.

**2.3**   Cure Costs. Subject to a Final Order on the Assumption/Rejection Motion and the Sale Order, Cure Costs shall be paid (or in the case of a dispute, the disputed amount escrowed with the Escrow Agent pursuant to an escrow arrangement reasonably acceptable to Sellers and Purchaser) at the Closing.

**2.4**   Assumed Liabilities. At Closing, Purchaser shall assume all Liabilities arising or occurring from and after the Closing with respect to the Properties and the Purchased Contracts, but expressly excluding the Retained Liabilities (all Liabilities, except for the Retained Liabilities, shall be referred to herein as "Assumed Liabilities").

**2.5**   Retained Liabilities. At Closing, Sellers shall retain all Liabilities arising or occurring prior to the Closing Date with respect to the Properties, the Purchased Contracts or the Excluded Contracts (the "Retained Liabilities").

**2.6**   Survival. The Parties rights and obligations under this Article II shall survive the Closing.

**ARTICLE III**
**PURCHASE PRICE**

**3.1**   Purchase Price. The purchase price for the Properties is Forty-Eight Million and 00/100 Dollars ($48,000,000.00) (the "Purchase Price"), as same has been allocated by Purchaser in its Bid among FER 1 Property, FER 2 Property, and FER 3 Property and as set forth herein in **Schedule 4**, as adjusted by the prorations and adjustments provided elsewhere in this Agreement.

#319616022.1

**3.2**     Earnest Money.

3.2.1.   Earnest Money Deposit. Prior to 5:00 pm eastern time on Wednesday, August 14, 2024, Purchaser shall deposit with Escrow Agent the sum which is equal to ten percent (10%) of the Purchase Price (the "Earnest Money Deposit"). The Earnest Money Deposit shall be held by Escrow Agent in escrow as earnest money pursuant to an escrow agreement, entered into among Sellers, Purchaser and Escrow Agent (the "Earnest Money Escrow Agreement"). The Earnest Money Deposit shall be maintained by the Escrow Agent as to comply with the requirements of the Bankruptcy Court and the Sale Procedures Order. Except as specifically set forth in this Agreement or in the Sale Order, the Earnest Money Deposit shall be nonrefundable to Purchaser.

3.2.2.   Disbursement of Earnest Money to Sellers. At Closing, the Earnest Money Deposit shall be applied to the Purchase Price. At Closing, Escrow Agent is authorized and directed to disburse, and Purchaser shall otherwise cause Escrow Agent to disburse, the Earnest Money to Sellers or in such manner as Sellers shall instruct Escrow Agent, and Purchaser shall receive a credit against the Purchase Price in the amount of the Earnest Money disbursed to Sellers. If this Agreement is terminated for any reason and Purchaser is not entitled to a refund of the Earnest Money Deposit pursuant to the express provisions of this Agreement, the Earnest Money Deposit shall be disbursed to Sellers. This Section 3.2.2 shall survive the termination of this Agreement.

**3.3**     Payment of Purchase Price. At Closing, Purchaser shall pay to Sellers, in immediately available funds, an amount equal to the Purchase Price as adjusted by the prorations and adjustments provided elsewhere in this Agreement and less the Earnest Money Deposit.

**3.4**     Like-Kind Exchange.

Notwithstanding anything to the contrary in this Agreement, each Party acknowledge and agrees that the other Party or Parties (as the case may be) has the right to designate this transaction to qualify as a tax-free exchange under Section 1031 of the Code, and that Purchaser shall have the right to assign this Agreement to a "qualified intermediary" (as defined in Treas. Reg. § 1.1031(k)-1(g)(4) of the Code) or such other entity or entities as is necessary to carry out a 1031 Exchange. Each Party shall execute and deliver such documents as may reasonably and customarily be required to complete the transactions contemplated by any such tax-free exchange, which are in form and substance reasonably acceptable to the other applicable Parties, and otherwise cooperate in all reasonable respects with respect to such tax-free exchange, provided that (i) Sellers shall not be required to take title to any property, and (ii) neither such tax-free exchange nor Sellers' cooperation therewith shall result in any delay to the Closing, nor the imposition of any cost or liability upon Sellers or Purchaser, as the case may be.

**ARTICLE IV**
**CONTINGENCIES**

**4.1**     No Contingencies. The Purchaser's obligation to close title herein is expressly conditioned on assignment of the RDA to Purchaser Otherwise, Purchaser acknowledges and agrees that Purchaser has completed all of its due diligence investigations with respect to the Properties and is satisfied with the same. For the avoidance of doubt, it is expressly understood and agreed to by Purchaser that there is no due diligence or financing contingency, or other contingency under this

10

#319616022.1

Agreement, which gives Purchaser a right of termination. Purchaser's only termination rights are set forth in Sections 5.3, 5.4, 12.1, 13.1.1, 13.2.1 hereof.

## ARTICLE V
## TITLE TO THE PROPERTY

5.1    Title Commitments. Within ten (10) days of the Effective Date of this Agreement, Purchaser shall obtain at Purchaser's sole cost and expense, a commitment (or commitments separately as to each FER 1 Property, FER 2 Property, and FER 3 Property) for an owner's title insurance policy (or policies, as the case may be) from a title company of its choosing for the Properties (collectively, the "Title Commitment").

5.2    Exceptions to Title. Except as provided in this Agreement or otherwise accepted by Purchaser in writing, the sale of the Properties to Purchaser hereunder shall be subject to the Permitted Exceptions defined below but otherwise free and clear of any interest or liens in accordance with the Sale Order.

5.3    Permitted Exceptions and Unpermitted Exceptions. Within five (5) days of receipt of the Title Commitment, Purchaser shall give written notice to Sellers (the "Exception Notice") of all of Purchaser's exceptions to title which Purchaser is unwilling to take title subject to (the "Unpermitted Exceptions"). Any exception to title not raised as an Unpermitted Exception shall be deemed Permitted Exceptions. Other than Permitted Exceptions, Sellers shall notify Purchaser within seven (7) Business Days after receipt of the Exception Notice whether it will cure the matters set forth therein which Purchaser has indicated it is unwilling to accept title subject to. If Sellers notify Purchaser that Sellers will not cure all such other matters, then, within five (5) Business Days thereafter, Purchaser shall, by notice to Sellers either, elect to terminate this Agreement or accept such matters as Permitted Exceptions; and, if Purchaser does not notify Sellers that it has elected to accept such matters, Purchaser shall be deemed to have elected to accept title subject to such matters without any reduction to the Purchase Price. Purchaser shall cause copies of all updates and/or continuations of the Title Commitments to concurrently be delivered to Sellers' attorneys. Purchaser acknowledges and agrees that Purchaser shall be obligated to take title to the Properties and complete the Closing subject to all Permitted Exceptions.

5.4    Failure to Cure. Sellers shall have until the Closing Date (as the same may be adjourned, extended, or postponed by Sellers or Purchaser pursuant to the terms hereof) to cure any Unpermitted Exceptions. In the event that Sellers shall be unable to deliver title as required under this Article V, including without limitation, the curing of any Unpermitted Exceptions, Purchaser's sole and exclusive right shall be either to (i) terminate this Agreement, in which case the Earnest Money Deposit shall be refunded to Purchaser and the Parties shall have no further recourse, rights or obligations under this Agreement, except those which expressly survive such termination, or (ii) proceed to Closing pursuant to this Agreement and accept title to the Properties subject to the Unpermitted Exceptions, which thereafter shall be deemed to constitute Permitted Exceptions without offset or deduction from the Purchase Price. Notwithstanding anything to the contrary set forth in this Agreement, Sellers shall have the right extend the Closing Date for a period of up to sixty (60) days in order to effect cure of any Unpermitted Exceptions.

#319616022.1

5.5      Conveyance of the Properties. At Closing, Sellers shall convey insurable fee simple title (as determined by the Title Company) to the Properties, subject to all Permitted Exceptions and otherwise in accordance with the terms of the Sale Order.

**ARTICLE VI**
**CONDITION OF THE PROPERTY**

**6.1**      Remediation Activities and Permits.

6.1.1.   Current Regulatory Status of Property.  A summary of the regulatory history and environmental condition of the Properties is set forth in the informational documents listed in **Exhibit G**, which Purchaser acknowledges receiving from Seller or its consultants prior to the execution of this Agreement.

6.1.2.   Remediation Activities.  Purchaser shall be solely responsible at its sole cost and expense for completing any required remediation of environmental conditions at the Properties which may exist as of the Closing Date and which may arise thereafter ("**Remediation Activities**").

6.1.3.   Remedial Action Permits/ Remedial Action Outcome.   Purchaser shall at its sole cost and expense obtain and comply with the terms of any Remedial Action Permits required to be issued by NJDEP pursuant to N.J.A.C. 7:26C-7.1 et seq. with respect to the Properties, including but not limited to maintenance of any engineering controls required for remediation of soils at FER 1 Property, FER 2 Property, and FER 3 Property, individually, and the Properties, collectively, submittal of any certifications regarding inspection and maintenance of such engineering controls, the establishment and maintenance of any financial assurances required to ensure ongoing inspection and maintenance of such engineering controls, and compliance with the terms of any Classification Exception Areas/Well Restriction Areas (CEA/WRAs) established for the Properties, and shall obtain a Site wide Remedial Action Outcome (RAO) for the Properties.  For the avoidance of doubt, after the Closing Date, Sellers shall not be responsible for the costs of compliance with any Remedial Action Permit issued by NJDEP for FER 1 Property, FER 2 Property, and/or FER 3 Property, individually, and/or the Properties, collectively, for obtaining or maintaining a RAO for FER 1 Property, FER 2 Property, and/or FER 3 Property, individually, and/or the Properties, collectively, or for compliance with any other requirements established under Environmental Laws applicable to the FER 1 Property, FER 2 Property, and FER 3 Property, individually, and the Properties, collectively.

**6.2**      Release and Indemnity.  By accepting Sellers' deeds at Closing, Purchaser irrevocably waives and releases, on behalf of Purchaser, Purchaser's agents, Purchaser's affiliates, agents, and all successors in title to the Properties, any claims against Sellers (and against Sellers' members, managers, officers, representatives) as owner, operator or otherwise, arising out of or in connection with any conditions, including environmental and subsurface conditions, whether known or unknown, latent or apparent, and whether such claims are based on or sound in contract, tort, statute, common law liability, contribution, indemnity, strict liability or any other theory or cause of action. Further, Purchaser shall indemnify, defend and hold Sellers harmless in respect of any and all claims, proceedings, losses, damages, liabilities and expenses, whether or not due and payable, asserted against, incurred or suffered by Sellers due to (i) the negligent, improper or

12

#319616022.1

ineffective maintenance of any capping engineering controls required for remediation of the soils at the Properties which Purchaser is obligated to maintain pursuant to this Agreement; (ii) the failure to submit any required certifications and establish and maintain financial assurances to ensure ongoing inspection and maintenance of all engineering controls as required by any Soils Remedial Action Permit; (iii) post-Closing changes in soil remediation standards by an order of magnitude or greater than the soil remediation standards in effect as of the Closing, as set forth at N.J.S.A. 58:10B-13(e), or any obligation to remediate the Properties to such more stringent standards; (iv) Purchaser's failure to comply with the conditions of any Groundwater Remedial Action Permit and requirements of any CEA/WRA; or (v) an environmental condition alleged to have arisen after Closing or from the exacerbation after Closing of a condition of the Properties that existed prior to Closing.

**6.3**    <u>'AS-IS', 'WHERE IS' Condition</u>.    Purchaser acknowledges and agrees that (a) the purchase of the Properties shall be on an "As Is", "Where Is", "With All Faults" basis, subject to wear and tear from the Effective Date until Closing Date, and (b) except as expressly set forth in this Agreement, Seller has no obligation to repair any damage to or defect in the Properties, replace any of the Properties or otherwise remedy any matter affecting the condition of the Properties. Upon Closing, Purchaser shall assume the risk that adverse matters, including but not limited to, construction defects and adverse physical and environmental conditions, may not have been revealed by Purchaser's investigations, and Purchaser, upon Closing, except as otherwise expressly set forth in this Agreement, shall be deemed to have waived, relinquished and released Sellers from and against any and all claims, demands, causes of action (including causes of action in tort), losses, damages, liabilities, costs and expenses (including attorneys' fees and court costs) of any and every kind or character, known or unknown, which Purchaser might have asserted or alleged against Sellers at any time by reason of or arising out of any latent or patent construction defects or physical conditions, violations of any applicable laws (including, without limitation, any environmental laws) and any and all other acts, omissions, events, circumstances or matters regarding the Properties. Seller agrees to maintain the Properties in substantially the same condition as it is in as of the Effective Date of this Agreement.

**6.4**    <u>No Reliance on Seller</u>.    Purchaser is entering into this Agreement on the basis of Purchaser's own independent evaluation and investigation, and Purchaser does not rely on any statement or representation by Sellers or any of Sellers' representatives. Notwithstanding anything to the contrary, Sellers are not making, and specifically disclaim, any representations, warranties or covenants of any kind or character, express or implied, with respect to the operational, environmental or physical condition of the Properties, including, but not limited to, representations, warranties or covenants as to: (a) matters of title, zoning, permitted uses, tax consequences, physical or environmental conditions (including but not limited to Purchaser's phase one environmental assessment), availability of access, ingress or egress, operating projections, valuations, governmental approvals, governmental regulations or any other matter or thing relating to or affecting the operational, environmental or physical condition of the Properties; (b) the value, condition, merchantability, marketability, profitability, suitability or fitness for a particular use or purpose of the Properties; (c) the Properties' compliance or non-compliance with Environmental Laws applicable to the Properties or the presence or absence of hazardous or toxic materials, wastes or substances on, at or under the Properties or migrating to or from the Properties; or (d) the manner, quality, state of repair or lack of repair of the Properties.

#319616022.1

**6.5**     Survival. The provisions of this Article VI shall survive Closing.

## ARTICLE VII
## REPRESENTATIONS AND WARRANTIES

**7.1**     Seller's Representations and Warranties. Sellers hereby make the following representations and warranties to Purchaser, upon which Sellers acknowledge and agree that Purchaser is entitled to rely.

7.1.1.   Organization and Authority. Subject to approval of the Bankruptcy Court and entry of the Sale Order, (i) Sellers have full power and authority to execute and deliver this Agreement and all other documents to be executed and delivered by Sellers pursuant to this Agreement (collectively, the "Sellers Documents"), and to perform the respective obligations of Sellers under each of the Sellers Documents, (ii) the execution and delivery by the signer on behalf of each party comprising Seller of each of the Sellers Documents, and the performance by each party comprising Seller of its obligations under each of the Sellers Documents, has been (or as of Closing will be) duly and validly authorized by all necessary action by each party comprising Seller, and (iii) each of the Sellers Documents, when executed and delivered, will constitute the legal, valid and binding obligations of Seller enforceable against the Parties comprising Seller in accordance with their terms, except to the extent Purchaser is in default thereunder.

7.1.2   No Conflicting Agreements. The execution and delivery by Seller of, and the performance of and compliance by Seller with, the terms and provisions of this Agreement, do not (a) conflict with, or result in a breach of, the terms, conditions or provisions of, or constitute a default under, Seller's by-laws, or any other agreement or instrument to which Seller is a Party or by which all or any part of the Property is bound, (b) violate any restriction, requirement, covenant or condition to which all or any part of the Property is bound, (c) constitute a violation of any applicable code, resolution, law, statute, regulation, ordinance or rule applicable to Seller or the Property, (d) constitute a violation of any judgment, decree or order applicable to Seller or specifically applicable to the Property, or (e) require the consent, waiver or approval of any third party.

7.1.3   Title. To the best of Seller's knowledge, there are no unrecorded or undisclosed documents or other matters which affect title to the Property.

7.1.4   FIRPTA. Seller is not a "foreign person" within the meaning of Section 1445(f) of the Code.

7.1.5   Condemnation Proceedings/Property Damage. To the best of Seller's knowledge, there are no presently pending or, to the best of Seller's knowledge, contemplated proceedings to condemn the Property or any part of it.

7.1.6   Option to Purchase. Seller has not granted any option or other right to purchase or otherwise acquire any portion of the Property, or any interest therein, to any party except Purchaser pursuant to this Agreement and there are no existing and outstanding agreements affecting or relating to the Property, including, but not limited to, agreements for the sale of the Property (or any portion thereof), option agreements, leases, licenses, or powers of attorney, to which the Seller is a party or by which the Seller or the Property is bound.

14

#319616022.1

7.1.7   Environmental Matters.

(a)   Seller has delivered to Purchaser copies of all material, non-privileged reports, assessments, audits, studies, analyses, and tests initiated by or on behalf of or in the possession of Seller pertaining to the environmental condition of, or any Hazardous Substance in, on, or under, the Property or concerning compliance by Seller with Environmental Laws.

(b)   To the knowledge of Seller, Seller does not operate, or permit to be operated, any business at the Property which has a North American Industry Classification System ("NAICS") number, which is subject to the New Jersey Industrial Site Recovery Act, N.J.S.A. 13:1K-6, et seq., and the regulations promulgated thereunder ("ISRA").

(c)   This Section 7.1.7 contains the sole and exclusive representations and warranties of Seller with respect to matters arising under Environmental Laws or any other environmental matters.

7.1.8   Anti-Terrorism. None of Sellers' property or interests is subject to being "blocked" under any Anti-Terrorism Laws and neither Sellers nor any Person holding any direct or indirect interest in Sellers is in violation of any Anti-Terrorism Laws. Neither Sellers nor any of their affiliates, nor any of their respective partners, members, shareholders or other equity owners, and none of their respective employees, officers, directors, representatives or agents (collectively, a "Seller Party") is, nor will they become: (a) a person or entity, or owned or controlled by a person or entity, with whom U.S. persons or entities are restricted from doing business, or with whom U.S. persons or entities may transact business only subject to the imposition of significant fines and penalties, under regulations of the Office of Foreign Asset Control ("OFAC") of the U.S. Department of Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order or other governmental action; (b) designated by the President or OFAC pursuant to the Trading with the Enemy Act, 50 U.S.C. App. § 5, the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06, the USA Patriot Act of 2001, Pub. L. No. 107-56, Executive Order 13224 (September 23, 2001), or any executive orders of the President issued pursuant to such statutes; or (c) controlled by the government of any country or person that is subject to an embargo by the U.S. government, including without limitation OFAC, that prohibits Purchaser from conducting the business activities contemplated by this Agreement with Sellers. Sellers, including their Seller Parties, (a) is in compliance with, (b) is not under investigation by any governmental authority; (c) has not been charged with, convicted of, or assessed civil or criminal penalties; and (d) has not had any of its funds seized or forfeited in any action, for violation of any applicable anti-money laundering laws, including without limitation, the USA Patriot Act, the Bank Secrecy Act, 31 U.S.C. §5311 et seq., the Trading with the Enemy Act, 50 U.S.C. App. §1 et seq., Executive Order 13224 (September 23, 2001), the International Emergency Economic Powers Act, 50 U.S.C. §1701 et seq., and the sanction regulations promulgated pursuant thereto by OFAC, and laws relating to prevention and detection of money laundering in 18 U.S.C. §§ 1956-57.

7.1.9   Survival. All of the representations, warranties, and covenants made by Seller with regard to Environmental Matters contained in Section 7.1.7 survive Closing.

#319616022.1

7.2    Purchaser Representations and Warranties. Purchaser hereby makes the following representations and warranties to Sellers, upon which Purchaser acknowledges and agrees that Sellers are entitled to rely.

7.2.1    Organization and Authorization. Purchaser has full power and authority to enter into this Agreement, to perform this Agreement and to consummate the transactions contemplated hereby. To the extent applicable, the execution, delivery and performance of this Agreement and all documents contemplated hereby have been duly and validly authorized by all necessary action on the part of Purchaser and all required consents and approvals have been duly obtained and will not result in a breach of any of the terms or provisions of, or constitute a default under, any indenture, agreement or instrument to which Purchaser is a Party or otherwise bound.

7.2.2    Authority and Binding Obligation (i) Purchaser has full power and authority to execute and deliver this Agreement and all other documents to be executed and delivered by Purchaser pursuant to this Agreement (the "Purchaser Documents"), and to perform all obligations of Purchaser arising under each of the Purchaser Documents, (ii) the execution and delivery by the signer on behalf of Purchaser of each of the Purchaser Documents, and the performance by Purchaser of its obligations under each of the Purchaser Documents, has been duly and validly authorized by all necessary action by Purchaser, and (iii) each of the Purchaser Documents, when executed and delivered, will constitute the legal, valid and binding obligations of Purchaser enforceable against Purchaser in accordance with its terms, except to the extent Sellers is in default thereunder.

7.2.3    No Conflicting Agreements. The execution, delivery and performance of this Agreement and all documents contemplated hereby by Purchaser have been duly and validly authorized by all necessary action on the part of Purchaser and all required consents and approvals have been duly obtained and will not result in a breach of any of the terms or provisions of, or constitute a default under, any indenture, agreement or instrument to which Purchaser is a Party or otherwise bound.

7.2.4    Sufficient Funds. Purchaser represents it has sufficient funds and/or assets to pay the full amount of the Purchase Price and consummate the Closing, without the need to obtain any financing.

7.2.5    No Violation of Anti-Terrorism Laws. None of Purchaser's property or interests is subject to being "blocked" under any Anti-Terrorism Laws, and neither Purchaser nor any Person holding any direct or indirect interest in Purchaser is in violation of any Anti-Terrorism Laws. Neither Purchaser nor any of its affiliates, nor any of their respective partners, members, shareholders or other equity owners, and none of their respective employees, officers, directors, representatives or agents (collectively, a "Purchaser Party") is, nor will they become: (a) a person or entity, or owned or controlled by a person or entity, with whom U.S. persons or entities are restricted from doing business, or with whom U.S. persons or entities may transact business only subject to the imposition of significant fines and penalties, under regulations of the OFAC of the U.S. Department of Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order or other governmental action; (b) designated by the President or OFAC pursuant to the Trading with the Enemy Act, 50 U.S.C. App. § 5, the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06, the USA Patriot

16

#319616022.1

Act of 2001, Pub. L. No. 107-56, Executive Order 13224 (September 23, 2001), or any executive orders of the President issued pursuant to such statutes; or (c) controlled by the government of any country or person that is subject to an embargo by the U.S. government, including without limitation OFAC, that prohibits Sellers from conducting the business activities contemplated by this Agreement with Purchaser.

7.2.6    Patriot Act. Purchaser, including its Purchaser Parties, (a) is in compliance with, (b) is not under investigation by any governmental authority; (c) has not been charged with, convicted of, or assessed civil or criminal penalties; and (d) has not had any of its funds seized or forfeited in any action, for violation of any applicable anti-money laundering laws, including without limitation, the USA Patriot Act, the Bank Secrecy Act, 31 U.S.C. § 5311 et seq., the Trading with the Enemy Act, 50 U.S.C. App. § 1 et seq., Executive Order 13224 (September 23, 2001), the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq., and the sanction regulations promulgated pursuant thereto by OFAC, and laws relating to prevention and detection of money laundering in 18 U.S.C. §§ 1956-57.

7.2.7    Survival. All of the representations, warranties, and covenants made by Purchaser survive Closing.

## ARTICLE VIII
## COVENANTS

**8.1**    Conduct of the Business.

8.1.1.    Operation in Ordinary Course of Business. From the Effective Date until the Closing or earlier termination of this Agreement, Sellers will operate the Properties in the ordinary course and pursuant to the Cash Collateral Order in effect in the Bankruptcy Case, including maintaining current insurance coverages.

8.1.2.    Contracts. From the Effective Date until the Closing or earlier termination of this Agreement, Sellers shall not, without Purchaser's prior written consent (which consent shall not be unreasonably withheld, conditioned or delayed) or Bankruptcy Court Order, (i) amend, extend, renew or terminate any Leases, Executory Contracts or Licenses and Permits regarding the Properties, except in the ordinary course of business or (ii) enter into any new Leases or Executory Contracts regarding the Properties.

**8.2**    Tax Contests.

8.2.1.    Taxable Period Terminating Prior to Closing Date. Sellers shall retain the right to commence, continue and settle any proceeding to contest any Taxes for any taxable period which terminates prior to the Closing, and shall be entitled to any refunds or abatements of Taxes awarded in such proceedings. Seller has initiated Tax Appeals for the Properties, which are currently pending before the Hudson County Tax Court. Sellers represent that they have not initiated any tax contest for a taxable period which includes the Closing Date and any periods thereafter.

**8.3**    Further Assurances. From the Effective Date until the Closing or earlier termination of this Agreement, Sellers and Purchaser shall use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary, proper or advisable to

17

#319616022.1

consummate the transaction described in this Agreement, including, without limitation, (i) obtaining all necessary consents, approvals and authorizations required to be obtained from any Governmental Authority or other Person under this Agreement or Applicable Law, and (ii) effecting all registrations and filings required under this Agreement or Applicable Law. After the Closing, Sellers and Purchaser shall use commercially reasonable efforts (at no cost or expense to such Party, other than any de minimis cost or expense or any cost or expense which the requesting Party agrees in writing to reimburse) to further effect the transaction contemplated in this Agreement.

## ARTICLE IX
## CLOSING CONDITIONS

**9.1**    Mutual Closing Condition.

9.1.1.    Satisfaction of Mutual Closing Condition. The respective obligations of Sellers and Purchaser to close the transaction contemplated in this Agreement are subject to the satisfaction at or prior to Closing of the following condition precedent (the "Mutual Closing Condition"): The Bankruptcy Court shall have entered the Sale Order and there shall be no applicable stay ordered by the Bankruptcy Court which is in effect.

9.1.2.    Failure of Mutual Closing Condition. If the Mutual Closing Condition is not satisfied at Closing, then each Party shall have the right to terminate this Agreement by providing written notice to the other Party, in which case the Earnest Money Deposit shall be refunded to Purchaser, and the Parties shall have no further rights or obligations under this Agreement, except for those which expressly survive such termination.

**9.2**    Purchaser Closing Conditions.

9.2.1.    Satisfaction of Purchaser Closing Conditions. In addition to the Mutual Closing Condition, Purchaser's obligations to close the transactions described in this Agreement are subject to the satisfaction at or prior to Closing of the following conditions precedent (the "Purchaser Closing Conditions"):

(a)    Seller's Deliveries. All of the Sellers' Closing Deliveries shall have been delivered to Purchaser or deposited with Escrow Agent in the Closing Escrow to be delivered to Purchaser upon the consummation of the Closing.

(b)    Representations and Warranties. The representations or warranties of Sellers in this Agreement (as qualified by any schedules to this Agreement and any amendments or supplements to such schedules) shall be true and correct in all material respects as of the Closing (or as of such other date to which such representation or warranty expressly is made).

(c)    Covenants and Obligations. The material covenants and material obligations of Sellers in this Agreement shall have been performed in all material respects.

9.2.2.    Failure of Purchaser Closing Condition. If any of the Purchaser Closing Conditions are not satisfied on the Closing Date (as the same may be extended, adjourned, or postponed by Sellers or Purchasers to the extent they have the express right to do so under this Agreement), then

18

Purchaser shall have the right (i) to terminate this Agreement by providing written notice to Sellers, in which case the Earnest Money shall be refunded to Purchaser, and the Parties shall have no further recourse, rights, liabilities or obligations under this Agreement, except those which expressly survive such termination, or (ii) to waive any of the Purchaser Closing Conditions at or prior to Closing, without offset or deduction from the Purchase Price; provided, however, that any such waiver shall be made in writing by Purchaser. Nothing contained herein shall be deemed or construed to limit Purchaser's rights under Section 12.1 hereof.

**9.3**     Sellers Closing Conditions.

9.3.1.   Satisfaction of Sellers Closing Conditions. In addition to the Mutual Closing Condition, Sellers' obligations to close the transactions contemplated in this Agreement are subject to the satisfaction at or prior to Closing of the following conditions precedent (the "Sellers Closing Conditions"):

(a)     Receipt of the Purchase Price. Purchaser shall have (A) paid to Sellers or deposited with Escrow Agent with written direction to disburse the same to Sellers, the Purchase Price (as adjusted pursuant to Section 3.1 hereof), and (B) delivered written direction to Escrow Agent to disburse the Earnest Money to Sellers.

(b)     Purchaser's Deliveries. All of the Purchaser Closing Deliveries shall have been delivered to Sellers or deposited with Escrow Agent in the Closing Escrow to be delivered to Sellers at Closing.

(c)     Representations and Warranties. The representations and warranties of Purchaser in this Agreement shall be true and correct in all material respects as of the Closing (or as of such other date to which such representation or warranty expressly is made).

(d)     Covenants and Obligations. The covenants and obligations of Purchaser in this Agreement shall have been performed in all material respects.

9.3.2.   Failure of Sellers Closing Condition. If any of the Sellers Closing Conditions is not satisfied on the Closing Date, then Sellers shall have the right to (i) terminate this Agreement by providing written notice to Purchaser, in which case the Earnest Money shall be disbursed to Sellers in accordance with Section 3.2.2 hereof, and the Parties shall have no further recourse, rights, liabilities or obligations under this Agreement, except those which expressly survive such termination, or (ii) waive any of the Sellers Closing Conditions at or prior to Closing; provided, however, that any such waiver shall be made in writing executed by Sellers. Nothing contained herein shall be deemed or construed to limit Sellers' rights under Section 12.2 and/or 12.3 hereof.

**ARTICLE X**
**CLOSING**

**10.1**   Closing Date. The closing of the transaction described in this Agreement (the "Closing") shall occur on the date which is no later than fourteen (14) days following the entry of the Sale Order, or such other date as agreed to in writing between Sellers and Purchaser (the date on which the Closing occurs is referred to herein as the "Closing Date").

19

**10.2**    Closing Deliveries.

10.2.1. Seller's Deliveries. At the Closing, Sellers shall deliver or cause to be delivered to Purchaser or deposited with Escrow Agent in the Closing Escrow to be delivered to Purchaser at Closing, all of the (i) documents set forth in this Section 10.3.1, each of which shall have been duly executed by Sellers and acknowledged (if required) and (ii) other items set forth in this Section 10.3.1 (the "Sellers Closing Deliveries"), as follows:

(a)    Deeds conveying the Properties to Purchaser, subject to the Permitted Exceptions, to the extent applicable, respectively, to the Properties as set forth in the Sale Order (collectively, the "Deeds")[1];

(b)    Title Documents. Such other documents and instruments, executed and properly acknowledged by Seller, if applicable, as Title Company may require from Seller in order to issue the Title Policy, including but not limited to Affidavits of Title and limited liability company resolutions in a form reasonably acceptable to the Purchaser's Title Company;

(c)    A FIRPTA affidavit in the form set forth in the regulations under Section 1445 of the Code;

(d)    A resolution of each party comprising Seller, signed by each party comprising Seller's authorized representative, authorizing the execution of this Agreement and the consummation of the transactions contemplated hereby;

(e)    The Sale Order;

(f)    The Closing Statement;

(g)    Such other documents and instruments as may be reasonably requested by Purchaser in order to consummate the transaction described in this Agreement;

10.2.2. Purchaser's Deliveries. At the Closing, Purchaser shall deliver or cause to be delivered to Sellers or deposited with Escrow Agent in the Closing Escrow to be delivered to Sellers all of the (i) documents set forth in this Section 10.3.2, each of which shall have been duly executed by Purchaser and acknowledged (if required), and (ii) other items set forth in this Section 10.3.2 (the "Purchaser Closing Deliveries"), as follows:

(a)    The Purchase Price (as adjusted pursuant to this Agreement) to be paid by Purchaser;

(b)    A letter of direction to Escrow Agent authorizing and directing Escrow Agent to disburse the Earnest Money to Sellers or to such party or parties as Sellers shall designate;

---

**[1] "At the written direction of the Sellers and the Purchaser (the "DILF Direction"), at Closing the DILF Holder shall execute, convey and deliver the deed (in recordable form), affidavit of title, affidavit of consideration and any other agreements, affidavits or documents as may be reasonably required by Sellers or Purchaser (the "DILF Transfer Documents") to the applicable DILF Property to: (a) the applicable Seller (for conveyance of the Property to the Purchaser or the Purchaser Designees at Closing), or (b) the Purchaser or the Purchaser Designees."**

#319616022.1

(c)     A counterpart of each of the documents and instruments to be delivered by Sellers under Section 10.2 hereof which require execution by Purchaser;

(d)     Such other documents and instruments as may be reasonably requested by Sellers or the Title Company in order to consummate the transaction described in this Agreement;

(e)     The Cure Amounts required under the Sale Order or Bankruptcy Court Order determining the Assumption/Rejection Motion; and

(f)     The Buyer's Premium of One Percent (1%) of the Purchase Price payable to CBRE.

**10.3**    Possession. Sellers shall deliver possession of the Properties and Properties to Purchaser upon completion of the Closing, subject to the rights of counterparties under the Purchased Contracts.

**ARTICLE XI**
**PRORATIONS AND EXPENSES**

**11.1**    Items to Be Prorated. The following shall be prorated between Seller and Purchaser as of the Closing Date with Purchaser being deemed the owner of the Property as of the Closing Date and with Purchaser receiving credit for or charged with the entire day of the Closing: Taxes, Water and Sewer. Except as hereinafter expressly provided, all prorations shall be done on the basis of the actual number of days in the year in which Closing occurs for the actual number of days elapsed to the Closing Date or the actual number of days in the month in which the Closing occurs and the actual number of days elapsed in such month to the Closing Date, as applicable. Any assessment for improvements completed prior to closing shall be Seller's responsibility. Notwithstanding anything else set forth herein, in the event any unpaid utilities could become liens, then Seller shall obtain a final reading within three days prior to the Closing, failing which Seller shall escrow a reasonable amount with the title company. All other customary purchase and sale closing costs and charges shall be paid by Seller or Purchaser in accordance with the law and customs with respect to title closings where the Property is located.

**ARTICLE XII**
**DEFAULT AND REMEDIES**

**12.1**    Sellers Default. If, at the time of Closing, Sellers fail to perform their material covenants or material obligations under this Agreement and no Purchaser Default has occurred (a "Seller Default") that has prevented the satisfaction of the conditions to the obligations of Purchaser to close the transactions set forth in Section 9 hereof, then Purchaser, as its sole and exclusive remedy, may elect upon written notice to Sellers to (a) terminate this Agreement, and if Sellers fail to remedy the Seller Default within fifteen (15) days thereafter, this Agreement shall terminate (a "Sellers' Breach Termination Event") and the Earnest Money Deposit shall be refunded to Purchaser, and the Parties shall have no further recourse, rights, liabilities or obligations under this Agreement, except those which expressly survive such termination; (b) proceed to Closing without offset or deduction to the Purchase Price; or (c) obtain a court order for specific performance. Purchaser hereby waives any and all other rights and/or remedies it may otherwise have at law and/or in equity.

21

**12.2**   Purchaser's Default. If Purchaser fails to perform any of its material covenants or material obligations under this Agreement and no Seller Default has occurred which remains uncured (a "Purchaser Default"), then Sellers, as their sole and exclusive remedy, may elect to (a) terminate this Agreement by providing written notice to Purchaser, in which case the Earnest Money Deposit shall be disbursed to Sellers in accordance with Section 3 hereof, and the Parties shall have no further recourse, rights, liabilities or obligations under this Agreement, except those which expressly survive such termination, or (b) proceed to Closing pursuant to this Agreement.

**12.3**   LIQUIDATED DAMAGES. THE PARTIES ACKNOWLEDGE AND AGREE THAT IF THIS AGREEMENT IS TERMINATED PURSUANT TO SECTION 12 HEREOF, THE DAMAGES THAT SELLERS WOULD SUSTAIN AS A RESULT OF SUCH TERMINATION WOULD BE DIFFICULT, IF NOT IMPOSSIBLE, TO ASCERTAIN. ACCORDINGLY, THE PARTIES AGREE THAT SELLERS SHALL RETAIN THE EARNEST MONEY DEPOSIT AS A FAIR AND REASONABLE SUM AND AS FAIR MEASURE OF DAMAGES, AS LIQUIDATED DAMAGES (AND NOT AS A PENALTY) AS SELLERS' SOLE AND EXCLUSIVE REMEDY FOR SUCH TERMINATION. NOTWITHSTANDING THE FOREGOING, THE REMEDY OF LIQUIDATED DAMAGES SHALL NOT LIMIT, AND SHALL NOT BE DEEMED TO LIMIT, IN ANY WAY THE RIGHTS AND REMEDIES AVAILABLE TO SELLERS WHICH SURVIVE TERMINATION OF THIS AGREEMENT.

**ARTICLE XIII**
**RISK OF LOSS**

**13.1**   Casualty. If, at any time after the Effective Date and prior to Closing or earlier termination of this Agreement, the Properties or any portion thereof is damaged or destroyed by fire or any other casualty (a "Casualty"), Sellers shall give written notice of such Casualty to Purchaser promptly after the occurrence of such Casualty.

13.1.1. Material Casualty. If the amount of the repair restoration of the Properties required by a Casualty equals or exceeds twenty-five percent (25%) of the Purchase Price, as estimated by Sellers' architect (a "Material Casualty") then Purchaser shall have the right to elect, by providing written notice to Sellers within ten (10) days after Purchaser's receipt of the estimate from Sellers' architect, to (a) terminate this Agreement, in which case the Earnest Money shall be refunded to Purchaser, and the Parties shall have no further rights or obligations under this Agreement, except those which expressly survive such termination, or (b) proceed to Closing, without terminating this Agreement, in which case Sellers shall (i) provide Purchaser with a credit against the Purchase Price in an amount equal to the lesser of: (A) the applicable insurance deductible, and (B) and the reasonable estimated costs for the repair or restoration of the Properties required by such Material Casualty, and (ii) transfer and assign to Purchaser all of Sellers' right, title and interest in and to all proceeds from all casualty and lost profits insurance policies maintained by Sellers with respect to the Properties or the Business. If the Closing is scheduled to occur within Purchaser's ten (10) day election period, the Closing Date shall be postponed until the date which is five (5) Business Days after the expiration of such ten (10) day election period.

13.1.2. Non-Material Casualty. In the event of any Casualty which is not a Material Casualty, then Purchaser shall not have the right to terminate this Agreement, but shall proceed to Closing, in which case Sellers shall (A) provide Purchaser with a credit against the Purchase Price

22

#319616022.1

in an amount equal to the lesser of: (1) the applicable insurance deductible under Sellers' applicable insurance policy, and (2) the reasonable estimated costs for the repair or restoration required by such Casualty, and (B) transfer and assign to Purchaser all of Sellers' right, title and interest in and to all proceeds from all casualty insurance policies maintained by Sellers with respect to the Properties.

**13.2** Condemnation. If, at any time after the Effective Date and prior to Closing or the earlier termination of this Agreement, any Governmental Authority commences any condemnation proceeding or other proceeding in eminent domain with respect to all or any portion of the Properties (a "Condemnation"), Sellers shall give written notice of such Condemnation to Purchaser promptly after Sellers receive notice of such Condemnation.

13.2.1. Material Condemnation. If the Condemnation would (i) result in the permanent loss of more than twenty-five percent (25%) of the fair market value of the Land or Improvements of the Properties, (ii) result in any permanent material reduction or restriction in access to the Land or Improvements of the Properties, or (iii) have a permanent materially adverse effect on the Business as conducted prior to such Condemnation (a "Material Condemnation"), then Purchaser shall have the right to elect, by providing written notice to Sellers within ten (10) days after Purchaser's receipt of Sellers' written notice of such Material Condemnation, to (A) terminate this Agreement, in which case the Earnest Money shall be refunded to Purchaser, and the Parties shall have no further rights or obligations under this Agreement, except those which expressly survive such termination, or (B) proceed to Closing, without terminating this Agreement, in which case Sellers shall assign to Purchaser all of Sellers' right, title and interest in all proceeds and awards from such Material Condemnation. If the Closing is scheduled to occur within Purchaser's ten (10) day election period, the Closing shall be postponed until the date which is five (5) Business Days after the expiration of such ten (10) day election period.

13.2.2. Non-Material Condemnation. In the event of any Condemnation other than a Material Condemnation, Purchaser shall not have the right to terminate this Agreement, but shall proceed to Closing, in which case Sellers shall assign to Purchaser all of Sellers' right, title and interest in all proceeds and awards from such Condemnation.

**ARTICLE XIV**
**SURVIVAL**

**14.1** Survival. Except only as expressly set forth in this Section 14.1, all representations, warranties, covenants, liabilities and obligations shall be deemed (i) if the Closing occurs, to merge in the Deed and not survive the Closing, or (ii) if this Agreement is terminated, not to survive such termination.

14.1.1. Survival of Representations and Warranties. The payment of the Purchase Price by Purchaser and the delivery of the deed(s) by Sellers to Purchaser shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this Agreement.

14.1.2. Survival of Covenants and Obligations. If this Agreement is terminated, only those covenants and obligations to be performed by the Parties under this Agreement which expressly

23

survive the termination of this Agreement shall survive such termination. If the Closing occurs, only those covenants and obligations to be performed by the Parties under this Agreement which expressly survive the Closing shall survive the Closing.

14.1.3. <u>Survival of Indemnification</u>. All rights and obligations of defense and indemnification as expressly set forth in this Agreement shall survive the Closing or termination of this Agreement.

14.1.4  Notwithstanding anything to the contrary contained herein, Articles II, VI, XII and XIV and Sections 3.2.2, 7.1.7, and 7.2 hereof shall survive the termination of this Agreement.

**ARTICLE XV**
**MISCELLANEOUS PROVISIONS**

**15.1**   <u>Notices</u>.

15.1.1. <u>Method of Delivery</u>. All notices, requests, demands and other communications required to be provided by any Party under this Agreement (each, a "<u>Notice</u>") shall be in writing and delivered, at the sending Party's cost and expense, by (i) personal delivery, (ii) certified U.S. mail, with postage prepaid and return receipt requested, (iii) overnight courier service, or (iv) facsimile transmission, with a verification copy sent on the same day by any of the methods set forth in clauses (i), (ii) or (iii), to the recipient Party at the following address, facsimile number or e-mail address:

<u>If to Seller</u>:

Supor Property Enterprises LLC
433 Bergen Avenue
Kearny, NJ
Attention:  Joseph Supor, III
owner24@jsupor.com

J Supor 136-1 Realty LLC
433 Bergen Avenue
Kearny, NJ
Attention:  Joseph Supor, III
owner24@jsupor.com

Supor-172 Realty LLC
433 Bergen Avenue
Kearny, NJ
Attention:  Joseph Supor, III
owner24@jsupor.com

With Required Copy to:   Forman Holt
365 West Passaic Street, Suite 400
Rochelle Park, NJ 07662

#319616022.1

Attention: Michael E. Holt, Esq.
mholt@formanlaw.com

K&L Gates LLP
One Newark Center, 10th Fl.
1085 Raymond Blvd.
Newark, NJ 07102
Attention: Daniel Eliades, Esq
Daniel.eliades@klgates.com
Jennifer Mazawey, Esq.
Jennifer.mazawey@klgates.com
William Waldman, Esq.
william.waldman@klgates.com

Joseph Supor, III
583 Princeton Avenue
Brick, NJ 08724

Global International Advisors,
LLC.
312 Sawmill Lane
Wyckoff, NJ 07481
Attn: Kevin M Cassidy
kcassidy@globalintadvisors.com

If to Purchaser:

H Capital Holdings, LLC,
Attn: Anthony He
One Bridgeview Plaza, Suite 830
Fort Lee, New Jersey 07605
ahe@hequitiesllc.com

With a copy to:

Michael A. Ochs, Esq.
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
201-321-7816
mochs@tm-firm.com

15.1.2. Receipt of Notices. All Notices sent by a Party (or its counsel pursuant to Section 16.1.4 hereof) under this Agreement shall be deemed to have been received by the Party to whom such Notice is sent upon (i) delivery to the address or facsimile number of the recipient Party, provided that such delivery is made prior to 5:00 p.m. **[Eastern]** on a Business Day, otherwise the

25

#319616022.1

following Business Day, or (ii) the attempted delivery of such Notice if (A) such recipient Party refuses delivery of such Notice, or (B) such recipient Party is no longer at such address or facsimile number, and such recipient Party failed to provide the sending Party with its current address or facsimile number pursuant to Section 16.1.3 hereof.

15.1.3. Change of Address. The Parties and their respective counsel shall have the right to change their respective address and/or facsimile number for the purposes of this Section 16.1 by providing a Notice of such change in address and/or facsimile number as required under this Section 16.1.

15.1.4. Delivery by Party's Counsel. The Parties agree that the attorney for such Party shall have the authority to deliver Notices on such Party's behalf to the other Party hereto.

15.2    No Recordation. No Party shall record this Agreement, or any memorandum of this Agreement, in any public records.

15.3    Time is of the Essence. Time is of the essence as to all dates and/ or times, as applicable, set forth in this Agreement; provided, however, that notwithstanding anything to the contrary in this Agreement, if the time period for the performance of any covenant or obligation, satisfaction of any condition or delivery of any Notice or item required under this Agreement shall expire on a day other than a Business Day, such time period shall be extended automatically to the next Business Day.

15.4    Assignment. Purchaser shall not assign this Agreement or any interest therein to any Person, without the prior written consent of Sellers, which consent may be withheld in Sellers' sole discretion. Notwithstanding the foregoing, Purchaser shall have the right to designate any affiliate(s) (which is intended to be broader than the defined term "Affiliate") as its nominee to receive title to the Properties, or assign all of its right, title and interest in this Agreement to any affiliate(s) of Purchaser by providing written notice to Sellers no later than five (5) days prior to the Closing, provided that in any such event the originally named Purchaser shall remain liable for all Purchaser obligations hereunder.

15.5    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties, and their respective successors and permitted assigns.

15.6    Third Party Beneficiaries. This Agreement shall not confer any rights or remedies on any Person other than (i) the Parties and their respective successors and permitted assigns, and (ii) any Indemnitee to the extent such Indemnitee is expressly provided any right of defense or indemnification in this Agreement.

15.7    GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY, WITHOUT GIVING EFFECT TO ANY PRINCIPLES REGARDING CONFLICT OF LAWS.

15.8    Rules of Construction. The following rules shall apply to the construction and interpretation of this Agreement:

#319616022.1

15.8.1. Singular words shall connote the plural as well as the singular, and plural words shall connote the singular as well as the plural, and the masculine shall include the feminine and the neuter, as the context may require.

15.8.2. All references in this Agreement to particular articles, sections, subsections or clauses (whether in upper or lower case) are references to articles, sections, subsections or clauses of this Agreement. All references in this Agreement to particular exhibits or schedules (whether in upper or lower case) are references to the exhibits and schedules attached to this Agreement, unless otherwise expressly stated or clearly apparent from the context of such reference.

15.8.3. The headings in this Agreement are solely for convenience of reference and shall not constitute a part of this Agreement nor shall they affect its meaning, construction or effect.

15.8.4. Each Party and its counsel have reviewed and revised (or requested revisions of) this Agreement and have participated in the preparation of this Agreement, and therefore any rules of construction requiring that ambiguities are to be resolved against the Party which drafted the Agreement or any exhibits hereto shall not be applicable in the construction and interpretation of this Agreement or any exhibits hereto.

15.8.5. The terms "hereby," "hereof," "hereto," "herein," "hereunder" and any similar terms shall refer to this Agreement, and not solely to the provision in which such term is used.

15.8.6. The terms "include," "including" and similar terms shall be construed as if followed by the phrase "without limitation."

15.8.7. The term "sole discretion" with respect to any determination to be made a Party under this Agreement shall mean the sole and absolute discretion of such Party, without regard to any standard of reasonableness or other standard by which the determination of such Party might be challenged.

15.9    Severability. If any term or provision of this Agreement is held to be or rendered invalid or unenforceable at any time in any jurisdiction, such term or provision shall not affect the validity or enforceability of any other terms or provisions of this Agreement, or the validity or enforceability of such affected term or provision at any other time or in any other jurisdiction.

15.10   JURISDICTION AND VENUE. ANY LITIGATION OR OTHER COURT PROCEEDING WITH RESPECT TO ANY MATTER ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT SHALL BE CONDUCTED IN THE BANKRUPTCY COURT AND SELLERS (FOR ITSELF AND ALL SELLER INDEMNITEES) AND PURCHASER (FOR ITSELF AND ALL PURCHASER INDEMNITEES) HEREBY SUBMIT TO JURISDICTION AND CONSENT TO VENUE IN SUCH COURT AND WAIVE ANY DEFENSE BASED ON FORUM NON CONVENIENS.

15.11   WAIVER OF TRIAL BY JURY. EACH PARTY HEREBY WAIVE ITS RIGHT TO A TRIAL BY JURY IN ANY LITIGATION OR OTHER COURT PROCEEDING WITH RESPECT TO ANY MATTER ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT.

#319616022.1

**15.12**  Incorporation of Recitals, Exhibits and Schedules. The recitals to this Agreement, and all exhibits and schedules (as amended, modified and supplemented from time to time pursuant to Section 15.14 hereof) referred to in this Agreement are incorporated herein by such reference and made a part of this Agreement. Any matter disclosed in any schedule to this Agreement shall be deemed to be incorporated in all other schedules to this Agreement.

**15.13**  Entire Agreement. This Agreement sets forth the entire understanding and agreement of the Parties hereto and shall supersede any other agreements and understandings (written or oral) between the Parties on or prior to the Effective Date with respect to the transaction described in this Agreement.

**15.14**  Amendments, Waivers and Termination of Agreement. No amendment or modification to any terms or provisions of this Agreement, waiver of any covenant, obligation, breach or default under this Agreement or termination of this Agreement (other than as expressly provided in this Agreement), shall be valid unless in writing and executed and delivered by each of the Parties.

**15.15**  Not an Offer. The delivery by Sellers of this Agreement executed by Sellers shall not constitute an offer to sell the Properties, and Sellers shall have no obligation to sell the Properties to Purchaser, unless and until all Parties have executed and delivered this Agreement to all other Parties and unless the Sale Order is entered.

**15.16**  Execution of Agreement. A Party may deliver executed signature pages to this Agreement by facsimile or electronic transmission to any other Party, which facsimile or electronic copy shall be deemed to be an original executed signature page. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one agreement with the same effect as if the Parties had signed the same signature page.

**15.18**  Substantial Contribution. Purchaser hereby waives any right it may have to pursue a substantial contribution claim in the Bankruptcy Case pursuant to 11 U.S.C. §503.

**15.19**  Real Estate Commission. Seller and Purchaser each represent and warrant to the other that neither Seller nor Purchaser has contacted or entered into any agreement with any real estate broker, agent, finder or any other party in connection with this transaction other than Seller's broker, CBRE ("Broker"), and that neither Party has taken any action which would result in any real estate broker's, finder's or other fees or commissions being due and payable to any Party other than Broker with respect to the transaction contemplated hereby. Purchaser shall pay Broker a real estate commission of One Percent (1%) of the Purchase Price as a Buyers' Premium at the Closing. This shall be in addition to the Purchase Price. Purchaser hereby indemnifies and agrees to hold the Seller harmless from any loss, liability, damage, cost, or expense (including reasonable attorneys' fees) resulting to the Seller by reason of a breach of the representation and warranty made by Purchaser in this Section. Seller hereby indemnifies and agrees to hold the Purchaser harmless from any loss, liability, damage, cost, or expense (including reasonable attorneys' fees) resulting to the Purchaser by reason of a breach of the representation and warranty made by Seller in this Section.

**15.20**  Bulk Sale Notice. Both Seller and Purchaser shall cooperate with each other in complying with the requirements of the NJ Bulk Sale Act. In the event the Bulk Sale Department (the

28

#319616022.1

"Department") determines that any or all of the Seller's proceeds are to held back as an escrow pending a determination by the Department of any taxes due and owing from the Seller, then such funds as determined by the Department shall be withheld out of the Seller's proceeds at the Closing by Escrow Agent until such time as the parties are in receipt of a tax clearance letter from the Department authorizing the release of the escrow. The parties shall comply with any directive from the Department, including but not to any request to either remit sums from the sales proceeds to the Department or to hold sums in escrow with Purchaser's attorney. Purchaser shall submit the required notification of the pending sale to the Department, including notification that the sale is occurring pursuant to a Bankruptcy Court Order, not less than ten (10) business days prior to Closing, and the Seller agrees to fully cooperate with such submissions (including but not limited to submitting a TTD form). Seller may submit a TTD form and any supplemental documents it deems reasonably necessary to receive the tax clearance letter from the Department authorizing the release of the escrow. The last four digits of Seller's federal tax identification number are contained in Exhibit A attached here.

**15.21** Flood Notification. In accordance with the provisions of New Jersey's flood risk notification laws, N.J.S.A. 56:8-19.2, attached at **Exhibit H** is Seller's required Flood Risk declaration.

**[Remainder of page intentionally left blank;
Signatures on following pages]**

#319616022.1

IN WITNESS WHEREOF, each Party has caused this Agreement to be executed and delivered in its name by a duly authorized officer or representative.

**SELLER:**

**Supor Properties Enterprises LLC**

Witness/Attest

Name: Kevin Cassidy

Title: Financial Consultant

By:

Name: Joseph Supor III

Title: President

**SELLER:**

**J Supor 136-1 Realty LLC**

Witness/Attest

Name:

Title:

By:

Name:

Title:

**SELLER:**

**Supor-172 Realty LLC**

Witness/Attest

Name:

Title:

By:

Name:

Title:

**PURCHASER:**

Witness/Attest

Name: HONG HONG TANG

Title: Executive Assitant to Chairman

By:

Name:

Title:

## Exhibit A

## SELLER ENTITIES

Supor Properties Enterprises LLC (Seller of FER 1 Property) (EIN: ▆▆▆▆5580)

J Supor 136-1 Realty LLC (Seller of FER 2 Property) (EIN: ▆▆▆▆3205)

Supor-172 Realty LLC (Seller of FER 3 Property) (EIN: ▆▆▆▆5662)

#319616022.1

**Exhibit B**

**FER 1 PROPERTY:**

Legal Description

ALL THAT CERTAIN LOT, PARCEL OR TRACT OF LAND, SITUATE AND LYING IN THE TOWN OF HARRISON, COUNTY OF HUDSON, STATE OF NEW JERSEY, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

**TRACT ONE:**

BEGINNING AT A POINT ESTABLISHED AS FOLLOWS: COMMENCING AT A POINT IN THE EASTERLY LINE OF FRANK E. RODGERS BOULEVARD SOUTH (F/K/A SOUTH FOURTH STREET) AT A POINT THEREIN DISTANT AS MEASURED ALONG THE SAID EASTERLY LINE OF FRANK E. RODGERS BOULEVARD SOUTH ON A COURSE OF NORTH 2 DEGREE 47 MINUTES EAST, 1474.49 FEET FROM A POINT IN THE PIER HEAD AND BULKHEAD LINE OF THE PASSAIC RIVER AS FIXED BY THE UNITED STATES HARBOR LINE BOARD AND APPROVED MAY 22, 1916 AND FROM THENCE RUNNING

1.  (1) NORTH 1 DEGREE 47 MINUTES EAST 150.76 FEET TO A POINT; THENCE

2.  (2) SOUTH 88 DEGREES 13 MINUTES EAST 398.83 FEET TO A POINT; THENCE

3.  (3) NORTH 1 DEGREE 47 MINUTES EAST 70.00 FEET TO A POINT; THENCE

4.  (4) SOUTH 88 DEGREES 13 MINUTES EAST 126.77 FEET TO A POINT; THENCE

5.  (5) SOUTH 01 DEGREE 47 MINUTES WEST 220.76 TO A POINT; THENCE

6.  (6) NORTH 88 DEGREES 13 MINUTES WEST 59.85 FEET TO A POINT; THENCE

7.  (7) NORTH 1 DEGREE 47 MINUTES EAST 78.00 FEET TO A POINT; THENCE

8.  (8) NORTH 88 DEGREES 13 MINUTES WEST 314.00 FEET TO A POINT; THENCE

9.  (9) SOUTH 1 DEGREE 47 MINUTES WEST 78.00 FEET TO A POINT; THENCE

10. (10)        NORTH 88 DEGREES 13 MINUTES WEST 151.75 FEET TO THE POINT OR PLACE OF BEGINNING.

THE ABOVE DESCRIPTION IS IN ACCORDANCE WITH A SURVEY MADE BY BORRE, MCDONALD & WATSON, LAND SURVEYORS, DATED AUGUST 11, 2010.

FOR INFORMATIONAL PURPOSES ONLY: ALSO KNOW AS LOT 17.02 IN BLOCK 137 ON THE TOWN OF HARRISON TAX MAP.

319856285.1

**TRACT TWO:**

BEGINNING AT A POINT ESTABLISHED AS FOLLOWS: COMMENDING AT A POINT IN THE EASTERLY LINE OF FRANK E. RODGERS BOULEVARD SOUTH (F/K/A SOUTH FOURTH STREET) AT A POINT THEREIN DISTANT AS MEASURED ALONG THE SAID EASTERLY LINE OF FRANK E. RODGERS BOULEVARD SOUTH ON A COURSE OF NORTH 1 DEGREE 47 MINUTES EAST, 1501.36 FEET FROM A POINT IN THE PIER HEAD AND BULKHEAD LINE OF THE PASSAIC RIVER AS FIXED BY THE UNITED STATES HARBOR LINE BOARD AND APPROVED MAY 22, 1916 AND FROM THENCE RUNNING ALONG A LIEN SOUTH 88 DEGREES 13 MINUTES EAST 942.93 FEET AND PARALLEL WITH THE NORTHERN LINE OF GUYON DRIVE, AND FROM SAID BEGINNING POINT RUNNING THENCE

(1)     NORTH 88 DEGREES 13 MINUTES WEST 417.33 FEET TO A POINT; THENCE

(2)     NORTH 1 DEGREE 47 MINUTES EAST 377.62 FEET TO A POINT; THENCE

(3)     SOUTH 88 DEGREES 13 MINUTES EAST 29.30 FEET TO A POINT; THENCE

(4)     SOUTH 1 DEGREE 47 MINUTES WEST 30.62 FEET TO A POINT; THENCE

(5)     SOUTH 88 DEGREES 13 MINUTES EAST 111.70 FEET TO A POINT; THENCE

(6)     NORTH 1 DEGREES 47 MINUTES EAST 4.50 FEET TO A POINT; THENCE

(7)     SOUTH 88 DEGREES 13 MINUTES EAST 5.75 FEET TO A POINT; THENCE

(8)     NORTH 1 DEGREE 47 MINUTES EAST 143.56 FEET TO A POINT; THENCE

(9)     SOUTH 88 DEGREES 13 MINUTES EAST 5.00 FEET TO A POINT; THENCE

(10) NORTH 1 DEGREES 47 MINUTES EAST 71.00 FEET TO A POINT; THENCE

(11) SOUTH 88 DEGREES 13 MINUTES EAST 170.43 FEET TO A POINT; THENCE

(12) SOUTH 1 DEGREE 4 MINUTES WEST 113.00 FEET TO A POINT; THENCE

(13) SOUTH 88 DEGREES 13 MINUTES EAST 91.15 FEET TO A POINT; THENCE

(14) SOUTH 1 DEGREE 47 MINUTES WEST 6.67 FEET TO A POINT; THENCE

(18) SOUTH 1 DEGREE 47 MINUTES WEST 340.00 FEET TO THE POINT OR PLACE OF BEGINNING

THE ABOVE DESCRIPTION IS IN ACCORDANCE WITH A SURVEY MADE BY BORRE, MCDONALD & WATSON LAND SURVEYORS, DATED AUGUST 11, 2010.

FOR INFORMATIONAL PURPOSES ONLY: ALSO KNOWN AS LOT 1.02 IN BLOCK 149 AND LOT 5.02 IN BLOCK 151 ON THE TOWN OF HARRISON TAX MAP.

319856285.1

**FER 2 PROPERTY:**
ALL THAT CERTAIN LOT, PARCEL OR TRACT OF LAND, SITUATE AND LYING IN THE TOWN OF HARRISON, COUNTY OF HUDSON, STATE OF NEW JERSEY, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

TRACT THREE:

BEGINNING AT A POINT IN THE DIVIDING LIEN BETWEEN BLOCK 136 LOT 1.07 AND LOT 1.06, SAID POINT OF BEGINNING BEING THE FOLLOWING 3 COURSES FROM THE INTERSECTION OF THE PROLONGATION OF THE EASTERLY LINE OF FRANK E. RODGERS BOULEVARD SOUTH (FORMERLY SOUTH FOURTH STREET (80 FEET WIDE) AND THE PROLONGATION OF THE NORTHERLY LINE OF GUYON DRIVE 74 FEET WIDE):

1.     ALONG THE EASTERLY LINE OF FRANK E. RODGERS BOULEVARD SOUTH (FORMERLY SOUTH FOURTH STREET) (80 FEET WIDE), NORTH 03 DEGREES 08 MINUTES 49 SECONDS WEST 271.11 FEET TO A POINT; THENCE

2.     ALONG THE DIVIDING LINE BETWEEN BLOCK 136 LOT 1.03 AND BLOCK 137 LOT 35.03, NORTH 50 DEGREES 59 MINUTES 11 SECONDS EAST, 187.00 FEET TO A POINT; THENCE

3.     ALONG THE DIVIDING LINE BETWEEN BLOCK 136 LOT 1.03 AND LOT 1.06, NORTH 50 DEGREES 59 MINUTES 11 SECONDS EAST, 139.13 FEET TO THE POINT OF BEGINNING, RUNNING FROM THE POINT OF BEGINNING THENCE

4.     ALONG THE DIVIDING LINE BETWEEN BLOCK 136 LOT 1.07 AND LOT 1.03 THE FOLLOWING 3 COURSES, NORTH 50 DEGREES 59 MINUTES 11 SECONDS EAST 290.86 FEET TO A POINT; THENCE

5.     NORTH 53 DEGREES 33 MINUTES 41 SECONDS EAST 71.78 FEET TO A POINT; THENCE

6.     NORTH 58 DEGREES 47 MINUTES 11 SECONDS EAST 2.23 FEET TO A POINT; THENCE

7.     ALONG THE DIVIDING LINE BETWEEN BLOCK 136 LOT 1.07 ND BLOCK 150 LOT 16.01 THE FOLLOWING 13 COURSES, SOUTH 03 DEGREES 01 MINUTES 49 SECONDS EAST 33.72 FEET TO A POINT; THENCE

8.     SOUTH 86 DEGREES 51 MINUTES 11 SECONDS WEST 9.85 FEET TO A POINT; THENCE

9     SOUTH 04 DEGREES 14 MINUTES 49 SECONDS EAST 12.35 FEET TO A POINT; THENCE

10.    NORTH 86 DEGREES 51 MINUTES 11 SECONDS EAST 1.21 FEET TO T POINT; THENCE

319856285.1

11.     SOUTH 03 DEGREES 08 MINUTES 49 SECONDS EAST 9.87 FEET TO A POINT; THENCE

12.     NORTH 86 DEGREES 51 MINUTES 11 SECONDS EAST 3.77 FEET TO A POINT; THENCE

13.     SOUTH 03 DEGREES 08 MINUTES 49 SECONDS EAST 12.97 FEET TO A POINT; THENCE

14.     SOUTH 86 DEGREES 51 MINUTES 11 SECONDS WEST 21.68 FEET TO A POINT; THENCE

15.     SOUTH 03 DEGREES 08 MINUTES 49 SECONDS EAST 68.85 FEET TO A POINT; THENCE

16.     SOUTH 86 DEGREES 51 MINUTES 11 SECONDS WEST 11.58 FEET TO A POINT; THENCE

17.     SOUTH 03 DEGREES 08 MINUTES 49 SECONDS EAST 19.23 FEET TO A POINT; THENCE

18.     SOUTH 86 DEGREES 51 MINUTES 11 SECONDS WEST 4.38 FEET TO A POINT; THENCE

19.     SOUTH 03 DEGREES 08 MINUTES 49 SECONDS EAST 118.58 FEET TO A POINT; THENCE

20.     ALONG THE DIVIDING LINE BETWEEN BLOCK 136 LOT 1.07 AND B LOCK 137 LOT 1, SOUTH 86 DEGREES 51 MINUTES 11 SECONDS WEST 355.33 FEET TO A POINT; THENCE

21.     ALONG THE NEW DIVIDING LINE BETWEEN BLOCK 136 LOT 1.07 AND BLOCK 136 LOT 1.06, NORTH 03 DEGREES 08 MINUTES 49 SECONDS WEST 64.71 FEET TO THE POINT OF BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY ALSO KNOWN AS LOT 1.07 IN BLOCK 136 ON THE TOWN OF HARRISON TAX MAP.

**<u>FER 3 PROPERTY:</u>**

ALL that certain lot, tract or parcel of land situate lying and being in the Town of Harrison in the County of Hudson and the State of New Jersey and being all of Block 172 Lot 1, said lot as shown on the Official Tax Map of the Town of Harrison, said lot also as shown on a certain plan entitled "ALTA/NSPS Land Title Survey of J. Supor Harrison Redevelopment Block 136 Lot 1.07, Block 137 Lot 17.02, Block 149, Lot 1.02, Block 151 Lot 5.02, Block 172 Lot 1 prepared by Maser Consulting dated August 23, 2017" and being more particularly bounded and described as follows, to wit:

319856285.1

BEGINNING at a point in the existing northerly line of Lot 1.03 Block 174, said point being the following bearings and distances from the point of intersection formed by the existing northerly line of Guyon Drive (74' R.O.W.) and the existing easterly line of Frank E. Rogers Boulevard South (F.K.A. South Front Street) (variable width R.O.W.) as shown on the aforesaid map and plan.

A)      North eighty-six degrees fifty-two minutes fifty-three seconds East (N 86º 52' 53" E) one thousand fourteen and seventy-eight hundredths feet (1,014.78') along the aforesaid existing northerly line of Guyon Drive to a point in the same, thence

B)      North three degrees seven minutes seven seconds West (N 03º 07' 07" W) sixteen and eighty-eight hundredths feet (16.88') along an existing easterly line of Lot 16.01 Block 150, said adjoining lot as shown on the aforesaid map and plan, thence

C)      North eighty-six degrees fifty-two minutes fifty-three seconds East (N 86º 52' 53" E) thirty-three and twenty-two hundredths feet (33.22') along an existing southerly line of Lot 16.01 Block 150 to a point in the same, thence

D)      South three degrees seven minutes seven seconds East (S 03º 07' 07" E) seven and six hundredths feet (7.06') along an existing easterly line of Lot 16.01 Block 150 to a point in the same

AND from said point running, thence

1)      North three degrees seven minutes seven seconds West (N 03º 07' 07" W) four hundred eight and zero hundredths feet (408.00') along the aforesaid existing easterly line of Lot 16.01 Block 150 to a southerly line of same, thence

2)      North eighty-six degrees fifty-two minutes fifty-three seconds East (N 86º 52' 53" E) one hundred ninety-three and zero hundredths feet (193.00') along the aforesaid southerly line of Lot 16.01 Block 150 to a point in the same, thence

3)      South three degrees seven minutes seven seconds East (S 03º 07' 07" E) two hundred sixty-five and eighty-one hundredths feet (265.81') along the existing westerly line of Lot 2.02 Block 169, said adjoining lot as shown on the aforesaid map and plan, thence

4)      North eighty-six degrees fifty-two minutes fifty-three seconds East (N 86º 52'53" E) twenty-five and zero hundredths feet (25.00') along an existing southerly line of Lot 2.02 Block 169 to a point in the same, thence

5)      South three degrees seven minutes seven seconds East (S 03º 07' 07" E) one hundred forty-two and nineteen hundredths feet (142.19') along an existing westerly line of Lot 2.02 Block 169 to a point in the same, thence

6)      South eighty-six degrees fifty-two minutes fifty-three seconds West (S 86º 52' 53" W) two hundred eighteen and zero hundredths feet (218.00') along the existing northerly line of Lot 1.03 Block 174, said adjoining lot as shown on the aforesaid map and plan to a point in the same the point and place of BEGINNING.

BEING and intended to be the same premises conveyed to Grantor herein by way of Deed from Kevrich Associates, a New Jersey Partnership, dated April 19, 2001, recorded May 18, 2001 in the Register's Office of the County of Hudson, New Jersey in Deed Book 5805, Page 230.

## **Exhibit C**

## **AFFILIATE MASTER LEASES AND SUBLEASES**

1.  Master Lease dated December 31, 2020, between J Supor 136-1 Realty LLC as Landlord and J. Supor Realty LLC as Tenant as to property located at 1000 Frank E Rodgers Blvd (Block 136; Lot 1.07) Harrison, NJ.

2. Master Lease dated December 31, 2020, between J Supor 172 Realty LLC as Landlord and J. Supor & Son Trucking and Rigging Co., Inc. as Tenant as to property located at 1000 Frank E Rodgers Blvd (Block 172; Lot 1) Harrison, NJ.

3. Master Lease dated December 31, 2020, between J Supor 172 Realty LLC as Landlord and J. Supor & Son Trucking and Rigging Co., Inc. as Tenant as to property located at 1000 Frank E Rodgers Blvd (Block 136; Lot 1.07) Harrison, NJ.

319856285.1

## EXHIBIT D

## UNEXPIRED LEASES

1.  Parking Facility Management Agreement dated October 1, 2015 by and between S&B Realty and M&J Coraprelli, LLC for the exclusive right and obligation to manage parking at 1000 Frank E Rodgers Blvd., Harrison, NJ.

# EXHIBIT E

# DRAFT SALE ORDER

319856285.1

## EXHIBIT F

**Requirements for Consideration of Assignment
of a Redevelopment Agreement
in the Town of Harrison, County of Hudson, New Jersey**

**I. Introduction:**

A request has been made to the Town of Harrison, County of Hudson, New Jersey ("Harrison") for the assignment of a current Financial Agreement (the "FA") authorizing a Long Term Tax Abatement.  The FA is a contract by and between the Town of Harrison, with offices located at 318 Harrison Avenue, Harrison, NJ 07029 and
_____ , the designated redeveloper ("Redeveloper") for the redevelopment project located at
_____ (the "Project").  The entity requesting the assignment shall be referred to hereafter as the "Transferee".  The statutes governing such contracts and projects is referred to hereafter collectively as the "Law".

NOTE:  Assignment of the FA presumes that the Transferee will also be the assignee for any and all "Redeveloper Agreements" (the "RDA") by and between Harrison and/or any instrumentalities of Harrison and the Redeveloper.

**II. Basis for Approval:**

Under the terms of the FA, such assignments are only permitted with the approval of Harrison, which approval is subject to the satisfaction of the following requirements:

1)  the Transferee does not own any other Project subject to long term tax exemption at the time of transfer;

2)  the Transferee is formed and eligible to operate under the Law;

3) the Redeveloper is not then in Default of the FA or the Law;

4) the Entity's obligations under the FA are to be fully assumed by the Transferee;

5) the Transferee agrees to abide by all terms and conditions of the FA including, without limitation, the filing of an application pursuant to N.J.S.A. 40A:20-8, and any other terms and conditions of the Town in regard to the Project;

6) the principal owners of the Transferee entity possess a similar business reputation, financial qualifications and credit worthiness as the Redeveloper and are otherwise reputable.

The Town reserves the right, at its sole discretion, to waive any of the requirements for the approval of the assignment.

319856285.1

**III.  Fees:**

The Town charges a fee of two percent (2%) of the then applicable Annual Service Charge for that portion of the Project being transferred for processing any application for assignment of the FA.

**IV.  Information Required:**

1.  <u>Description of Transferee and Its Capabilities</u> - Provide a brief description of the Transferee organization and its capabilities to implement the Project and to meet the requirements of the RDA and the FA.  Include a notarized statement disclosing the ownership and capital structure of the Transferee.  The disclosure should set forth the names and addresses of all general partners, if a partnership, or all shareholders who own 10% or more of its stock of any class using the form attached hereto as Exhibit A.  If any stockholder or partner is itself a partnership or corporation, the disclosure should include the names and address of partners or shareholders who own 10% or more of the stock of any class thereof.  This process should continue along the chain or ownership until all names and addresses of every non-incorporated and non-partnership individual having the specified level of involvement, are disclosed.  The disclosure should also identify the percentage of ownership by minorities and women.

2.  <u>Personnel</u> - Please provide a brief resume of the individuals in the Transferee organization who would be responsible to implement the Project, indicating who will serve as the Project Manager.  Provide a brief resume for each such person and describe his/her other experience in on projects of a similar nature to the Project.

3.  <u>Summary of Related Experience</u> - Provide evidence of the Transferee's ability to perform on projects of a similar scope and nature.  At a minimum, the statement should provide a list of at least three projects of similar scope which were completed after January 1, 2018.

4.  <u>Current Projects</u> - Provide a list of all current projects and identify how such projects will not serve to inhibit the Transferee's ability to meet the requirement of the RDA and the FA.

5.  <u>Sub-Contracting Requirements</u> - Indicate what portions of work, if any, would be performed by other entities operating on a sub-contract basis.

6.  <u>New Jersey Presence</u> - Describe Transferee's presence in New Jersey, specifically including the number and type of staff and the location of offices.

7.  <u>References</u> - Provide the names, addresses and phone numbers of three professionals within the redevelopment industry, other than sub-contractors or former employees, who are qualified to comment on the Transferees previous performance as a redeveloper.  Indicate the basis of each reference's knowledge of such previous performance.

8.  <u>Assurances Regarding Performance</u> - Please indicate what types of guarantees or assurances that the Transferee intends to utilize to provide comfort to Harrison that the Transferee will be

319856285.1

able to complete the Project.  Some examples might include the use of performance bonds, pledged letters of credit or similar financial instruments that indicate a third party's confidence in Transferee's capability.

9.  Financial Condition – Please provide an audited financial statement for the Transferee for the most recently completed fiscal year.  If the Transferee is a subsidiary organization, provide audited financial statements for the most recently completed fiscal year for all entities to which the Transferee is subordinate.  (Note:  Harrison reserves the right to require the submission of audited financial statements for other fiscal periods and to require submission of other related financial information if it deems it necessary as part of the process for the approval of the assignment)

10.  Bank Reference – Please provide the name, address and contact person for the principal bank utilized by the Transferee.

11.  Defaults – Please provide a complete list of any and all projects for which the Transferee, and/or any entities to which it is subordinate, for any reason, failed to complete any development project for which it was responsible.  Provide explanations in each case as to reasons why the project was not completed.

12.  Conflicts - Describe any existing or potential legal or other policy conflicts of interest or appearance of conflict of interest the Transferee may have, or which reasonably might arise, because of Transferee's involvement in this Project.  In preparing the response, please be aware that Harrison's redevelopment activities frequently involve other entities, including other governmental entities and other redevelopers.

13.  Investigations - State whether Transferee, any entities to which it is subordinate or any of the principals of Transferee or any entities to which it is subordinate has been (in the past three years), or are currently the subject of any Federal, State or County investigation, and indicate the nature of that investigation.

14.  Litigation - Indicate any pending litigation in which Transferee and/or any entities to which it is subordinate and/or any of the principals of Transferee or any entities to which it is subordinate has been is involved which may directly or indirectly affect the Transferee's ability to complete the Project.

15.  Authorization for Release of Information –Provide evidence that written authorization has been given to all persons, corporations or other related entities to furnish such information as may be necessary to verify the representations made to Harrison.

16.  Other Information - Discuss any other factors not mentioned above which you believe are relevant to Harrison's approval of the request for assignment of the RDA and FA.

17.  Authorization to Apply – Provide a corporate resolution, notarize3d or attested to by the Secretary of Transferee, that the Transferee has the legal authority to submit such documents as

are required herein and that it is willing to be bound by all of the conditions set forth herein, to be submitted generally in a form as set forth in the attached Exhibit B.

<u>EXHIBIT A-1</u>

## <u>DISCLOSURE OF OWNERSHIP</u>

<u>Instructions:</u>

New Jersey law (NJSA 52:25-24.2) requires that all corporations and partnerships seeking a public contract submit a list of the names and addresses of all principals who own more than 10% of any class of stock, or 10% or more of the total stock (if a corporation), or 10% or more of the partnership.  In addition, if the Developer has as one or more of its owners a corporation or partnership, the ownership of those entities must be similarly disclosed, and that process shall continue down the entire chain of ownership until the names and addresses of every unincorporated stockholder and/or individual partner with more than a 10% interest is disclosed.

This information must be provided on the forms following these instructions entitled "Disclosure of Ownership." Separate forms should be used for each corporation or partnership included in the chain of ownership. Each form must be signed by an officer of the corporation and be attested to by the secretary (if a corporation) or by all partners (if a partnership). Partnership forms must be notarized as well.

Failure to properly complete this disclosure statement or to submit it as part of the application will be grounds for the application to be rejected.

319856285.1

EXHIBIT A-2

DISCLOSURE OF OWNERSHIP

(for use by Partnerships)

I.    Partners

Name                        Home Address                    Signature

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____
Name of Partnership

_____  _____
Signature of Notary as to Signatures        Date

319856285.1

EXHIBIT A-3

DISCLOSURE OF OWNERSHIP

(for use by Corporations)

I.    Principals (list all owners of 10% or more of stock)

| Name | Home Address | Title | %Owned |
|------|-------------|-------|--------|
| | | | |

Name of Corporation

_____

By:   _____

Signature of Officer       Date

Attested by:   _____  _____

Secretary of Corporation    Date

(Affix Corporate Seal)

319856285.1

<u>EXHIBIT B</u>

<u>RESOLUTION AUTHORIZING SUBMISSION OF APPLICATION</u>

Please attach a notarized resolution that follows the format below:

<u>FORM OF CERTIFIED CORPORATE RESOLUTION</u>

PLEASE TAKE NOTICE that a meeting of the Board of Directors of the

_____ was held at \_\_\_\_\_ A.M. on _____
  (Name of Corporation)                                 P.M.        (Date)
at

_____
(Address)
at which time the following RESOLUTION was unanimously adopted:

RESOLVED that this Corporation is authorized to submit an application to the Municipality for the assignment of a long term tax abatement.

BE IT FURTHER RESOLVED that if this Corporation's application is accepted by the Municipality, the President of this Corporation is authorized to execute and deliver on its behalf, a contract with the Municipality, substantially in agreement with the terms of these Requirements, with such changes thereto as may be negotiated by the parties.

The undersigned Secretary of this Corporation hereby certifies that the foregoing Resolution was lawfully adopted by the Board of Directors of this Corporation on the date set forth above, that the foregoing Resolution is a true, accurate and complete copy of the Resolution so adopted and placed in the Corporation's records, and that they are in full force and effect as of the date hereof.

_____ _____
Secretary                                Date

(Affix Corporate Seal)

(Use of a NJ Notary Public in lieu of a corporate secretary is acceptable)

319856285.1

## **EXHIBIT G**

## **ENVIRONMENTAL DOCUMENTS**

FER 1 PROPERTY, FER 2 PROPERTY, and FER 3 PROPERTY
- Phase I Environmental Site Assessment/Preliminary Assessment Report, dated July 19, 2024

FER 1 PROPERTY (1000 Frank E. Rodgers Blvd., Harrison, NJ, Block 151, Lot 5.02; Block 149, Lot 1.02; Block 137, Lot 17.02)
- 2018 PAR
  - PAR CID
  - S&B October 2018 PAR Compiled
- 2019 SIR RIR
  - RI CID
  - SI CID – correct
  - SI RI Compiled
  - Appendices
  - Drawings
  - Forms
  - Tables

FER 2 PROPERTY (1000 Frank E. Rodgers Blvd., Harrison, NJ, Block 136, Lot 1.07)
- 2018-06-4 RAO-A Letter
- 2018-12-11 RAO-A Letter
- 2019-02-07 RAO-A Letter
- July 12, 2017 Peak Environmental Response to NOV
- 2018 UST-RIR-RAR
  - Compiled SIR-RIR-RAR
  - Appendices
  - Drawings
  - Forms
  - Lab Data
  - Tables
- 2019 PAR
  - Compiled PAR 2019
- 2019 SIR
  - Appendices
  - Drawings
  - Forms
  - Tables
  - 2019 SIR text
- 2021 RIR RAW
  - 2021 RAW CID
  - 2021 RIR RAW Text

319856285.1

- o Appendices
- o Drawings
- o Forms
- o Tables

<u>FER 3 PROPERTY (1000 Frank E. Rodgers Blvd., Harrison, NJ, Block 172, Lot 1)</u>
- September 2017 PAR
- 2019 PAR
- 2020 SIR RIR
  - o SIR RIR Text
  - o Appendices
  - o Drawings
  - o Forms
  - o Tables
- 2021 RAR
  - o Farber 2021 RAR Text
  - o Appendices
  - o Drawings
  - o Forms
  - o Tables
- 06232022 Farber RAO
- 20240529 RAO Amendment

319856285.1

## **EXHIBIT H**

## **FORM OF FLOOD NOTIFICATION**

1. Is any or all of the property located wholly or partially in the Special Flood Hazard Area ("100-year floodplain") according to FEMA's current flood insurance rate maps for your area?  Portion of Block 137, Lot 17.02 only

2. Is any or all of the property located wholly or partially in a Moderate Risk Flood Hazard Area ("500-year floodplain") according to FEMA's current flood insurance rate maps for your area? Portion of Block 137, Lot 17.02 only

3. Is the property subject to any requirement under federal law to obtain and maintain flood insurance on the property? NO. Properties in the special flood hazard area, also known as high-risk flood zones, on FEMA's flood insurance rate maps with mortgages from federally regulated or insured lenders are required to obtain and maintain flood insurance. Even when not required, FEMA encourages property owners in high-risk, moderate-risk, and low-risk flood zones to purchase flood insurance that covers the structure and the personal property within the structure. Also note that properties in coastal and riverine areas may be subject to increased risk of flooding over time due to projected sea level rise and increased extreme storms caused by climate change which may not be reflected in current flood insurance rate maps.

4. Have you ever received assistance, or are you aware of any previous owners receiving assistance, from FEMA, the U.S. Small Business Administration, or any other federal disaster flood assistance for flood damage to the property? NO. For properties that have received federal disaster assistance, the requirement to obtain flood insurance passes down to all future owners. Failure to obtain and maintain flood insurance can result in an individual being ineligible for future assistance.

5. Is there flood insurance on the property? NO. A standard insurance policy typically does not cover flood damage. You are encouraged to examine your policy to determine whether you are covered.

6. Is there a FEMA elevation certificate available for the property? NO. If so, the elevation certificate must be shared with the buyer. An elevation certificate is a FEMA form, completed by a licensed surveyor or engineer. The form provides critical information about the flood risk of the property and is used by flood insurance providers under the National Flood Insurance Program to help determine the appropriate flood insurance rating for the property. A buyer may be able to use the elevation certificate from a previous owner for their flood insurance policy.

319856285.1

7. Have you ever filed a claim for flood damage to the property with any insurance provider, including the National Flood Insurance Program? If the claim was approved, what was the amount received? NO.

8. Has the property experienced any flood damage, water seepage, or pooled water due to a natural flood event, such as heavy rainfall, costal storm surge, tidal inundation, or river overflow? NO. If so, how many times? N/A

Explain any "yes" answers that you give in this section:

319856285.1

ACKNOWLEDGMENT OF SELLER

Seller affirms that the information set forth in this Disclosure Statement is accurate and complete to the best of Seller's knowledge, but this Disclosure Statement is not a warranty as to the condition of the Property.

SELLER PRINT NAME: Joseph Sypor III
SELLER SIGNATURE:
DATE: 8/15/24

RECEIPT AND ACKNOWLEDGMENT BY PROSPECTIVE BUYER

Purchaser acknowledges receipt of this Disclosure Statement prior to signing this Agreement. Purchaser acknowledges that this Disclosure Statement is not a warranty by Seller and that it is Purchaser's responsibility to satisfy itself as to the condition of the Property.

PURCHASER PRINT NAME:
PURCHASER SIGNATURE:
DATE:

319811024.2

## LIST OF SCHEDULES

Schedule 1          Purchased Contracts

Schedule 2          Equipment Leases

Schedule 3          Tax Appeals

Schedule 4          Purchaser Bid Allocation

319856285.1

Schedule 1
Purchased Contracts

Parking Facility Management Agreement dated October 1, 2015 by and between S&B Realty and M&J Coraprelli, LLC for the exclusive right and obligation to manage parking at 1000 Frank E Rodgers Blvd., Harrison, NJ.

Amended and Restated Redevelopment Agreement for a Portion of the Redevelopment Area in the Town of Harrison, Hudson County, New Jersey by and Between The Harrison Redevelopment Agency, The Town of Harrison (but only with respect to the specific limited provisions enumerated herein) and Supor 136- 1 Realty LLC, Supor Properties Enterprises LLC and Supor- 172 Realty LLC, dated February 24, 2021

319856285.1

Schedule 2
Equipment Leases

Not Applicable

319856285.1

Schedule 3
Pending Tax Appeals


FER 3 Property: Block 172, Lot 1 – 1000 FE Rogers Boulevard – Appealed for years 2020, 2021

FER 1 Property: Block 149, Lot 1.02 – 1000 FE Rogers Boulevard – Appealed for years 2020, 2021

FER 2 Property: Block 136, Lot 1.07 – 1000 FE Rogers Boulevard – Appealed for years 2020, 2021

319856285.1

Schedule 4
Purchase Price Allocation

Allocation: $48,000,000
- 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 5.02 in block 151, lot 17.02 in block 137 and lot 1.02 in block 149) ("FER 1 Property"); $24,000,000.00
- 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1.07 in block 136) ("FER 2 Property");  $9,600,000
- 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1 in block 172) ("FER 3 Property"),  $14,400,00

319856285.1

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Forman Holt
365 West Passaic Street
Suite 400
Rochelle Park, NJ 07662
Telephone: (201) 857-7110
Michael E. Holt, Esq. (MEH-8735)
*Counsel for the Debtors*

K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Daniel M. Eliades, Esq. (DME-6203)
David S. Catuogno, Esq (DSC-1397)
William Waldman, Esq. (WLW-1452)
*Special Counsel for the Debtors*

**Order Filed on October 7, 2024
by Clerk,
U.S. Bankruptcy Court
District of New Jersey**

In re:

Supor Properties Enterprises LLC, *et al.*[1],

Debtors.

Case No. 24-13427 (SLM)
Judge: Hon. Stacey L. Meisel
Chapter 11
(Jointly Administered)

## ORDER (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered two (2) through forty-six (46), is hereby **ORDERED.**

**DATED: October 7, 2024**

Honorable Stacey L. Meisel
United States Bankruptcy Judge

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Supor Properties Enterprises LLC (5580); J Supor 136-1 Realty LLC (3205); Supor-172 Realty LLC (EIN No. 5662); Supor Properties Breiderhoft LLC (7258); Supor Properties Devon LLC (6357); Shore Properties Associates North LLC (6707); Supor Properties 600 Urban Renewal, LLC (8604); JS Realty Properties, LLC (2497); and Supor Properties Harrison Avenue, LLC (1728).

F0225000 - 1                    F0219661 - 1
320764512.2

Page 2

| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

Upon the motion, dated April 22, 2024 (the "**Sales Procedures Motion**"), of Supor Properties Enterprises LLC; J Supor 136-1 Realty LLC; Supor-172 Realty LLC; Supor Properties Breiderhoft LLC; Supor Properties Devon LLC; Shore Properties Associates North LLC; Supor Properties 600 Urban Renewal, LLC; JS Realty Properties, LLC; and Supor Properties Harrison Avenue LLC (each a referred to as a "**Debtor**" and collectively as the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105(a), 363, 365, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (the "**Sale Procedures Order**") *(I) (a) Approving the Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing Sale of Assets and (b) Granting Related Relief* [ECF. No. 58] including (i) authorizing Debtors to designate Stalking Horse Bidders and approving the break-up fee; (ii) approving the sale procedures (the "**Sale Procedures**") related to one or more sales of the Debtors' assets, including the sale of the Properties (the "**Sale**"); (iii) the form and manner of notices of Sale Procedures and Auctions, Cure Amounts, designation of Stalking Horse Bidder and Successful Bidder(s) and Back-up Bidder(s); and (iv) establishing certain notice procedures for determining cure amounts for executory contracts and unexpired leases to be assumed and assigned in connection with such Sale (the "**Assumption and Assignment Procedures**"); and this Court entered the Sale Procedures Order on April 29, 2024 [ECF. No. 80]; and the Purchaser having been selected as the Successful Bidder for the Properties set forth in the Purchase and Sale Agreement (as defined herein) (each referred to as a "**Property**" and collectively as the "**Properties**"); and

F0225001 - 1
320764512.2

F0219661 - 1

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

upon the Purchaser and certain of the Debtors (the "**Sellers**") having entered into that certain Purchase and Sale Agreement, dated as of August 15, 2024 (attached hereto as **Exhibit A**, and as it may be amended, modified, or supplemented in accordance with the terms hereof and thereof, the "**Purchase and Sale Agreement**");[2] and pursuant to the Purchase and Sale Agreement, Purchaser having the ability to designate one or more affiliates of Purchaser as designee for any or all of the Properties and Assumed Liabilities (or portions thereof) (the "**Purchaser Designees**"), each of which shall be entitled to the rights and protections set forth in this order (this "**Sale Order**"), including, without limitation, paragraph 28 hereof; and the Debtors, in consultation with the Consultation Parties and consistent Sale Procedures and the Sale Procedures Order, having determined to withdraw the Properties from the proposed Auction and to seek approval of a private sale of the Properties to Purchaser or to Purchaser's Designee consistent with the Purchase and Sale Agreement; and this Court having conducted a hearing on October 1 and 4, 2024 (collectively, the "**Sale Hearing**"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Purchase and Sale Agreement, and this Sale Order; and this Court having reviewed and considered all objections thereto including the Limited Objection of the Town of Harrison and Harrison Redevelopment Agency [ECF 250 and 257] (the "**Harrison Objection**") and the Objection of The Port Authority of New York and New Jersey and The Port Authority Trans-Hudson Corporation [ECF 218] (the "**Port Authority Objection**"), and the arguments of

---

[2] Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Purchase and Sale Agreement or, if not defined therein, in the Sale Procedures or the Sale Procedures Motion.

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

counsel made, and the evidence adduced, at the Sale Procedures Hearing and the Sale Hearing; and the Harrison Objection having been withdrawn and resolved pursuant to the terms of this Order and a related consent order between Harrison Redevelopment Agency and Purchaser; and the Port Authority Objection having been resolved pursuant to the terms of this Order; and upon the entire record of the Sale Procedures Hearing and the Sale Hearing, and after due deliberation thereon, and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT:[3]**

**Jurisdiction, Final Order and Statutory Predicates**

A.      This Court has jurisdiction to hear and determine the approval of the Sale under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.      The statutory predicates for the relief sought by the Debtors are sections 105(a),

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Page 5

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

363, 365 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**").

**Notice of the Sale, Proposed Auction, and the Cure Payments**

D.       Actual written notice of the Sale Hearing, the proposed Auction, the Sale, and the assumption, assignment and/or transfer of the Purchased Contracts, and a reasonable opportunity to object or be heard with respect thereto and to the entry of this Sale Order has been afforded to all known interested Persons and entities entitled to receive such notice, including, but not limited to, the following parties: (i) counsel to the Lenders; (ii) the Office of the United States Trustee; (iii) all entities (or counsel therefore) known to have asserted any lien, charge, claim or encumbrance on the Properties; (iv) all federal, state and local regulatory or taxing authorities which are reasonably ascertainable by the Sellers to have a known interest in the Properties; (v) known non-Debtor counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; and (vi) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

E.       The Debtors published notice of the Sale, the Sale Procedures, the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the Sale Order as required in the Sale Procedures Order.

F.       In accordance with the provisions of the Sales Procedures Order, the Debtors have served notice (the "**Assumption Notices**") upon all of the non-Debtor counterparties to the Purchased Contracts setting forth: (i) the contract(s) and/or lease(s) that may be assumed by the

F0225001 - 1       F0219661 - 1
320764512.2

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

Sellers and assigned to the Purchaser; (ii) the name and address of the counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Sellers and/or the Purchaser to withdraw such request for assumption and assignment of the Purchased Contract(s) prior to the Closing); (iv) the amount, if any, determined by the Sellers to be necessary to be paid to cure and compensate for any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (v) the deadlines by which any such Counterparty must file an objection to the proposed assumption and assignment of any Purchased Contract.

G.      The service of such Assumption Notices (i) was good, sufficient and appropriate under the circumstances of these Chapter 11 Cases; (ii) provided such counterparties with a full and fair opportunity to object to such assumption, assignment, or transfer and to the proposed Cure Amount set forth in the Assumption Notice; and (iii) was in compliance with the Sale Procedures Order and applicable provisions of the Bankruptcy Rules and Local Rules. Accordingly, no other or further notice need be given in connection with such assumption, assignment, or transfer or with respect to the amount of Cure Costs.

H.      As evidenced by the affidavits of service previously filed with this Court and as approved under the Sale Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the proposed Auction, the Sale Hearing, the assumption and assignment of the Purchased Contracts, the entry of this Sale Order, and the Sale has been provided to all parties-in-interest; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties-in-interest to object, and to be

Page 7
Debtors: Supor Properties Enterprises LLC, *et al.*
Case No.: 24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, and
(III) Granting Related Relief

heard, with respect thereto, and was provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and the applicable Local Rules; and (iii) no other or further notice of such matters is necessary or shall be required.

**Business Judgment**

I.      The Sellers have demonstrated good, sufficient and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and other transactions contemplated by the Purchase and Sale Agreement and any additional or ancillary documents contemplated thereby (the **"Transaction Documents"**), including, without limitation, the assumption, assignment, and/or transfer of the Purchased Contracts (collectively, the **"Transactions"**) pursuant to sections 363 and 365 of the Bankruptcy Code, and such action is an appropriate exercise of the Sellers' business judgment and in the best interests of the Sellers, their Estates, and their creditors. Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of depreciation of the value of the Properties and/or a significant increase in the amount of claims secured by the Properties if the Sale is not consummated promptly; (ii) the Purchase and Sale Agreement constitutes the highest or otherwise best offer for the Properties; (iii) the Purchase and Sale Agreement and the Closing will present the best opportunity to realize the value of the Properties and avoid decline and/or devaluation of the Properties or the Sellers' equity therein; and (iv) unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Purchase and Sale Agreement, potential creditor recoveries may be substantially diminished.

F0225001 - 1                    F0219661 - 1
320764512.2

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

### Good Faith of the Purchaser; No Collusion

J.      Neither the Purchaser nor any Purchaser Designee is an insider (as that term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors.

K.      The Purchaser and the Purchaser Designees, as applicable, are purchasing the Properties in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to, and granted pursuant to paragraph 27 below, the full rights, benefits, privileges, and protections of that provision, and each has otherwise proceeded in good faith in all respects in connection with the Transaction in that, *inter alia*: (i) the Purchaser recognized that the Sellers were free to deal with any other party interested in acquiring the Properties; (ii) the Purchaser complied with the provisions in the Sale Procedures Order; (iii) the Purchaser agreed to subject its bid and the Purchase and Sale Agreement to the competitive bidding procedures set forth in the Sale Procedures Order; (iv) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (v) neither the Purchaser nor any Purchaser Designee has violated section 363(n) of the Bankruptcy Code by any action or inaction; (vi) no common identity of directors or controlling stockholders/members exists between the Purchaser or the Purchaser Designees, on the one hand, and any of the Debtors, on the other hand; and (vii) the negotiation and execution of the Purchase and Sale Agreement and Transaction Documents were at arms' length and in good faith.

L.      None of the Debtors, the Purchaser, or the Purchaser Designees or any of their respective current and former officers, directors, managers, members, partners, managed funds, affiliates,     agents,     advisors,     professionals,     and     representatives     (collectively,     the

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

**"Representatives"**), has engaged in any conduct that would cause or permit the Purchase and Sale Agreement or any of the Transaction Documents, or the consummation of the Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

### Highest and Best Offer

M.      In accordance with the Sale Procedures Order, the Purchase and Sale Agreement was deemed a Qualified Bid (as defined in the Sale Procedures Order).

N.      The Debtors conducted a sale process in accordance with, and have otherwise complied in all material respects with, the Sale Procedures Order. The  process set forth in the Sale Procedures Order afforded a full, fair, and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Properties. The Sale Procedures were duly noticed and conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Properties.

O.      The Purchase and Sale Agreement constitutes the highest and best offer for the Properties and will provide a greater recovery for the Sellers' Estates than would be provided by any other available alternative. The Sellers' determination that the Purchase and Sale Agreement constitutes the highest and best offer for the Properties constitutes a valid and sound exercise of the Sellers' business judgment.

P.      The Purchase and Sale Agreement represents a fair and reasonable offer to purchase the Properties under the circumstances of these Chapter 11 Cases. No other Person or entity or

Debtors:          Supor Properties Enterprises LLC, *et al.*
Case No.:         24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                  Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                  Assignment of Certain Executory Contracts and Unexpired Leases, and
                  (III) Granting Related Relief

group of entities has offered to purchase the Properties for greater economic value to the Sellers' Estates than the Purchaser.

Q.      Approval of the Purchase and Sale Agreement, and the prompt consummation of the Transactions contemplated thereby, is in the best interests of the Sellers, their creditors, their Estates, and other parties-in-interest.

**No Fraudulent Transfer; Not a Successor**

R.      The Purchase and Sale Agreement and Transaction Documents were not entered into, and the Transactions are not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under Applicable Law, and none of the Parties to the Purchase and Sale Agreement or any of the Transaction Documents are consummating the Transactions with any fraudulent or otherwise improper purpose. The Purchase Price for the Properties constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act and (iii) reasonably equivalent value, fair consideration, and fair value under any other Applicable Laws of any Governmental Authority.

S.      Except as expressly set forth in the Purchase and Sale Agreement with respect to the Assumed Liabilities, after the Closing neither the Purchaser nor any Purchaser Designee shall have any liability, responsibility, or obligations of any kind or nature whatsoever for any Interest (as defined below) of or against the Sellers, or otherwise related to the Properties, and arising prior to the Closing, by reason of the transfer of the Properties to the Purchaser or such Purchaser Designee. Neither the Purchaser nor any Purchaser Designee shall be deemed, as a result of any

F0225001 - 1                          F0219661 - 1
320764512.2

Page 11
Debtors:        Supor Properties Enterprises LLC, *et al.*
Case No.:       24-13427 (SLM) (Jointly Administered)
Caption of Order:   Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                Assignment of Certain Executory Contracts and Unexpired Leases, and
                (III) Granting Related Relief

action taken in connection with the Transactions, to: (1) be a successor (or other such similarly situated party) to any of the Sellers (other than with respect to the Assumed Liabilities as expressly stated in the Purchase and Sale Agreement); or (2) have, *de facto* or otherwise, merged or consolidated with or into any of the Sellers. The Purchaser and the Purchaser Designees are not acquiring or assuming any Interest arising prior to the Closing, except as expressly set forth in the Purchase and Sale Agreement with respect to the Assumed Liabilities.

**Validity of Transfer**

T.      Subject to the entry of this Sale Order, the Sellers have full corporate power and authority (i) to perform all their obligations under the Purchase and Sale Agreement and the Transaction Documents, and the Sellers' prior execution and delivery thereof and performance thereunder, is hereby ratified in full, and (ii) to consummate the Transactions. The Purchase and Sale Agreement and Transaction Documents, and the Transactions contemplated thereby, have been duly and validly authorized by all necessary corporate action. No further consents or approvals are required for the Sellers to consummate the Transactions or otherwise perform their respective obligations under the Purchase and Sale Agreement or the Transaction Documents, except in each case as otherwise expressly set forth in the Purchase and Sale Agreement or applicable Transaction Documents.

U.      At Closing, the transfer of the Properties to the Purchaser or the Purchaser Designees, including, without limitation, the assumption, assignment and transfer of the Purchased Contracts, will be a legal, valid, and effective transfer thereof, and vest the Purchaser and the Purchaser Designees with all right, title, and interest of the Sellers in and to the Properties, free

Debtors:         Supor Properties Enterprises LLC, *et al.*
Case No.:        24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                 Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                 Assignment of Certain Executory Contracts and Unexpired Leases, and
                 (III) Granting Related Relief

and clear of all liens, claims, encumbrances, and Interests accruing or arising any time prior to the

Closing Date, subject to paragraph 33 of this Sale Order and except as expressly set forth in the

Purchase and Sale Agreement with respect to the Assumed Liabilities or Permitted Exceptions.[4]

### Section 363(f) Is Satisfied

V.      The Purchaser and the Purchaser Designees would not have entered into the

Purchase and Sale Agreement and would not consummate the Transactions if the sale of the

Properties, including the assumption, assignment and transfer of the Purchased Contracts, to the

Purchaser or the Purchaser Designees, as applicable, were not free and clear of all liens, claims,

encumbrances, and other Interests of any kind or nature whatsoever (except as expressly set forth

in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed

Liabilities), or if the Purchaser or the Purchaser Designees, any of their respective Affiliates or

subsidiaries, or any of their respective Representatives, would, or in the future could, be liable for

any of such liens, claims, encumbrances, and other Interests of any kind or nature whatsoever

(except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted

Exceptions and Assumed Liabilities). For avoidance of doubt, the Sellers and Purchaser

acknowledge that the "Easements", as defined in the Port Authority Objection, are Permitted

Exceptions under the Purchase and Sale Agreement and Purchaser shall take title to the Properties

subject to such Easements and nothing contained herein shall extinguish, discharge or modify such

Easements.

---

[4] For the avoidance of doubt, Permitted Exceptions shall include special tax assessments including any
assessments under the RDA if the RDA is a Purchased Contract.

F0225001 - 1                          F0219661 - 1
320764512.2

Debtors:        Supor Properties Enterprises LLC, *et al.*
Case No.:       24-13427 (SLM) (Jointly Administered)
Caption of Order:   Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                    Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                    Assignment of Certain Executory Contracts and Unexpired Leases, and
                    (III) Granting Related Relief

W.     The Sellers may sell or otherwise transfer the Properties free and clear of all liens, claims, encumbrances, and other Interests because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of liens, claims, encumbrances, and other Interests against the Sellers, their Estates or any of the Properties who did not object, or who withdrew their objections, to the Sale are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such liens, claims, encumbrances, and other Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their liens, claims, encumbrances, or other Interests, if any, automatically attach to the proceeds of the Sale ultimately attributable to the Properties in which such creditor alleges or asserts an liens, claims, encumbrance, or other Interests, in the same order of priority, with the same validity, force and effect, that such liens, claims, encumbrances or other Interests had immediately prior to consummation of the Sale as against the Properties, subject to any claims and defenses the Sellers and their Estates may possess with respect thereto.

X.     As used in this Sale Order, the term "**Interest**" includes, in addition to the types of claims described in paragraph Y below, all of the following, in each case to the extent against or with respect to any of the Sellers or in, on, or against or with respect to any of the Properties: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, deposits, credits, allowances, options, rights,

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this chapter 11 case, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (a) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of setoff (except for setoffs validly exercised before the Petition Date), rights of use or possession, subleases, leases, conditional sale arrangements, deferred purchase price obligations, or any similar rights; (b) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff (except for setoffs validly exercised before the Petition Date), indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Sellers or any other person, consent rights, options, contract rights, Franchise Agreements, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (c) all debts, liabilities, obligations, contractual rights and claims, Franchise Agreement claims, and labor,

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

employment, and pension claims; (d) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Sellers' or the Purchaser's interest in the Properties, or any similar rights; (e) any rights under labor or employment agreements; (f) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, **ERISA**)), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Sellers or any multiemployer plan to which the Sellers have at any time contributed to or had any liability or potential liability; (g) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (i) ERISA, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (vii) the Americans with Disabilities Act of 1990, (viii) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (ix) state discrimination laws, (x) state unemployment compensation laws or any other similar state laws, (xi) any other state or federal benefits or claims relating to any employment with the Sellers or any of their predecessors, or (xii) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (h) any bulk sales or similar law; (i) any tax statutes or ordinances, including,

Page 16
Debtors:         Supor Properties Enterprises LLC, *et al.*
Case No.:        24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                 Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                 Assignment of Certain Executory Contracts and Unexpired Leases, and
                 (III) Granting Related Relief

without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Properties or business of the Sellers before the closing of the Sale; (j) any unexpired and executory contract or unexpired lease to which the Sellers are a party that is not assumed pursuant to this Sale Order or other Final Order of this Court; (k) any other excluded liabilities under the Purchase and Sale Agreement; and (l) Interests arising under or in connection with any acts, or failures to act, of the Sellers or any of their predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act of 1933, the Securities Exchange Act of 1934, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under Applicable Law or otherwise.

Y.      Except as expressly set forth in the Purchase and Sale Agreement with respect to the Assumed Liabilities or Permitted Exceptions, and without limiting the nature or scope of paragraph X above, the transfer of the Properties, including the assumption, assignment and/or transfer of the Purchased Contracts, to the Purchaser or the Purchaser Designees, as applicable, will not, except for obligations to pay all Cure Costs, subject the Purchaser or the Purchaser Designees to any liability or encumbrance whatsoever with respect to the operation or condition of the Properties prior to the Closing or with respect to any facts, acts, actions, omissions, circumstances or conditions existing, occurring or accruing with respect thereto prior to the Closing Date, including, without limitation, any liability or encumbrance arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance

Page 17

| Debtors: | Supor Properties Enterprises LLC, *et al.* |
|---|---|
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

arrangements, change in control agreements or other similar agreements to which any Debtor is or was a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Sellers, (iii) the cessation of the Sellers' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1990, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environment liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any Environmental Laws, (vi) products liability or warranties, (vii) any bulk sales or similar law, (viii) any litigation by or against the Sellers and (ix) the Laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, products liability, or successor, vicarious or transferee liability. For the avoidance of doubt, the liabilities and encumbrances set forth in this paragraph are included in the defined term "**Interests**" for all purposes of this Sale Order.

Debtors:         Supor Properties Enterprises LLC, *et al.*
Case No.:        24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                 Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                 Assignment of Certain Executory Contracts and Unexpired Leases, and
                 (III) Granting Related Relief

**Assumption, Assignment and/or Transfer of the Purchased Contracts**

Z.     The assumption, assignment and/or transfer of the Purchased Contracts to the Purchaser and the Purchaser Designees, as applicable, pursuant to the terms of this Sale Order is integral to the Purchase and Sale Agreement and is in the best interests of the Sellers and their Estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Sellers.

AA.    To the extent necessary or required by applicable law, the Purchaser has or will have as of the Closing Date: (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Purchased Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The respective amounts set forth in the Sellers' Assumption Notice (or any Supplemental Assumption Notice(s) served in accordance with the Assumption and Assignment Procedures)[5]

---

[5] The "Assumption Notice" referenced herein was actually an August 24, 2024, letter From the Law Firm of Forman Holt, counsel for the Debtors addressed to "All parties on the Attached Service List" (the "Cure Letter"), regarding, among other things, the cure amount. The Cure Letter was served together with all of the sale pleadings in this matter upon (1) the Town of Harrison by overnight mail; (2) the Harrison Redevelopment Agency c/o/ Paul Zarbetski, Esq, by email; (3) Anthony Sodono, Esq, and Sari Placona, Esq, counsel for the Town of Harrison and the Harrison Redevelopment Agency, by email; and (4) James Bruno Esq, counsel for the Harrison Redevelopment Agency, by email. The cure amount per the Cure Letter was $136,036 (the date the cure was calculated was not set forth). The Town of Harrison and the Harrison Redevelopment Agency did not file objections to the cure amount as set forth in the Cure Letter. As of October 1, 2024, the cure amount is $203.698.09 which shall accrue until the closing date. The per diem amount is $22.78. The total amount owed shall be paid by Purchaser on the Closing Date. The Purchaser, Purchaser Designees and the Town of Harrison and Harrison Redevelopment Agency have entered into an agreement the terms of which were placed on the record on October 4, 2024, setting forth, among other

Page 19
Debtors:        Supor Properties Enterprises LLC, *et al.*
Case No.:       24-13427 (SLM) (Jointly Administered)
Caption of Order:  Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                Assignment of Certain Executory Contracts and Unexpired Leases, and
                (III) Granting Related Relief

are the sole amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy

Code to cure all such monetary defaults and pay all actual pecuniary losses under the Purchased

Contracts.

BB.     The promise of the Purchaser or the Purchaser Designees, as applicable, to perform

the obligations first arising under the Purchased Contracts after their assumption and assignment

to the Purchaser or the Purchaser Designees, as applicable, constitutes adequate assurance of future

performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy

Code to the extent that any such assurance is required and not waived by the counterparties to such

Purchased Contracts. Any objections to the foregoing, the determination of any Cure Amount, or

otherwise related to or in connection with the assumption, assignment or transfer of any of the

Purchased Contracts to the Purchaser or the Purchaser Designees are hereby overruled on the

merits or otherwise treated as set forth in paragraph 3 below. Those non-Debtor parties to

Purchased Contracts who did not object to the assumption, assignment or transfer of their

applicable Purchased Contract, or to their applicable Cure Amount, are deemed to have consented

thereto for all purposes of this Sale Order.

CC.     Pursuant to the Purchase and Sale Agreement, the Purchaser shall maintain certain

rights to modify the list of the Purchased Contracts after the date of this Sale Order. Such

modification rights include, but are not limited to, the right of the Purchaser, prior to the Closing

Date, to designate a Contract for assumption by the Sellers and assignment to the Purchaser or

---

things, the amount of the cure. The terms and conditions placed on the record on October 4, 2024, including, but not limited to the cure amount, are incorporated herein by reference as if fully set forth herein.

| Debtors: | Supor Properties Enterprises LLC, *et al.* |
|---|---|
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

Purchaser Designees, as well as, the right of the Purchaser to re-designate any Purchased Contract as an Excluded Contract, in the event that this Court determines a Cure Amount for such Purchased Contract in an amount unacceptable to the Purchaser. Sellers shall, upon written request by Purchaser, seek a Bankruptcy Court Order for approval to modify the list of Purchased Contracts and/or Excluded Contracts, as applicable, on notice to all parties in interest, including all applicable non-Debtor counterparties, with (i) notice of the proposed treatment of their respective Executory Contract(s) or Unexpired Lease(s); (ii) the Cure Costs to be paid, if any; (iii) establishing deadlines for objection to the proposed modified treatment of the Executory Contract/Unexpired Lease; and (iv) establishing a hearing date for the resolution of any filed objections. For the avoidance of doubt, if the sale of the Purchaser does not close on the Purchase of the Properties in a timely manner as provided in the Purchase and Sale Agreement and this Order, the Purchased Contracts shall be deemed to have not been assumed by the Sellers nor assigned to the Purchaser.

## Compelling Circumstances for an Immediate Sale

DD. To maximize the value of the Properties, to reduce the administrative burden of the Chapter 11 Cases borne by the Sellers and to comply with the compromises reached by the Debtors with the Lenders in the RSA and stipulation relating to the Debtors' use of cash collateral, it is essential that the Sale of the Properties occur within the time constraints set forth in the Purchase and Sale Agreement. Time is of the essence in consummating the Sale. The Sale must be approved and consummated promptly in order to maximize the return to the Estates. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with regards to the Transactions contemplated by this Sale Order, the Purchase and Sale Agreement and the

F0225001 - 1
320764512.2

F0219661 - 1

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

Transaction Documents.

EE.     Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Purchase and Sale Agreement, the proposed transfer of the Properties to the Purchaser or the Purchaser Designees, as applicable, constitutes a reasonable and sound exercise of the Sellers' business judgment, is in the best interests of the Sellers, their Estates, and their creditors, and should be approved.

FF.     The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363 and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transactions.

GG.     The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.     The Transactions contemplated by the Purchase and Sale Agreement and the Transaction Documents are approved, as set forth in this Sale Order.

Debtors: Supor Properties Enterprises LLC, *et al.*
Case No.: 24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, and
(III) Granting Related Relief

2.     This Court's findings of fact and conclusions of law set forth in the Sale Procedures

Order are incorporated herein by reference.

3.     All objections to Sale that have not been withdrawn, waived, resolved, or otherwise

settled as set forth herein, as announced to this Court at the Sale Hearing or by stipulation filed

with this Court, and all reservations of rights included therein, are hereby denied and overruled on

the merits.

**Approval of Purchase and Sale Agreement; Binding Nature**

4.     The Purchase and Sale Agreement and all of the terms and conditions thereof, are

hereby approved as set forth herein.

5.     The consideration provided by the Purchaser for the Properties under the Purchase

and Sale Agreement is fair and reasonable and shall be deemed for all purposes to constitute

reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any

other Applicable Law, and the Transactions may not be avoided, or costs or damages imposed or

awarded, under section 363(n) or any other provision of the Bankruptcy Code.

6.     Pursuant to sections 363 and 365 of the Bankruptcy Code, the Sellers are authorized

and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate

the Sale and the other Transactions pursuant to and in accordance with the terms and conditions of

the Purchase and Sale Agreement and the Transaction Documents, and (b) execute and deliver,

perform under, consummate, implement, and take any and all other acts or actions as may be

reasonably necessary or appropriate to the performance of their respective obligations as

contemplated by the Purchase and Sale Agreement and the Transaction Documents, in each case

F0225001 - 1                              F0219661 - 1
320764512.2

| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

without further notice to or order of this Court. The Transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack or purported lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

7.      This Sale Order shall be binding in all respects upon the Sellers, their Estates, all creditors, all holders of equity interests in any Debtor, all holders of any claim(s) (whether known or unknown) against any Debtor, any holders of liens, claims, encumbrances, and other Interests of any kind or nature whatsoever against, in or on all or any portion of the Properties, all non-Debtor parties to the Purchased Contracts, the Purchaser, the Purchaser Designees, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to cases under chapter 7 under the Bankruptcy Code of any of these Chapter 11 Cases.

**Transfer of Properties Free and Clear of Interests; Injunction**

8.      Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Sellers are authorized and directed to transfer the Properties, including but not limited to the Purchased Contracts, to the Purchaser or the Purchaser Designees, as applicable, on the Closing Date in accordance with the Purchase and Sale Agreement and Transaction Documents. Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding, effective and full and complete general assignment, conveyance and transfer of such Properties transferring good and marketable and indefeasible title and interest in the Properties to the Purchaser or Purchaser Designees, as applicable, and the Purchaser or the Purchaser Designees, as applicable, shall take title to and possession of such Properties free and clear of all liens, claims, encumbrances, and

F0225001 - 1                              F0219661 - 1
320764512.2

Page 24
Debtors: Supor Properties Enterprises LLC, *et al.*
Case No.: 24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief

other Interests of any kind or nature whatsoever, subject to paragraph 33 of this Sale Order and except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed Liabilities. For avoidance of doubt, the Sellers and Purchaser acknowledge that the "Easements", as defined in the Port Authority Objection, are Permitted Exceptions under the Purchase and Sale Agreement and Purchaser shall take title to the Properties subject to such Easements and nothing contained herein shall extinguish, discharge or modify such Easements.

9. All such liens, claims, encumbrances, and/or other Interests shall automatically attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that they now have as against the Properties, subject to any claims and defenses the Sellers and their Estates may possess with respect thereto. This Sale Order shall be effective as a determination that, on and as of the Closing, all liens, claims, encumbrances, and other Interests of any kind or nature whatsoever (except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed Liabilities) have been unconditionally released, discharged, and terminated in, on or against the Properties. The provisions of this Sale Order authorizing and approving the transfer of the Properties free and clear of liens, claims, encumbrances, and other Interests shall be self-executing, and neither the Sellers nor the Purchaser (or the Purchaser Designees) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order.

10. Except as expressly permitted by the Purchase and Sale Agreement or this Sale

F0225001 - 1
320764512.2

F0219661 - 1

Debtors:        Supor Properties Enterprises LLC, *et al.*
Case No.:       24-13427 (SLM) (Jointly Administered)
Caption of Order:   Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                    Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                    Assignment of Certain Executory Contracts and Unexpired Leases, and
                    (III) Granting Related Relief

Order, all Persons and entities holding liens, claims, encumbrances, or other Interests of any kind

or nature whatsoever (other than the Permitted Exceptions and Assumed Liabilities) are hereby

forever barred, estopped and permanently enjoined from asserting their respective liens, claims,

encumbrances, or other Interests against the Purchaser or any Purchaser Designees, any of their

respective Affiliates and subsidiaries, and any of their respective Representatives, and each of their

respective property and assets, including, without limitation, the Properties. On and after the

Closing Date, to the extent the holder of a lien, claim, encumbrance or other Interest does not

comply with paragraph 11 of this Sale Order, the Purchaser or the Purchaser Designees, as

applicable, shall be authorized to execute and file such documents, and to take all other actions as

may be necessary, on behalf of each holder of a lien, claim, encumbrance, or other Interest to

release, discharge and terminate such liens, claims, encumbrances, or other Interests in, on and

against the Properties as provided for herein, as such liens, claims, encumbrances, or other Interests

may have been recorded or may otherwise exist. On and after the Closing Date, and without

limiting the foregoing, to the extent the holder of a lien, claim, encumbrance or other Interest does

not comply with paragraph 11 of this Sale Order, the Purchaser and the Purchaser Designees shall

be authorized to file termination statements or lien terminations in any required jurisdiction to

remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise

notice any lien, claim, encumbrance, or other Interest that is extinguished or otherwise released

pursuant to this Sale Order. This Sale Order constitutes authorization under all applicable

jurisdictions and versions of the Uniform Commercial Code for the Purchaser and the Purchaser

Designees to file, in accordance with the terms of this Sale Order, UCC termination statements

F0225001 - 1                    F0219661 - 1
320764512.2

Debtors:            Supor Properties Enterprises LLC, *et al.*
Case No.:           24-13427 (SLM) (Jointly Administered)
Caption of Order:   Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                    Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                    Assignment of Certain Executory Contracts and Unexpired Leases, and
                    (III) Granting Related Relief

with respect to all security interests in or liens on the Properties.

11.     On and after the Closing, each Person holding a lien, claim, encumbrance, or other Interest (other than a Permitted Exception or an Assumed Liability) shall execute such documents and take all other actions as may be reasonably necessary to release their respective liens, claims, encumbrances, or other Interests in the Properties, as such liens, claims, encumbrances, or other Interests may have been recorded or otherwise filed. At Closing, the Purchaser or the Purchaser Designees, as applicable, may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other jurisdiction in which any Debtor is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge and terminate any of the liens, claims, encumbrances, or other Interests as set forth in this Sale Order as of the Closing Date. All Persons and entities that are in possession of any portion of the Properties on the Closing Date shall promptly surrender possession thereof to the Purchaser or the Purchaser Designees at the Closing.

At the written direction of the Sellers and the Purchaser (the "DILF Direction"), at Closing the DILF Holder shall execute, convey and deliver the deed (in recordable form), affidavit of title, affidavit of consideration and any other agreements, affidavits or documents as may be reasonably required by Sellers or Purchaser (the "DILF Transfer Documents") to the applicable DILF Property to: (a) the applicable Seller (for conveyance of the Property to the Purchaser or the Purchaser Designees at Closing), or (b) the Purchaser or the Purchaser Designees. Pursuant to section 1146(a) of the Bankruptcy Code, the DILF Transfer Documents shall not be subject to any stamp, real

F0225001 - 1                    F0219661 - 1
320764512.2

Page 27
Debtors:          Supor Properties Enterprises LLC, *et al.*
Case No.:         24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                  Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                  Assignment of Certain Executory Contracts and Unexpired Leases, and
                  (III) Granting Related Relief

estate transfer, mortgage recording, sales, or other similar tax. Other than real estate taxes[6] and municipal assessments, the conveyance of the deed(s) by the DILF Holder shall be free and clear of any liens, claims, encumbrances on the applicable DILF Properties recorded after the date of recording of the DILF by the DILF Holder ("DLIF Encumbrances"). Sellers shall maintain a claim against the DILF Holder for any such DILF Encumbrances, subject to any defenses of the DILF Holder. The DILF Direction may be issued after the entry of this Sale Order. Within five (5) days after its receipt of the DILF Direction, the DILF Holder shall execute, convey and deliver the DILF Transfer Documents to the Escrow Agent to be held in escrow pursuant to the Escrow Agreement.

12. The transfer of the Properties to the Purchaser or the Purchaser Designees pursuant to the Purchase and Sale Agreement and Transaction Documents does not require any consents other than specifically provided for in the Purchase and Sale Agreement.

13. This Sale Order is and shall be binding upon and govern the acts of all Persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease. Each of the foregoing Persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release,

---

[6] As of October 1, 2024, the real estate taxes claimed by Harrison are $109,744.80 with per diem interest of $47.12.

Debtors:          Supor Properties Enterprises LLC, *et al.*
Case No.:         24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                  Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                  Assignment of Certain Executory Contracts and Unexpired Leases, and
                  (III) Granting Related Relief

discharge and terminate any of the Interests or to otherwise consummate the Transactions contemplated by this Sale Order, the Purchase and Sale Agreement or any Transaction Document.

## Purchased Contracts and Cure Payments

14. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Sellers' assumption, and assignment and transfer to the Purchaser or Purchaser Designees, of the Purchased Contracts are hereby authorized and approved in full subject to the terms set forth below.[7] The Purchaser shall, on or prior to the Closing (or as soon thereafter as reasonably practicable), pay the Cure Amounts (or in the case of a dispute, the disputed amount escrowed with the Escrow Agent pursuant to the Escrow Agreement) and cure any and all other defaults and breaches under the Purchased Contracts so that such Contracts may be assumed by the Sellers and assigned to the Purchaser or Purchaser Designees, as applicable, on the Closing Date in accordance with this Sale Order, the Purchase and Sale Agreement, and the Transaction Documents.

15. Upon and as of the Closing, the Sellers are authorized and empowered to, and shall, assume, assign and/or transfer each of the Purchased Contracts to the Purchaser or the Purchaser

---

[7] If the Closing does not occur, the Purchased Contracts shall not be assumed, assigned and transferred to Purchaser. In such event, unless some or all of the Purchased Contracts are subject of (i) a then pending motion to this Court to assume and assign said Purchased Contacts, or (ii) a then pending request to the counter-party for its consent to assignment of said Purchased Contracts, then (iii) the Purchased Contracts shall be deemed rejected as of the date that is thirty-five (35) days after the termination of the Purchase and Sale Agreement (the "Purchased Contract Rejection Date"). Any Entity who has or asserts a Claim against the Sellers or their Estates by virtue of the rejection of Purchased Contract shall file a Claim with the Clerk of the Court within thirty (30) days after the effective rejection of Purchased Contract. If such Claim is not Filed by such date, it shall be forever barred from assertion against the Sellers or their Estates. Nothing herein shall affect the right of the Sellers or the Estates or other interested party to File an Objection to any Claim.

Case 24-13427-SLM Doc 279-8 Filed 10/06/24 25 Entered 10/06/24 25 16:03:21 25:26 Desc Main
Page 29
Exhibit Page 72 of 122
Debtors: Supor Properties Enterprises LLC, *et al.*
Case No.: 24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, and
(III) Granting Related Relief

Designees, as applicable, free and clear of all liens, claims, encumbrances, and Interests, subject

to paragraph 33 of this Sale Order and except as expressly set forth in the Purchase and Sale

Agreement with respect to the Permitted Exceptions and Assumed Liabilities. The payment of the

applicable Cure Amounts (if any), or the reservation by the Purchaser of an amount of cash that is

equal to the difference between (i) the amount of any cure or other compensation asserted by the

applicable Counterparty as required under section 365 of the Bankruptcy Code and (ii) the Cure

Amount set forth on the applicable Assumption Notice for such Purchased Contract (such amount,

the "**Alleged Cure Claim**") shall, pursuant to section 365 of the Bankruptcy Code and other

applicable Law, (a) effect a cure, or provide adequate assurance of cure, of all defaults existing

thereunder as of the Closing Date and (b) compensate, or provide adequate assurance of

compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default.

Accordingly, on and as of the Closing Date, other than such payment or reservation, none of the

Sellers, the Purchaser or the Purchaser Designees, as applicable, shall have any further liabilities

or obligations to the non-Debtor parties to the Purchased Contracts with respect to, and the non-

Debtor parties to the Purchased Contracts shall be forever enjoined and barred from seeking, any

additional amounts or claims (as defined in section 101(5) of the Bankruptcy Code) that arose,

accrued or were incurred at any time on or prior to the Closing Date on account of the Sellers' cure

or compensation obligations arising under section 365 of the Bankruptcy Code. The Purchaser or

the Purchaser Designees, as applicable, have provided adequate assurance of future performance

under the relevant Purchased Contracts within the meaning of section 365(f) of the Bankruptcy

Code.

Debtors:          Supor Properties Enterprises LLC, *et al.*
Case No.:         24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                  Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                  Assignment of Certain Executory Contracts and Unexpired Leases, and
                  (III) Granting Related Relief

16.     To the extent any provision in any Purchased Contract assumed or assumed and assigned (as applicable) pursuant to this Sale Order (including, without limitation, any "change of control" provision) (a) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, such assumption or assignment, or (b) is modified, breached or terminated, or deemed modified, breached or terminated by any of the following: (i) the commencement of these Chapter 11 Cases, (ii) the insolvency or financial condition of any Debtor at any time before the closing of these Chapter 11 Cases, (iii) any Debtor's assumption or assumption and assignment (as applicable) of such Purchased Contract, or (iv) the consummation of the Transactions, then such provision shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict or condition such assumption or assignment, to modify or terminate such Purchased Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Purchased Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith. All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365€ and 365(f) of the Bankruptcy Code.

17.     All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Sellers and assignment to the Purchaser or the Purchaser Designees, as applicable, of the Purchased Contracts have been satisfied or will be as of Closing with respect to payment of Cure Costs. Upon the Closing, in accordance with sections 363 and 365

Page 31
Debtors:          Supor Properties Enterprises LLC, *et al.*
Case No.:         24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                  Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                  Assignment of Certain Executory Contracts and Unexpired Leases, and
                  (III) Granting Related Relief

of the Bankruptcy Code, the Purchaser or the Purchaser Designees, as applicable, shall be fully and irrevocably vested with all right, title and interest of the Sellers in and under the Purchased Contracts, and each Purchased Contract shall be fully enforceable by the Purchaser or the Purchaser Designees, as applicable, in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order. Upon and as of the Closing, the Purchaser or the Purchaser Designees, as applicable, shall be deemed to be substituted for the Sellers as a party to the applicable Purchased Contracts and, accordingly, the Sellers shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Purchased Contracts.

18.     Upon the payment of the applicable Cure Amount or reservation of the Alleged Cure Claim, if any, the Purchased Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Purchased Contracts as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

19.     The rights of the Purchaser to modify the list of the Purchased Contracts after the date of this Sale Order as set forth in the Purchase and Sale Agreement, are hereby approved. Moreover, with respect to any Contract which is not an Purchased Contract on the Closing Date and provided such Contract has not been rejected by Sellers after the Closing Date pursuant to section 365 of the Bankruptcy Code, upon written notice(s) from the Purchaser to the Sellers given at any time after the Closing Date, the Sellers are hereby authorized to take all actions reasonably necessary to assume and assign to the Purchaser or the Purchaser Designees pursuant to section

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

365 of the Bankruptcy Code any such Contract(s) as set forth in such notice(s); *provided* that any Cure Amount applicable thereto shall be satisfied solely by the Purchaser. Notwithstanding anything in this Sale Order to the contrary, on the date any such Contract is assumed and assigned to Purchaser or Purchaser Designee, such Contract shall thereafter be deemed a Purchased Contract for all purposes under this Sale Order and the Purchase and Sale Agreement.

20.     All non-Debtor counterparties to the Purchased Contracts shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and the Purchaser or Purchaser Designee shall enjoy all of the Sellers' rights, benefits and privileges under each such Purchased Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.  For avoidance of doubt, (i) the Harrison Objection is withdrawn (ii) Harrison Redevelopment Agency has consented to such assumption and assignment of that certain Amended and Restated Redevelopment Agreement (the "**RDA**") between Supor Properties Enterprises, J Supor 136-1 Realty, and Supor172 Realty LLC and Harrison Redevelopment Authority dated February 24, 2021 under section 365(c)(1)(B) of the Bankruptcy Code and section 12.02B of the RDA, and (iii) the RDA is a Purchased Contract under the Purchase and Sale Agreement.

21.     Nothing in this Sale Order, the Sales Procedures Motion, or in any notice or any other document is or shall be deemed an admission by the Sellers or the Purchaser that any Purchased Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

F0225001 - 1                                  F0219661 - 1
320764512.2

Page 33
Debtors:            Supor Properties Enterprises LLC, *et al.*
Case No.:           24-13427 (SLM) (Jointly Administered)
Caption of Order:   Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                    Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                    Assignment of Certain Executory Contracts and Unexpired Leases, and
                    (III) Granting Related Relief

22.     The failure of the Sellers, the Purchaser, or the Purchaser Designee, as applicable, to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Purchased Contracts.

**Additional Injunction; No Successor Liability**

23.     Effective upon the Closing Date and except as expressly set forth in the Purchase and Sale Agreement and the Transaction Documents with respect to the Permitted Exceptions and Assumed Liabilities, all Persons and entities are forever prohibited and permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral or other proceeding), to collect, recover or offset any Interest; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to a lien, claim, encumbrance, or Interest, (iii) creating, perfecting or enforcing any Interest, or (iv) asserting any setoff, right of subrogation or recoupment of any kind with respect to an Interest, in each case as against the Purchaser, the Purchaser Designees, any of their respective Affiliates or subsidiaries, or any of their respective Representatives, or any of their respective property or assets, including the Properties.

24.     The Transactions contemplated by the Purchase and Sale Agreement and the Transaction Documents do not cause there to be, and there is not (i) a consolidation, merger, or *de facto* merger of the Purchaser or any Purchaser Designee, on the one hand, with or into the Sellers or the Sellers' Estates, on the other hand, or vice versa; (ii) a substantial continuity between the

Page 34
Debtors: Supor Properties Enterprises LLC, *et al.*
Case No.: 24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief

Purchaser or Purchaser Designee, on the one hand, and the Sellers or the Sellers' Estates, on the other hand, (iii) a common identity between the Purchaser or any Purchaser Designee, on the one hand, and the Sellers or the Sellers' Estates, on the other hand, or (iv) a mere continuation of the Sellers or their Estates, on the one hand, with the Purchaser or any Purchaser Designee, on the other hand.

25.    Except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed Liabilities, the transfer of the Properties, including, without limitation, the assumption, assignment and transfer of any Purchased Contract, to the Purchaser or any Purchaser Designee shall not cause or result in, or be deemed to cause or result in, the Purchaser, any Purchaser Designee, any of their respective Affiliates or subsidiaries, or any of their respective Representatives, having any liability, obligation, or responsibility for, or any Properties being subject to or being recourse for, any lien, claim, encumbrance, or Interest arising prior to the Closing whatsoever, whether arising under any doctrines of successor, transferee or vicarious liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty or otherwise, whether at Law or in equity, directly or indirectly, and whether by payment, setoff, recoupment, or otherwise.

26.    For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Purchaser or Purchaser Designee of certain Persons previously employed by the Sellers, if any, (i) the Purchaser and the Purchaser Designees shall not have any obligations or liabilities to any employee of the Sellers or in respect of any employee benefits owing to any employee of the Sellers by the Sellers or by any plan or program administered by the

| Debtors: | Supor Properties Enterprises LLC, *et al.* |
|---|---|
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

Sellers or for the benefit of the Sellers' employees, and (ii) any obligations of the Purchaser and the Purchaser Designees to any such Person shall be expressly limited to (i) those obligations expressly agreed upon by the Purchaser or the Purchaser Designees (if any) with such Person, and (ii) those obligations explicitly assumed by the Purchaser or the Purchaser Designees (if any) under the Purchase and Sale Agreement.

## Good Faith

27. The Transactions contemplated by this Sale Order, the Purchase and Sale Agreement and Transaction Documents are undertaken by the Purchaser and the Purchaser Designees without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale and other Transactions shall not alter, affect, limit, or otherwise impair the validity of the Sale or such other Transactions (including the assumption, assignment and/or transfer of the Purchased Contracts), unless such authorization and consummation are duly stayed pending such appeal. Each of the Purchaser and the Purchaser Designees is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.

## Other Provisions

28. The Purchaser is hereby authorized, in its discretion, in connection with consummation of the Transactions to allocate the Properties, Assumed Liabilities, and Purchased Contracts among its Affiliates, subsidiaries, designees, assignees, and/or successors in a manner

F0225001 - 1
320764512.2

F0219661 - 1

Page 36
Debtors:         Supor Properties Enterprises LLC, *et al.*
Case No.:        24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                 Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                 Assignment of Certain Executory Contracts and Unexpired Leases, and
                 (III) Granting Related Relief

as it, in its discretion, deems appropriate and such Person shall be entitled to all of the rights,

benefits, privileges and protections of the Purchaser as are accorded to the Purchaser under this

Sale Order, and the Sellers shall, to the extent set forth in the Purchase and Sale Agreement and

Transaction Documents, cooperate with and take all actions reasonably requested by Purchaser to

effectuate any of the foregoing. If the Purchaser designates any Purchaser Designee to acquire any

Property or Properties, including, without limitation, any Purchased Contracts, then any reference

to the "Purchaser" in this Sale Order shall be deemed to be a reference to "the Purchaser and/or

such applicable Purchaser Designee," unless the context requires otherwise. Upon the transfer of

any Property or Purchased Contract to, or the assumption of any Assumed Liability by, a Purchaser

Designee, such Purchaser Designee shall be solely responsible for such Property, Assumed

Liability, or Purchased Contract (including performance thereunder), as applicable.

29.     Nothing contained in any plan of reorganization or liquidation, or order of any type

or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which any

such Chapter 11 Case may be converted, or (c) any related proceeding subsequent to entry of this

Sale Order, shall conflict with or derogate from the provisions of the Purchase and Sale Agreement

or the terms of this Sale Order. To the extent of any such conflict or derogation, the terms of this

Sale Order shall govern.

30.     Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order

shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon

entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly

waived and shall not apply. Accordingly, the Sellers are authorized and empowered to close the

F0225001 - 1                F0219661 - 1
320764512.2

| Debtors: | Supor Properties Enterprises LLC, *et al.* |
|---|---|
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

Sale and other Transactions immediately upon entry of this Sale Order.

31.     Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in the Purchase and Sale Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

32.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transactions.

33.     (a)     Article VII G 9 of the Plan is applicable to the Closing and Transactions approved by this Sale Order:

*9.     At the closing of each Sale Transaction of a Debtor Property, as approved by the Bankruptcy Court, the applicable Lender shall release and discharge all of its mortgage(s) and liens on such Debtor Property in exchange for payment of the net sale proceeds, up to the outstanding amount of the Lender's Allowed Secured Claim on such Debtor Property, as applicable, after payment or deduction from such sale proceeds of the following, and in the following priority:*

(a)     *the outstanding amounts of any Allowed Secured Claim of Governmental Unit on the subject Debtor Property that is senior in priority to the Lender's Allowed Secured Claim on such Debtor Property pursuant to applicable non-bankruptcy law, including real estate taxes and municipal assessments, if any; and*

(b)     *a voluntary carve-out by the applicable Lender (the "Sale Transaction Carveout") in the amount of:*

(i)     *the customary costs of sale of the applicable Debtor Property;*

(ii)     *any commission(s) payable by Debtor pursuant to the Broker Retention Agreement(s);*

(iii)     *all fees and charges assessed against the applicable Debtor Estates' pursuant to section 1930 of chapter 123 of title 28 of the United States Code attributable to the sale of such Debtor Property and all amounts due to the Office of the United States Trustee attributable to the sale of such Debtor Property;*

F0225001 - 1                                   F0219661 - 1
320764512.2

| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

        (iv) *the amount of estimated accrued but unpaid Professional Fees incurred by the legal counsel and other advisors to the Debtors and any statutory committees related primarily to the sale of such Debtor Property (the "Sale Related Professional Fees"); and*

        (v) *the amount of Bankruptcy Court approved, accrued but unpaid professional fees incurred by the legal counsel and other advisors to the Debtors and any statutory committees during the Bankruptcy Cases up to the date of the applicable sale, plus the amount necessary to fund a wind down budget as agreed by the parties in accordance with and as limited by, the terms of the Sale Transaction Documentation and Plan not inclusive of the Sale Related Professional Fees (the "Wind-Down Reserve" and, together with the Sale Related Professional Fees, the "Sale Transaction Professional Fee Carve-out") . The parties may choose to provide for the funding of the Wind Down Reserve by establishing a Wind Down Reserve Escrow Account*

  (c) *The Sale Transaction Professional Fee Carve-out as to each Debtor Property shall be the actual reasonable and necessary professional fees then incurred and approved by the Bankruptcy Court by the Debtors' duly retained professionals (exclusive of the real estate broker) in connection with or related to an actual or potential sale transaction of said Debtor Property subject to the following limits.*

*The amount of the Sale Transaction Professional Carve-out for professional fees shall be based on the net proceeds received by Lender, credited to Lender's claim, or otherwise allocated to said Debtor Property, before consideration of the Sale Transaction Professional Fee Carve-Out (the "Net Proceeds") and, in the absence of Lender's written consent, shall not exceed:*

        (i) *the lesser or 7.5% of the Net Proceeds or $150,000 for a Debtor Property (or Sanford Property) with Net Proceeds of less than $10 million, with a maximum of $100,000 for any property transferred to Lender or an affiliate pursuant to a credit bid;*

        (ii) *the lesser or 2.25% of the Net Proceeds or $350,000 of Net Proceeds for a Debtor Property (or Sanford Property) with Net Proceeds between $10- $20 million, with a maximum of $200,000 for any property transferred to Lender or an affiliate pursuant to a credit bid;*

        (iii) *the lesser or 2% of the Net Proceeds or $500,000 for a Debtor Property (or Sanford Property) with Net Proceeds between $20-30 million, with a maximum of $275,000 for any property transferred to Lender or an affiliate pursuant to a credit bid; and*

Debtors:       Supor Properties Enterprises LLC, *et al.*
Case No.:       24-13427 (SLM) (Jointly Administered)
Caption of Order:       Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief

*(iv)*      *the lesser or 2% of the Net Proceeds or $525,000 for a Debtor Property (or Sanford Property) with Net Proceeds over $30-40 million, with a maximum of $325,000 for any property transferred to Lender or an affiliate pursuant to a credit bid;* [8]

*(d)*      *The Sale Transaction Carve-Out shall be payable by Lender in the event that Lender is the Purchaser of a Debtor Property, via credit bid or otherwise, in the discounted amounts set forth in subsection I, above and based on the greater of (i) the Minimum Credit to the Amount of Lenders' Allowed Claim for each of the Debtor Properties as may be agreed to by Lenders and the Debtor Parties, or (ii) the amount of any actual credit bid.*

*(e)*      *The Sale Transaction Carve-Out amounts, and any carve-out of Lenders in the Cash Collateral Order, shall not reduce the amount of the Lenders' Allowed Claims.*

*(f)*      *Payment of the Sale Transaction Professional Fee Carve-Outs to the retained professionals from the respective bankruptcy estates shall be subject to award and approval of the United States Bankruptcy Court consistent with the professional fee procedures, if any, established by the Court in the Bankruptcy Cases. Payment of the Sale Transaction Professional Fee Carve-Out on the Sanford Property shall not be subject to Bankruptcy Court approval as the property owner is not a Debtor herein and any applicable carve-out shall be paid out as set forth in Schedule I to the professionals from the proceeds at closing.*

(b)      The outstanding amounts of any Allowed Secured Claim of Governmental Unit (as

---

[8] *The above parameters are applicable only to the Sale Transaction Professional Fee Carve-Out for the Debtors' retained professionals (exclusive of any real estate broker). Nothing in these limitations on the Sale Transaction Professional Fee Carve-outs shall reduce, compromise or modify the Line-Item carve outs provided for in the Debtors Cash collateral budget, nor shall it apply to sums otherwise carved out under Section 10.8(b) of the RSA including customary costs of sale, brokerage commission(s), and sums due to the Office of the United States Trustee or Clerk of the Bankruptcy Court.*

*The Sale Transaction Professional Fee Carve-Out limitations set forth herein are without prejudice to the ability and/or entitlement of the professionals to be paid from estate proceeds to the extent such proceeds may be available. These limitations shall likewise not apply to the transaction involving the last of the Debtor Properties to be sold, in which case the carve-out shall be sufficient to pay (i) the sale-transaction carve out from that transaction; and (ii) the amount necessary to fund the post-sale transaction Wind-Down Budget in the amount and manner as agreed by the parties."*

| Debtors: | Supor Properties Enterprises LLC, *et al.* |
|---|---|
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

defined in the Plan) on the FER 1 Property, FER 2 Property and/or FER 3 Property shall be paid at Closing by the Purchaser or Escrow Agent, as applicable, to the Holder (as defined in the Plan) of such Allowed Secured Claim of Governmental Unit. Distributions may be made on account of an undisputed portion of a Disputed Claim (as defined in the Plan), and the disputed portion shall be held by the applicable Seller/Debtor pursuant to the Plan.

(c)     For purposes of calculating the Sale Transaction Professional Carve-out, the FER 1 Property, FER 2 Property and FER 3 Property are each a separate "Debtor Property" (as defined in the Plan), each rendering separate "Net Proceeds" (as defined in the Plan) as determined from the allocation of the Purchase Price set forth in the Purchase and Sale Agreement. The full amount of the Sale Transaction Professional Carve-out shall be held by the Escrow Agent pursuant to the Escrow Agreement subject to disbursement pursuant to separate Bankruptcy Court Order(s).

(d)     At Closing, the Purchaser or Escrow Agent, as applicable, shall transfer directly to the applicable Lender(s), by wire transfer (pursuant to wire instructions to be provided by the Lender prior to the Closing Date), all of the Net Proceeds from the sale approved by this Sale Order, up to the amount of the Lender's Allowed Secured Claim (as defined in the Plan) on the Properties. At Closing, the applicable Lender(s) shall release and discharge all its/their liens, claims, encumbrances, mortgage(s) and Interests on each of the Properties in exchange for payment of all of the Net Proceeds from the sale approved by this Sale Order, up to the amount of the Lender's Allowed Secured Claim on the Properties.

34.     Notwithstanding paragraph 37 of this Sale Order, pursuant to section 1146(a) of the Bankruptcy Code, the Sale and all Transactions contemplated under the Purchase and Sale

F0225001 - 1                               F0219661 - 1
320764512.2

Case 24-13427-SLM Doc 279-8 Filed 10/06/24 Entered 10/06/24 16:02:13 Desc Main
Exhibit Page 109 of 120
Page 41
Debtors:        Supor Properties Enterprises LLC, *et al.*
Case No.:       24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                Assignment of Certain Executory Contracts and Unexpired Leases, and
                (III) Granting Related Relief

Agreement shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

35.     The failure specifically to include any particular provision of the Purchase and Sale Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase and Sale Agreement be authorized and approved in its entirety.

36.     The Purchase and Sale Agreement and Transaction Documents may be modified, amended or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court, provided that any such modification, amendment or supplement shall not have a material adverse effect on the Debtors' Estates unless approved by order of this Court.

37.     Subject to paragraph 29 of this Sale Order and the consent of Debtors', Purchaser and Lender, the Sale may be consummated through a confirmed Plan.

38.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Purchase and Sale Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, (ii) compel delivery of the Properties to the Purchaser or Purchaser Designees; (iii) enforce the injunctions and limitations of liability set forth in this Sale Order, and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Purchased Contracts.

Debtors: Supor Properties Enterprises LLC, *et al.*
Case No.: 24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, and
(III) Granting Related Relief

39.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the provisions of this Sale Order and the terms and conditions of the Purchase and Sale Agreement and the Transaction Documents.

41.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sales Procedures Motion, the terms of this Sale Order shall govern. To the extent there are any inconsistencies between the terms of this Sale Order or the Sale Procedures Order, on the one hand, and the Purchase and Sale Agreement or any Transaction Document, on the other hand, the terms of this Sale Order and the Sale Procedures Order shall govern, as applicable.

42.     The Debtors' real estate broker, CBRE, Inc. ("**CBRE**") is awarded compensation in the amount of $480,000 (the "**Buyer's Premium**") calculated by multiplying the gross sales price for the Property by one percent (1.00%).  In addition to the Purchase Price, at or prior to the Closing the Purchaser shall pay the Buyer's Premium to the Escrow Agent, and the Escrow Agent shall pay the Buyer's Premium to CBRE at Closing without further order of the Court consistent with Local Rule 2016-(1)(d), the Debtors' motion to retain CBRE in this matter [Doc. No. 24], and the Court's Order authorizing the Debtors' retention of CBRE as their real estate broker [Doc. No. 53].  The payment of the Buyer's Premium to CBRE as provided for herein shall be in full and final satisfaction of all claims by CBRE related to the Properties and the sale of the Properties and Seller shall not be responsible for any fees to CBRE or any other broker in connection with the

Debtors: Supor Properties Enterprises LLC, *et al.*
Case No.: 24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief

---

sale.

43.     Subject to and contingent upon payment of the Extension Fee Fund (defined below) as and when set forth below, and subject to Paragraph 44 of this Order, Sellers and Purchaser acknowledge and agree to the following amendments to the Purchase and Sale Agreement (the "**PSA Amendments**"):

(i)     Section 3.2.1 of the Purchase and Sale Agreement is amended to add the following at the conclusion of the existing text of Section 3.2.1:

*Prior to 5:00 pm eastern time on Monday, November 4, 2024, Purchaser shall deposit with Escrow Agent the sum which is equal to an additional $1,200,000.00 (the "Additional Earnest Money Deposit") and shall provide proof of same to Sellers upon funding the Additional Earnest Money Deposit. The Additional Earnest Money Deposit shall be held by Escrow Agent in escrow as earnest money pursuant to the Earnest Money Escrow Agreement. The Additional Earnest Money Deposit shall be maintained by the Escrow Agent as to comply with the requirements of the Bankruptcy Court and the Sale Procedures Order. The Earnest Money Deposit shall be nonrefundable to Purchaser. Payment of the Additional Earnest Money Deposit is TIME OF THE ESSENCE. Should Purchaser fail to make the Additional Earnest Money Deposit prior to 5:00 pm eastern time on November 4, 2024, (i) the Purchase Price shall automatically increase to Fifty Million Dollars ($50,000,000) without any further notice or action of Sellers (the "Increased Purchase Price"); and (ii) the Earnest Money Deposit of Four Million Eight Hundred Thousand Dollars ($4,800,000) shall be immediately released by Escrow Agent to Sellers and either (a) retained by Sellers as liquidated damages pursuant to Section 12.13.1 if this Agreement is terminated pursuant to Section 12.2, or (b) applied to the Purchase Price at Closing. Imposition of the Increased Purchase Price shall be without waiver or prejudice to any other rights and remedies of Sellers under the Agreement. The Additional Earnest Money Deposit and the Earnest Money Deposit are hereafter collectively referred to as the "Earnest Money Deposit".*

(ii)     Section 10.1 of the Purchase and Sale Agreement is deleted in its entirety and replaced with the following:

*10.1 Closing Date. The closing of the transaction described in this Agreement (the "Closing") shall occur on November 25, 2024, or such earlier date as agreed to in writing between Sellers and Purchaser (the date on which the Closing occurs is referred to herein as the "Closing Date").*

*Solely in exchange for Sellers' agreement to extend the Closing Date as set forth above, beginning October 11, 2024, and continuing on a daily basis until the Closing Date, Purchaser shall pay*

| Debtors: | Supor Properties Enterprises LLC, *et al.* |
|---|---|
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

Sellers the sum of $32,000 (the "Extension Fee"). To fund such Extension Fee, prior to 3:00 pm eastern time on Tuesday, October 8, 2024, Purchaser shall deliver by wire transfer the sum of $1,440,000 to the Trust Account of Lender's attorney Kriss & Feuerstein LLP, representing the sum of $32,000 from October 11, 2024 to November 25, 2024 (the "Extension Fee Fund") and shall provide proof of same to Sellers upon funding the Extension Fee Fund. Payment of the Extension Fee Fund is TIME OF THE ESSENCE.

The Extension Fee Fund shall be nonrefundable to Purchaser.

The Extension Fee Fund may be disbursed from escrow by Kriss & Feuerstein LLP to Lenders and credited by Lenders against Lenders' Allowed Secured Claim (as defined in the Sellers' First Amended Plan of Liquidation or Reorganization), subject to a Purchase Price adjustment described below. If the Closing occurs prior to November 25, 2024, then the portion of the Extension Fee Fund that is payable after the Closing Date (and through November 25, 2024) shall be credited against the Purchase Price. For example, if the Extension Fee Fund is fully funded by Purchaser and the Closing occurs on November 24, 2024, then $1,408,000 of the Extension Fee Fund would be retained by Lenders at Closing and credited by Lenders against Lenders' Allowed Secured Claim (as defined in the Sellers' First Amended Plan of Liquidation or Reorganization) and $32,000 would be credited against the Purchase Price and credited by Lenders against Lenders' Allowed Secured Claim.

If the Purchase and Sale Agreement is terminated as a result of a Purchaser Default, the entire Extension Fee Fund shall be retained by Lenders and credited by Lenders against Lenders' Allowed Secured Claim, for the benefit of Sellers, and as partial damages of such Purchaser Default as set forth in Section 12.3.

(iii)     Section 12.3 of the Purchase and Sale Agreement is deleted in its entirety and replaced with the following:

**12.3** *LIQUIDATED DAMAGES.*

*12.13.1 THE PARTIES ACKNOWLEDGE AND AGREE THAT IF THIS AGREEMENT IS TERMINATED PURSUANT TO SECTION 12.2 HEREOF, THE DAMAGES THAT SELLERS WOULD SUSTAIN AS A RESULT OF SUCH TERMINATION WOULD BE DIFFICULT, IF NOT IMPOSSIBLE, TO ASCERTAIN. ACCORDINGLY, EXCEPT AS OTHERWISE SPECIALLY STATED, THE PARTIES AGREE THAT SELLERS SHALL RETAIN THE EARNEST MONEY DEPOSIT (INCLUDING THE ADDITIONAL EARNEST MONTY DEPOSIT), AND THE EXTENSION FEE FUND AS A FAIR AND REASONABLE SUM AND AS FAIR MEASURE OF DAMAGES, AS LIQUIDATED DAMAGES (AND NOT AS A PENALTY) AS SELLERS' SOLE AND EXCLUSIVE REMEDY FOR SUCH TERMINATION. NOTWITHSTANDING THE FOREGOING, THE REMEDY OF LIQUIDATED DAMAGES SHALL NOT LIMIT, AND SHALL NOT BE*

Debtors:        Supor Properties Enterprises LLC, *et al.*
Case No.:       24-13427 (SLM) (Jointly Administered)
Caption of Order: Order (I) Approving the Sale of Assets Free and Clear of All Liens,
                Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and
                Assignment of Certain Executory Contracts and Unexpired Leases, and
                (III) Granting Related Relief

---

*DEEMED TO LIMIT, IN ANY WAY THE RIGHTS AND REMEDIES AVAILABLE TO SELLERS WHICH SURVIVE TERMINATION OF THIS AGREEMENT.*

*12.13.2   Notwithstanding anything in Section 12.13.1, if this Agreement is terminated pursuant to Section 12.2 hereof, Purchaser shall indemnify Sellers and their bankruptcy estates, and hold each of them harmless against, any and all losses, liabilities, claims, damages or expenses incurred by any of them arising out of or by reason of any investigation or litigation or other proceedings (including any threatened investigation or of the proceedings) relating to any such claims made by any party, including the Town of Harrison and Harrison Redevelopment Agency, related to the RDA, including, without limitation, the reasonable fees and disbursements of counsel incurred in connection with any such investigation or litigation or other proceedings.*

(iv)      All contingencies contained in the Purchase and Sale Agreement, including the contingency for assignment of the RDA to Purchaser and any termination rights of Purchaser set forth in Sections 5.3, 5.4, 13.1.1, 13.2.1 under the Purchase and Sale Agreement, are deemed satisfied.

(v)       Notwithstanding anything to the contrary in the Purchase and Sale Agreement, the Earnest Money Deposit is non-refundable to Purchaser.

44.      If the full amount of the Extension Fee Fund is not paid by Purchaser as and when set forth in Paragraph 43 (ii) of this Order, then

(i)       Sellers' conditional agreement to the PSA Amendments shall be automatically void, ineffective and unilaterally terminated by Sellers without further notice or action by Sellers;

(ii)      The PSA Amendments shall be automatically void, ineffective and unilaterally terminated without further Order of this Court;

(iii)     The Purchase and Sale Agreement attached at Exhibit A to the Motion, and approved by this Sale Order shall be unmodified except for the following:

*Section 10.1 of the Purchase and Sale Agreement is deleted in its entirety and replaced with the following:*

F0225001 - 1                          F0219661 - 1
320764512.2

| | |
|---|---|
| Debtors: | Supor Properties Enterprises LLC, *et al.* |
| Case No.: | 24-13427 (SLM) (Jointly Administered) |
| Caption of Order: | Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief |

**10.1** *Closing Date. The closing of the transaction described in this Agreement (the "Closing") shall occur on the date which is no later than seven (7) days following the entry of the Sale Order, or such other date as agreed to in writing between Sellers and Purchaser (the date on which the Closing occurs is referred to herein as the "Closing Date").*

45. If the Purchase and Sale Agreement is terminated pursuant to Section 12.2 thereof, all claims, if any, alleged by the Town of Harrison or the Harrison Redevelopment Agency as a result of a Purchaser Default under the Purchase and Sale Agreement, including any claims arising from a breach of the RDA after the entry of this Order shall be claims solely against the Purchaser and shall not be claims against the Earnest Money Deposit, the Sellers, the Debtors, or the Debtors' Estates. Purchaser shall indemnify Sellers and their bankruptcy estates for any such claims by the Town of Harrison or the Harrison Redevelopment Agency as set forth in Section 12.13.2 of the Purchase and Sale Agreement.

46. The Properties defined and subject to the Purchase and Sale Agreement (FER 1 Property, FER 2 Property and FER 3 Property) comprise three separate parcels of real estate as described in the Purchase and Sale Agreement. The Purchase and Sale Agreement includes the following Purchase Price allocations for the Properties in Schedule 4: (i) 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 5.02 in block 151, lot 17.02 in block 137 and lot 1.02 in block 149) (FER 1 Property) --$24,000,000; (ii) 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1.07 in block 136) (FER 2 Property) -- $9,600,000; and (iii) 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1 in block 172) (FER 3 Property) -- $14,400,00. Based on these allocations, in furtherance of Paragraph 33 above, pursuant to the Restructuring Support Agreement, the Sale Transaction Professional Fee Carve-Out under the Purchase and Sale Agreement is $954,000.

# EXHIBIT C

## AMENDMENT TO PURCHASE AND SALE AGREEMENT

**THIS AMENDMENT TO PURCHASE AND SALE AGREEMENT** (this "Amendment") is made and entered into as of November 25, 2024, by and between (i) Supor Properties Enterprises LLC; J Supor 136-1 Realty LLC; and Supor-172 Realty LLC (each a referred to as a "Seller" and collectively as the "Sellers"), and (ii) H Capital Holdings, LLC ("Purchaser"). Sellers and Purchaser are each referred to as a "Party" and collectively as the "Parties".

### Recitals

**WHEREAS**, Sellers and Purchaser are parties to that certain Purchase and Sale Agreement made and entered into as of August 15, 2024 (the "PSA"). A true and complete copy of the PSA is attached at **Schedule "A"** hereto.

**WHEREAS**, pursuant to the terms of the PSA, Sellers agreed to sell and Purchaser agreed to buy properties commonly known as 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 5.02 in block 151, lot 17.02 in block 137 and lot 1.02 in block 149) ("FER 1 Property"); 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1.07 in block 136) ("FER 2 Property"); and 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1 in block 172) ("FER 3 Property"), in the Town of Harrison, County of Hudson and State of New Jersey. FER 1 Property, FER 2 Property and FER 3 Property are collectively referred to as the "FER Properties".

**WHEREAS**, pursuant to the *Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief*, dated October 7, 2024, ECF #279, (the "Sale Order"), the PSA was amended, approved and authorized. A true and complete copy of the Sale Order is attached at **Schedule "B"** hereto.

**WHEREAS**, among other things, the Sale Order amended the PSA to extend the Closing Date and provide for payment of an Extension Fee by Purchaser.

**WHEREAS**, the PSA states that at Closing Sellers shall sell, convey, transfer, assign and deliver to Purchaser "all right, title and interest of Sellers in and to the properties and assets set forth" in the PSA, including Sellers' right, title and interest in that certain Parking Facility Management Agreement with M&J Comprelli, LLC (the "Comprelli Lease"). M&J Comprelli, LLC has noticed Sellers of its termination of the Comprelli Lease effective November 30, 2024.

### Agreement

**NOW, THEREFORE**, in consideration of the terms, conditions, representations, promises, and covenants set forth in this Amendment and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers and Purchaser hereby agree as follows:

321534314.1

1.      **Incorporation by Reference**. The statements and representations set forth in the Recitals above are fully affirmed by Sellers and Purchaser and incorporated herein with the same force and effect as if restated hereby.

2.      **Definitions**. To the extent terms used herein are not otherwise defined to the contrary, all defined terms used in this Amendment shall have the respective meaning ascribed to them in the PSA and Sale Order.

3.      **Acknowledgement and Affirmation**. Unless specifically set forth herein, nothing contained herein shall be deemed to modify, nullify, discharge, or extinguish the obligations of Sellers or Purchaser under the PSA or Sale Order. Except as may be specifically set forth herein, the terms, conditions and obligations of the Sellers or Purchaser under the PSA and Sale Order, and any written and executed amendments thereto: (a) have not been waived or modified by this Amendment; (b) remain unchanged; (c) are hereby ratified and affirmed in their entirety; and (d) are legally valid, binding and enforceable in accordance with their respective terms.

4.      **Extension of Closing Date and Payment of Extension Fee.**  Section 10.1 of the PSA and Paragraph 43(ii) of the Sale Order are amended as follows:

*The closing of the transaction described in this Agreement (the "Closing") shall occur on January 7, 2025, TIME OF THE ESSENCE, or such earlier date as agreed to in writing between Sellers and Purchaser (the date on which the Closing occurs is referred to herein as the "Closing Date"). Solely in exchange for Sellers' agreement to extend the Closing Date as set forth above, beginning November 26, 2024, and continuing on a daily basis until the Closing Date, Purchaser shall pay Sellers the sum of $32,000 per day (the "Extension Fee"). To fund such Extension Fee, prior to 5:00 eastern standard time on December 2, 2024, Purchaser shall deliver by wire transfer the sum of $1,344,000 to the Trust Account of Lender's attorney Kriss & Feuerstein LLP, representing the sum of $32,000 per day from November 26, 2024 to January 7, 2025 (the "Extension Fee Fund") and shall provide proof of same to Sellers upon funding the Extension Fee Fund. Payment of the Extension Fee Fund is TIME OF THE ESSENCE.*

*The Extension Fee Fund shall be nonrefundable to Purchaser.*

*The Extension Fee Fund may be disbursed from escrow by Kriss & Feuerstein LLP to Lenders and credited by Lenders against the interest component of Lenders' Allowed Secured Claim (as defined in the Sellers' First Amended Plan of Liquidation or Reorganization). If the Closing occurs prior to January 7, 2025, then the portion of the Extension Fee Fund that is payable after the Closing Date (and through January 7, 2025) shall be credited against the Purchase Price.*

*If the Purchase and Sale Agreement is terminated as a result of a Purchaser Default, the entire Extension Fee Fund shall be retained by Lenders and credited by Lenders against the interest component of Lenders' Allowed Secured Claim, for the benefit of Sellers, and as partial damages of such Purchaser Default as set forth in Section 12.3.*

*No less than fifteen (15) days prior to the Closing Date, Purchaser shall provide Sellers with written evidence demonstrating Purchaser's ability to pay the balance of the Purchase Price*

321534314.1

*at Closing, including proof of liquid funds available to Purchaser equal to or greater than the balance of the Purchase Price.*

**5.**      **Partial Release of Deposit.** The PSA and Sale Order are amended as follows:

*The Additional Earnest Money Deposit ($1,200,000) and Earnest Money Deposit ($4,800,000) totaling $6,000,000 are collectively referred to as the "Deposit".*

*In exchange for Sellers' agreement to extend the Closing Date as set forth above, Purchaser authorizes the Escrow Agent to release $3,000,000 of the Deposit to Lenders on November 26, 2024 (the "Released Deposit"), which shall be credited by Lenders against the principal component of Lenders' Allowed Secured Claim (as defined in the Sellers' First Amended Plan of Liquidation or Reorganization). Except in the case of a Seller Default under the Purchase and Sale Agreement, the Released Deposit shall be nonrefundable to Purchaser.  At Closing, the Released Deposit shall be credited against the Purchase Price. If the Purchase and Sale Agreement is terminated as a result of a Purchaser Default, the entire Released Deposit shall be retained by Lenders and credited by Lenders against the principal component of Lenders' Allowed Secured Claim, for the benefit of Sellers, and as partial damages of such Purchaser Default as set forth in Section 12.3.*

**6.**      **Comprelli Lease and Related Claims.**  The PSA and Sale Order are amended as follows:

*If (i) the Comprelli Lease is terminated effective November 30, 2024, and (ii) the Closing occurs on or after November 30, 2024, then (iii) Sellers shall <u>not</u> sell, convey, transfer, assign and/or deliver the Comprelli Lease to Purchaser. Sellers shall retain all rights, claims, liabilities, and/or interests arising or occurring prior to the Closing Date with respect to the Comprelli Lease, M&J Comprelli, LLC and/or Joseph Comprelli (the "<u>Retained Claims</u>") and any proceeds thereof. Purchaser shall have no rights, claims and/or interests to the Retained Claims and any proceeds thereof. The rights and obligations of Sellers and Purchasers under this provision shall survive Closing.*

**7.**      **Increase in Purchase Price.**  The PSA and Sale Order are amended as follows:

*If the Closing Date occurs in 2025, the Purchase Price shall be increased by $150,000.*

**8.**      **Miscellaneous.**

**8.1**      **Modifications.**  This Amendment may not be amended, waived or modified except by an instrument in writing signed by the Parties hereto.

**8.2**      **Governing Law.**  Enforcement of this Amendment shall be construed in accordance with the laws of the State of New Jersey, its choice of law rules notwithstanding.

**8.3**      **Construction of the Amendment.**  The Parties hereto agree that the terms and language of this Amendment were the result of negotiations between the Parties, and, as a result, there shall be no presumption that any ambiguities in this Amendment shall be resolved against any Party.

321534314.1

Any controversy over the construction of this Amendment shall be decided without regard to events of authorship or negotiation.

        **8.4**    **Entire Agreement and Amendment.**  This Amendment represents all of the terms and conditions of the agreement between the Parties with respect to the subject matter hereof.  There have been no representations, warranties, promises, inducements or considerations of any kind given with respect to the transactions set forth herein except as are expressly memorialized in this Amendment.

        **8.5**    **Headings.**  Headings, titles and captions preceding the sections hereof are provided for convenience of reference and shall not be used to explain or to restrict the meaning, purpose or effect of any provision to which they refer.

        **8.6**    **Binding Nature, Third Parties.**  This Amendment is binding on the Parties and their successors, heirs, executors and assigns of each of them.

        **8.7**    **Adequate Consideration.**  The Parties hereby represent, confirm and acknowledge that execution of this Amendment is full, fair and ample consideration for the agreements, representations and covenants contained herein and for entering into, executing and performing every other agreement entered into by any of the Parties in connection with this Amendment.

        **8.6**    **Counterparts.**  This Amendment may be executed by one or more of the Parties to this Amendment on any number of separate counterparts and all such counterparts taken together shall be deemed to constitute one and the same instrument.  This Amendment may be executed via facsimile or electronic signature.

        **8.7**    **Severability.**  Every provision of this Amendment is intended to be severable. If any term or provision of this Amendment is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such provision shall be adjusted, rather than voided, if possible, to achieve the intent of the Parties to the maximum extent possible. If any term or provision of this Amendment is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain in full force and effect.

**[Remainder of page intentionally left blank;
Signatures on following pages]**

321534314.1

**THEREFORE**, each of the undersigned, intending to be legally bound, has caused this Amendment to be executed and delivered in its name by a duly authorized officer or representative effective as of the date reflected above.

**<u>SELLER</u>:**

**Supor Properties Enterprises LLC**



By:_____
Name:
Title:

**<u>SELLER</u>:**

**J Supor 136-1 Realty LLC**



By:_____
Name:
Title:

**<u>SELLER</u>:**

**Supor-172 Realty LLC**



By:_____
Name:
Title:

**<u>PURCHASER</u>:**

**H Capital Holdings, LLC**

By:_____
Name:
Title:

321411974.6

THEREFORE, each of the undersigned, intending to be legally bound, has caused this Amendment to be executed and delivered in its name by a duly authorized officer or representative effective as of the date reflected above.

**SELLER:**

**Supor Properties Enterprises LLC**

By:_____
Name:
Title:

**SELLER:**

**J Supor 136-1 Realty LLC**

By:_____
Name:
Title:

**SELLER:**

**Supor-172 Realty LLC**

By:_____
Name:
Title:

**PURCHASER:**

**H Capital Holdings, LLC**

By:_____
Name:
Title:

321411974.6

**The undersigned acknowledge and consent to the Amendment and agree to the provisions applicable to the Lenders in Paragraphs 4 and 5 above.**

**1000 FRANK E. RODGERS 1 LLC,**

A Delaware limited liability company

Name:   Brian Shatz

Title: Authorized Signatory

**1000 FRANK E. RODGERS 2 LLC,**

A Delaware limited liability company

Name: Brian Shatz

Title: Authorized Signatory

321411974.6