# EXHIBIT Y

## FIFTH AMENDMENT TO PURCHASE AND SALE AGREEMENT

**THIS FIFTH AMENDMENT TO PURCHASE AND SALE AGREEMENT** (this "Amendment" or "Fifth Amended PSA") is made and entered into as of April 9, 2025 by and between (i) Supor Properties Enterprises LLC; J Supor 136-1 Realty LLC; and Supor-172 Realty LLC (each referred to as a "Seller" and collectively as the "Sellers"), and (ii) H Capital Holdings, LLC ("Purchaser"). Sellers and Purchaser are each referred to as a "Party" and collectively as the "Parties". Sellers and others (collectively, "Debtors") filed voluntary bankruptcy proceedings on April 2, 2024, with the United States Bankruptcy Court for the District of New Jersey (the "Court").

### Recitals

**WHEREAS**, Sellers and Purchaser are parties to that certain Purchase and Sale Agreement made and entered into as of August 15, 2024 (the "Initial PSA"). A true and complete copy of the Initial PSA is attached at **Schedule "A"** hereto.

**WHEREAS**, pursuant to the terms of the PSA, Sellers agreed to sell and Purchaser agreed to buy properties commonly known as 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 5.02 in block 151, lot 17.02 in block 137 and lot 1.02 in block 149) ("FER 1 Property"); 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1.07 in block 136) ("FER 2 Property"); and 1000 Frank E Rodgers Boulevard, Harrison New Jersey (lot 1 in block 172) ("FER 3 Property"), in the Town of Harrison, County of Hudson and State of New Jersey. FER 1 Property, FER 2 Property and FER 3 Property are collectively referred to as the "FER Properties."

**WHEREAS**, pursuant to the Court *Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief*, dated October 7, 2024, ECF #279, (the "Sale Order"), the PSA was amended, approved and authorized. A true and complete copy of the Sale Order is attached at **Schedule "B"** hereto.

**WHEREAS**, Sellers and Purchaser are parties to that certain Amendment to Purchase and Sale Agreement made and entered into as of November 25, 2024 (the "Second Amended PSA"). A true and complete copy of the Second Amended PSA is attached at **Schedule "C"** hereto.

**WHEREAS**, Sellers and Purchaser are parties to that certain Third Amendment to Purchase and Sale Agreement made and entered into as of January 6, 2025 (the "Third Amended PSA"). A true and complete copy of the Third Amended PSA is attached at **Schedule "D"** hereto.

**WHEREAS**, among other things, the Third Amended PSA provides that the Closing ". . . shall occur on January 21, 2025, TIME OF THE ESSENCE, or such earlier date as agreed to in writing between Sellers and Purchaser (the date on which the Closing occurs is referred to herein as the "Closing Date")."

**WHEREAS**, the Third Amended PSA also provides:

Additionally, Purchaser shall deposit an additional sum of $2,407,500.00 with the Escrow Agent on or before January 13, 2025 (the "Second Additional Earnest

Money Deposit"). If the Second Additional Earnest Money Deposit is not delivered by January 13, 2025, it shall be deemed a Purchaser's Default under the PSA.

**WHEREAS,** Purchaser (i) did not deposit the Second Additional Earnest Money Deposit with the Escrow Agent on or before January 13, 2025, or at any time since, and (ii) did not close the transaction on January 21, 2025, or at any time since.

**WHEREAS,** Sellers and Purchaser are parties to that certain Fourth Amendment to Purchase and Sale Agreement made and entered into as of March 26, 2025 (the "Fourth Amended PSA"). A true and complete copy of the Fourth Amended PSA is attached at **Schedule "D"** hereto. Among other things, the Fourth Amended PSA provided that the Closing ". . . shall occur on March 31, 2025, TIME OF THE ESSENCE, or such earlier date as agreed to in writing between Sellers and Purchaser (the date on which the Closing occurs is referred to herein as the "Closing Date").

**WHEREAS,** the Initial PSA, as amended by the Sale Order, Second Amended PSA, Third Amended PSA and Fourth Amended PSA are collectively referred to as the "PSA"

**WHEREAS,** at a hearing on April 1, 2025, before the Court, Sellers and Purchaser agreed to extend the Closing Date of the PSA to no later than April 7, 2025, TIME OF THE ESSENCE. Purchaser failed to close the transaction on April 7, 2025, (and Sellers have not agreed to a further extension of the Closing Date).

**WHEREAS,** Purchaser represents to Sellers that (i) approximately four (4) weeks ago at least $90 million was deposited by certified check into an account at Flagstar Bank for the benefit of Purchaser (the "Flagstar Bank Funds"); (ii) approximately four (4) weeks ago at least $50 million was wired from an account at Taipei Fubon Bank, Hong Kong branch to a United States financial institution for the benefit of Purchaser (the "Fubon Bank Funds"); (iii) Purchaser intends to, among other things, use the Flagstar Bank Funds and the Fubon Bank Funds to satisfy Purchaser's obligations under the PSA and, potentially, fund other "Exit Transactions", defined in the Debtors' confirmed First Amended Plan of Reorganization (the "Plan"); and (iv) no part of the Flagstar Bank Funds or the Fubon Bank Funds are available to Purchaser.

**WHEREAS,** Purchaser is in default of its obligations under the PSA due to (i) Purchaser's failure to tender the Second Additional Earnest Money Deposit as and when required under the Third Amended PSA, and (ii) Purchaser's failure to close the transactions subject to the PSA as and when required under the PSA (collectively, "Existing Purchaser Defaults").

**WHEREAS,** Purchaser has requested that Sellers defer termination of the PSA as a result of the Existing Purchaser Defaults and further extend the Closing Date. Subject to the terms and conditions of this Fifth Amended PSA, Sellers agree to defer termination of the PSA and further extend the Closing Date.

<u>**Agreement**</u>

**NOW, THEREFORE,** in consideration of the terms, conditions, representations, promises, and covenants set forth in this Amendment and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers and Purchaser hereby agree as follows:

5024399345

1.      **Incorporation by Reference**. The statements and representations set forth in the Recitals above are fully affirmed by Sellers and Purchaser and incorporated herein with the same force and effect as if restated hereby.

2.      **Definitions**. To the extent terms used herein are not otherwise defined to the contrary, all defined terms used in this Amendment shall have the respective meaning ascribed to them in the PSA and Sale Order.

3.      **Acknowledgement and Affirmation**. Unless specifically set forth herein, nothing contained herein shall be deemed to modify, nullify, discharge, or extinguish the obligations of Sellers or Purchaser under the PSA. Except as may be specifically set forth herein, the terms, conditions and obligations of the Sellers or Purchaser under the PSA: (a) have not been waived or modified by this Amendment; (b) remain unchanged; (c) are hereby ratified and affirmed in their entirety; and (d) are legally valid, binding and enforceable in accordance with their respective terms. Nothing contained herein shall be deemed to waive, cure, nullify or extinguish the Purchaser Defaults.

4.      **Amendments to PSA**. Subject to the terms and conditions of this Fifth Amended PSA, including those set forth in Section 5 below, (i) Sellers' agree to defer effective termination of the PSA and further extend the Closing Date, and (ii) Purchaser and Seller agree to the following amendments to the PSA.

4.1     **Extension of Closing Date and Payment of Extension Fee**. Section 10.1 of the PSA and Paragraph 43(ii) of the Sale Order, and Section 4 of the Second Amended PSA, Third Amended PSA and Forth Amended PSA are amended as follows:

*The closing of the transaction described in this Agreement (the "Closing") shall occur on the earlier of (i) May 1, 2025, TIME OF THE ESSENCE, (ii) the availability to Purchaser of the Flagstar Bank Funds, the Fubon Bank Funds or other funds sufficient to satisfy Purchaser's obligations under the Purchase and Sale Agreement, as amended, or (iii) such earlier date as agreed to in writing between Sellers and Purchaser (the date on which the Closing occurs is referred to herein as the "Closing Date"). Solely in exchange for Sellers' agreement to extend the Closing Date as set forth above, beginning January 24, 2025, and continuing daily until the Closing Date, Purchaser shall pay Sellers the sum of $32,060 per day (the "Final Extension Fee"). The Final Extension Fee shall be fully payable by Purchaser on the Closing Date, provided however, that Purchaser shall pay $2,000,000 of the Final Extension Fee on or before April 15, 2025, at 5:00 p.m. eastern standard time and that such partial payment of the Final Extension Fee shall be paid to the Trust Account of Lender's attorney Kriss & Feuerstein LLP (a "Partial Extension Fee") and Purchaser shall provide proof of same to Sellers upon funding any Partial Extension Fee.*

*Any Partial Extension Fee shall be nonrefundable to Purchaser.*

*Any Partial Extension Fee may be disbursed from escrow by Kriss & Feuerstein LLP to Lenders and credited by Lenders against the interest component of Lenders' Allowed Secured Claim (as defined in the Sellers' First Amended Plan of Liquidation or Reorganization).*

*If the Purchase and Sale Agreement is terminated because of a Purchaser Default, the entire Partial Extension Fee shall be retained by Lenders and credited by Lenders against the interest component of Lenders' Allowed Secured Claim, for the benefit of Sellers, and as partial damages of such Purchaser Default as set forth in Section 12.3.*

**4.2     Additional Increase in Purchase Price.** In addition to the increase in the Purchase Price set forth in the Sale Order, Second Amended PSA, Third Amended PSA and/or Fourth Amended PSA, the Purchase Price under the PSA is further increased as follows:

*Solely in exchange for Sellers' agreement to extend the Closing Date as set forth above, in addition to the Purchase Price and all other obligations of Purchaser hereunder, on the Closing Date Purchaser shall pay Sellers (i) the amount of legal fees incurred by Debtors regarding the transactions subject to the Purchase and Sale Agreement and the Purchaser's Defaults (as defined in the Fifth Amended PSA) from March 26, 2025 through the Closing Date, and (ii) the amount of legal fees incurred by Lenders regarding the transactions subject to the Purchase and Sale Agreement and the Purchaser's Defaults (as defined in the Fifth Amended PSA) from January 24, 2025 through the Closing Date – collectively, the "Fifth Amendment Increases").*

**4.3     Extension of Closing Date and Payment of Extension Fee.** Section 12.3 of the Initial PSA is eliminated in its entirety and replaced with the following:

*If the Purchase and Sale Agreement is terminated because of a Purchaser Default, then, in addition to all other rights and remedies available to Sellers at law or in equity:*

(i)     *all deposits and extension fees paid by Purchaser prior to effective termination of the Purchase and Sale Agreement shall be retained by Lenders and credited by Lenders against Lenders' Allowed Secured Claim, for the benefit of Sellers, and as partial damages of such Purchaser Default;*

(ii)     *within five (5) days after the effective termination of the Purchase and Sale Agreement, the Second Additional Earnest Money Deposit shall be fully payable by Purchaser to Sellers as partial damages of Sellers for such Purchaser Default;*

(iii)     *within five (5) days after the effective termination of the Purchase and Sale Agreement, the Final Extension Fee shall be fully payable by Purchaser to Sellers as partial damages of Sellers for such Purchaser Default;*

(iv)     *within five (5) days after the effective termination of the Purchase and Sale Agreement, the amounts consistent with Section 6 of the Fourth Amended PSA (real estate taxes on the Property and interest thereon accruing from January 24, 2025 through the effective date of termination of the Purchase and Sale Agreement, plus the sum of $75,000) shall be fully payable by Purchaser to Sellers as partial damages of Sellers for such Purchaser Default; and*

5024399345

*(v)      within five (5) days after the effective termination of the Purchase and Sale Agreement, the Fifth Amendment Increases shall be fully payable by Purchaser to Sellers as partial damages of Sellers for such Purchaser Default.*

*If any part of Lenders' Allowed Secured Claim is outstanding at the time that Sellers receive payment of any amounts under (ii) – (v) above, Sellers shall tender such amounts to Lenders, up to the outstanding balance of Lenders' Allowed Secured Claim to be credited by Lenders against Lenders' Allowed Secured Claim.*

*If the Purchase and Sale Agreement is terminated because of a Purchaser Default or if Purchaser fails to pay any amounts due Sellers under (ii) – (v) above, Sellers may hire or pay a third party to help collect the amounts due under the Purchase and Sale Agreement or enforce the rights of Sellers under the Purchase and Sale Agreement and the Purchaser will reimburse Sellers for Sellers' reasonable attorneys' fees and Sellers' legal expenses actually incurred, whether or not there is a lawsuit or any action is filed, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), or appeals.*

## 5.      **Purchaser Litigation.**

**5.1**      Unless the Closing has occurred, on or before April 16, 2025, Purchaser shall (i) cause counsel, Richard Lee, Esq., to provide a status letter regarding the status of the Funds as they relate to the Purchaser's separate matter pending in the Southern District of New York ("Lee Letter"). Nothing contained herein shall be deemed to require disclosure of any confidential information in violation of any existing confidentiality agreements, and (ii) provide the Court with documents reflecting and regarding the separate matter pending in the Southern District of New York for in camera review by the Court (the "In Camera Materials"). The In Camera Materials shall not be docketed in the Sellers' bankruptcy proceedings.

**5.2**      Unless the Closing has occurred, on or before April 16, 2025, Purchaser shall file an application with the Court, on notice to Sellers and Lenders, for an order compelling Tiapei Fubon Bank to show cause why the Fubon Bank Funds are not immediately available to Purchaser (the "Fubon OSC").

**5.3**      Purchaser shall prepare, file and prosecute the Fubon OSC at its sole cost and expense and shall utilize best efforts in such litigation.  Purchaser shall prosecute the Fubon OSC until Purchaser has use of Fubon Bank Funds or alternate funds sufficient to satisfy Purchaser's obligations under the PSA, as amended.

**5.**      If Purchaser fails to satisfy any of the provisions of this Section, as and when set forth herein, then Sellers' agreement to defer effective termination of the PSA shall be automatically void, ineffective and unilaterally revoked without further notice or action by Sellers and Sellers shall be entitled to immediately terminate the PSA, as amended.

## 6.      **Miscellaneous.**

**6.1**      **Modifications.** This Amendment may not be amended, waived or modified except by an instrument in writing signed by the Parties hereto.

**6.2** **Governing Law.** Enforcement of this Amendment shall be construed in accordance with the laws of the State of New Jersey, its choice of law rules notwithstanding.

**6.3** **Construction of the Amendment.** The Parties hereto agree that the terms and language of this Amendment were the result of negotiations between the Parties, and, as a result, there shall be no presumption that any ambiguities in this Amendment shall be resolved against any Party. Any controversy over the construction of this Amendment shall be decided without regard to events of authorship or negotiation.

**6.4** **Entire Agreement and Amendment.** This Amendment represents all of the terms and conditions of the agreement between the Parties with respect to the subject matter hereof. There have been no representations, warranties, promises, inducements or considerations of any kind given with respect to the transactions set forth herein except as are expressly memorialized in this Amendment.

**6.5** **Headings.** Headings, titles and captions preceding the sections hereof are provided for convenience of reference and shall not be used to explain or to restrict the meaning, purpose or effect of any provision to which they refer.

**6.6** **Binding Nature, Third Parties.** This Amendment is binding on the Parties and their successors, heirs, executors and assigns of each of them.

**6.7** **Adequate Consideration.** The Parties hereby represent, confirm and acknowledge that execution of this Amendment is full, fair and ample consideration for the agreements, representations and covenants contained herein and for entering into, executing and performing every other agreement entered into by any of the Parties in connection with this Amendment.

**6.8** **Counterparts.** This Amendment may be executed by one or more of the Parties to this Amendment on any number of separate counterparts and all such counterparts taken together shall be deemed to constitute one and the same instrument. This Amendment may be executed via facsimile or electronic signature.

**6.9** **Severability.** Every provision of this Amendment is intended to be severable. If any term or provision of this Amendment is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such provision shall be adjusted, rather than voided, if possible, to achieve the intent of the Parties to the maximum extent possible. If any term or provision of this Amendment is declared by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain in full force and effect.

**6.10** **Bankruptcy Court Jurisdiction.** Each party hereto consents and waives any objection to the non-exclusive personal jurisdiction and venue in the Court for Sellers' bankruptcy proceedings for purposes of any suit commenced to enforce the PSA, as amended.

**[Remainder of page intentionally left blank;**
**Signatures on following pages]**

THEREFORE, each of the undersigned, intending to be legally bound, has caused this Amendment to be executed and delivered in its name by a duly authorized officer or representative effective as of the date reflected above.

**SELLER:**

**Supor Properties Enterprises LLC**

By: _____
Name:
Title:

**SELLER:**

**J Supor 136-1 Realty LLC**

By: _____
Name:
Title:

**SELLER:**

**Supor-172 Realty LLC**

By: _____
Name:
Title:

**PURCHASER:**

**H Capital Holdings, LLC**

By: _____
Name: Antong He
Title: Authorized signatory

**The undersigned acknowledge and consent to the Amendment and agree to the provisions applicable to the Lenders.**

**1000 FRANK E. RODGERS 1 LLC,**

A Delaware limited liability company

Name: Joshua Zegen

Title: Authorized Signatory

**1000 FRANK E. RODGERS 2 LLC,**

A Delaware limited liability company

Name: Joshua Zegen

Title: Authorized Signatory

522439324 3