UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1**

K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq.
Daniel.eliades@klgates.com
David S. Catuogno, Esq.
David.catuogno@klgates.com

*Special Counsel for the Reorganized Debtors*

Forman Holt
365 West Passaic Street - Suite 400
Rochelle Park, NJ 07662
Telephone: (201) 857-7110
Facsimile: (201) 665-6650
Michael E. Holt, Esq.
Mholt@formanlaw.com

*Counsel for the Reorganized Debtors*

| | |
|---|---|
| In re:<br><br>Supor Properties Enterprises LLC, *et al.*[1],<br><br>                            Debtors. | Case No. 24-13427 (SLM)<br>Judge: Stacey L. Meisel<br>Chapter 11<br><br>(Jointly Administered) |
| Supor Properties Enterprises LLC,<br>J Supor 136-1 Realty LLC, and<br>Supor-172 Realty LLC<br><br>                        Plaintiffs,<br><br>                  v.<br><br> H Capital Holdings, LLC, Antong He a/k/a Anthony Lee a/k/a Tong He, SP Plus Corporation, Metropolis Tennessee LLC, East One Harrison Urban Renewal, LLC, Accordia Harrison Urban Renewal, LLC, H Holdco, LLC, Invictus Real Estate Partners LLC and Does I-V<br><br>                        Defendants. | Adv. Pro. No. 25-01251 |

---

[1] The Debtors in these related chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Supor Properties Enterprises LLC (5580); J Supor 136-1 Realty LLC (3205); Supor-172 Realty LLC (EIN No. 5662); Supor Properties Breiderhoft LLC (7258); Supor Properties Devon LLC (6357); Shore Properties Associates North LLC (6707); Supor Properties 600 Urban Renewal, LLC (8604); JS Realty Properties, LLC (2497); and Supor Properties Harrison Avenue, LLC (1728).

## FIRST AMENDED VERIFIED COMPLAINT

Plaintiffs, Supor Properties Enterprises LLC, J Supor 136-1 Realty LLC, and Supor-172 Realty LLC (collectively, the "Sellers" or "Plaintiffs"), for their complaint against Defendants, H Capital Holdings, LLC ("Purchaser" or "H Capital"), Antong He a/k/a Anthony Lee a/k/a Tong He ("Antong He"), SP Plus Corporation, Metropolis Tennessee LLC, East One Harrison Urban Renewal, LLC, Accordia Harrison Urban Renewal, LLC, H Holdco, LLC, Invictus Real Estate Partners LLC and Does I -V ("Does") (collectively, the "Defendants" with H Capital and Antong He together referred to as the "H Capital Defendants") hereby state and allege as follows:

## THE PARTIES

1.    Plaintiff Supor Properties Enterprises LLC ("Supor Enterprises") is a Delaware limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

2.    Plaintiff J. Supor 136-1 Realty LLC ("Supor 136") is a Delaware limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

3.    Plaintiff Supor-172 Realty LLC ("Supor 172") is a Delaware limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

4.    Upon information and belief, Defendant H Capital is New Jersey limited liability company with an address of One Bridgeview Plaza, Suite 830 Fort Lee, New Jersey 07605.

5.    Upon information and belief, Defendant Antong He is an individual who resides in New Jersey. Antong He is the manager of H Capital.  Upon information and belief, Antong He is a member of H Capital.

6.    Upon information and belief, in matters relevant to this Verified Complaint, both H Capital and Antong He were represented by Michael Ochs, Esq. of the law firm of Trif &

2

Modugno.

7.      Upon information and belief, SP Plus Corporation ("SP Plus") is a Delaware corporation with an address of 200 East Randolph Street, Suite 7700, Chicago IL 60601

8.      Upon information and belief, Metropolis Tennessee LLC ("Metropolis Tennessee") is a Tennessee limited liability company with an address of 1608 Walnut Street, Suite 801, Philadelphia, PA 19103.

9.      Upon information and belief, SP Plus and Metropolis Tennessee are affiliates.

10.     Upon information and belief, East One Harrison Urban Renewal, LLC ("East One") is New Jersey limited liability company with an address c/o Invictus Real Estate Partners LLC, 122 Penn Rd. Scarsdale, NY 10583.

11.     Upon information and belief, Accordia Harrison Urban Renewal, LLC ("Accordia") is New Jersey limited liability company with an address c/o Invictus Real Estate Partners LLC, 122 Penn Rd. Scarsdale, NY 10583.

12.     Upon information and belief, H Holdco, LLC ("H Holdco") is a Delaware limited liability company with an address c/o Invictus Real Estate Partners LLC, 122 Penn Rd. Scarsdale, NY 10583.

13.     Upon information and belief, H Capital, East One, Accordia and H Holdco are affiliates.

14.     Upon information and belief, Antong He has an ownership interest in H Capital, East One, Accordia and H Holdco.

15.     Upon information and belief, Antong He controls H Capital, East One, Accordia and H Holdco.

16.     Upon information and belief, Invictus Real Estate Partners LLC ("Invictus") is a

3

1600088696.1

New York limited liability company with its headquarters at 222 W 37th Street, 14th Floor, New York, New York 10018.

17.    Upon information and belief, Invictus is an agent of East One, Accordia and H Holdco.

18.    Defendants Does I-V are individuals or entities affiliated with H Capital and/or Antong He, agents of H Capital and/or Antong He or entities owned or controlled by H Capital and/or Antong He.

## JURISDICTION AND VENUE

19.    On April 2, 2024, (the "Petition Date") Plaintiffs and affiliates Supor Properties 600 Urban Renewal, LLC; Supor Properties Breiderhoft LLC; Supor Properties Devon LLC; Shore Properties Associates North LLC; and Supor Properties Harrison Avenue LLC (each along with Plaintiffs a "Debtor" and collectively with Plaintiffs, the "Debtors") filed voluntary chapter 11 bankruptcy petitions with the United States Bankruptcy Court for the District of New Jersey (collectively the "Bankruptcy Cases"). On April 8, 2024, this Court entered an Order providing for the joint administration of the Bankruptcy Cases [ECF No. 35].[2]

20.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(b)(2) and (c), the Sale Procedures Order and the 7/18/24 Bid of H Capital whereby H Capital specifically consented to the jurisdiction of this Court as to the issues raised in this adversary proceeding, as well as the Sale Order, Debtors' confirmed Plan and the Confirmation Order all of which specifically reserved and retained jurisdiction of this Court as to the issues raised in this adversary proceeding (all terms defined, *infra*). This is a "core proceeding" as to the claims of the Plaintiffs against Defendants pursuant to 28 U.S.C. §157(b)(2)(o).

---

[2] All ECF references are to the docket in the jointly administered Bankruptcy Cases.

1600088696.1

21.     Venue is proper in this district pursuant to 28 U.S.C. §§1408, 1409 and 2201. This adversary proceeding is commenced pursuant to Rules 7001(1) (7) and (9), 7064 and 7065 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §105(a).

## <u>ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF</u>

### A.     <u>The Plaintiffs and Their Properties.</u>

22.     Debtor Plaintiff Supor Enterprises owns part of the property commonly known as 1000 Frank E Rodgers Boulevard, Harrison, New Jersey (specifically, lot 5.02 in bock 151; lot 17.02 in block 137; and lot 1.02 in block 149) ("<u>FER 1 Property</u>"). The sole member of Supor Enterprises is S&B Realty Partnership. The partners of S&B Realty Partnership are Joseph Supor III ("<u>Mr. Supor</u>") and the Marital Trust under the Last Will and Testament of Joseph Supor, Jr. Dated September 13, 2002, as Amended by First Codicil Dated June 14, 2007 (the "<u>Marital Trust</u>"). Mr. Supor is the trustee of the Marital Trust and a beneficiary of the Marital Trust.

23.     Debtor Plaintiff Supor 136 owns part of the property commonly known as 1000 Frank E Rodgers Boulevard, Harrison, New Jersey (specifically, lot 1.07 in bock 136) ("<u>FER 2 Property</u>"). The sole member of Supor 136 is J. Supor 136-1 LLC. The sole member of J. Supor 136-1 LLC is Mr. Supor.

24.     Debtor Plaintiff Supor 172 owns part of the property commonly known as 1000 Frank E Rodgers Boulevard, Harrison, New Jersey (specifically, lot 1 in bock 172) ("<u>FER 3 Property</u>" and together with FER 1 Property and FER 2 Property, the "<u>FER Property</u>"). The sole member of Supor 172 is Supor-172 LLC. The sole member of Supor-172 LLC is Mr. Supor.

25.     The FER Property at 1000 Frank E Rodgers Boulevard, Harrison New Jersey consists of contiguous parcels of unimproved and vacant land, together comprising approximately 9.85 acres, abutting the Red Bull Arena.

1600088696.1

26.     The FER Property is the subject of an Amended and Restated Redevelopment Agreement dated February 24, 2021, by and between the Harrison Redevelopment Agency, the Town of Harrison, Supor Enterprises, Supor 136 and Supor 172 (the "Harrison RDA"). The Harrison RDA was recorded with the Hudson County Register on April 20, 2021, at book 9552, page 39, index number 20210420010031740.

27.     The Harrison RDA grants Plaintiffs rights to redevelop the FER Property and construct 1,500 residential units, a 200-room hotel, 151,960 square feet of retail space, 1,000,000 square feet of office space and 4,570 parking spaces.

**B.     The Sale Process.**

28.     On April 5, 2024, the Debtors filed a motion for an order authorizing the employment of CBRE, Inc. ("CBRE") as their real estate broker for purposes of marketing and selling real properties owned by the Debtors – including the FER Property owned by the Plaintiffs. [ECF No. 24].

29.     On April 15, 2024, the Bankruptcy Court entered an order authorizing the Debtors' employment of CBRE as their real estate broker [ECF No. 53].

30.     On April 22, 2024, Debtors filed a *Motion for Entry of an Order (I)(A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related Relief* [ECF No. 7] (the "Sale Procedures Motion"). The Sale Procedures Motion, among other things, set forth a schedule for the marketing, auction and sale of the Debtor properties – including the FER Property. The Sale Procedures Motion was granted by order dated April 29, 2024 [ECF No. 80] (the "Sale Procedures Order").

**C.     H Capital Bids to Purchase Debtor Properties.**

31.     H Capital was introduced to Debtors by CBRE.

32.    In response to the marketing of Debtor properties by CBRE, H Capital submitted bids to purchase (i) the FER Property from the Debtor Plaintiffs and (ii) 600 Guyon Drive, Harrison, New Jersey (lot 16.01 in block 150) (the "600 Guyon Property") from Debtor Supor Properties 600 Urban Renewal, LLC ("Supor 600").

33.    Supor 600 is a New Jersey limited liability company formed on July 18, 2019. The sole member of Supor 600 is Supor Properties 600 UR Holding LLC. Mr. Supor is the sole member of Supor Properties 600 UR Holding LLC.

34.    Supor 600 owns the 600 Guyon Property. The 600 Guyon Property consists of approximately 3 acres of land which is improved with a 50,000 square foot building consisting of warehouse and office space.

35.    The 600 Guyon Property is adjacent to the FER Property.

36.    Pursuant to a bid dated July 9, 2024, H Capital proposed to purchase the FER Property for $42 million and the 600 Guyon Property for $8 million. A copy of H Capital's bid dated July 9, 2024 (the "7/9/24 Bid") is attached at **Exhibit "A"** hereto.

37.    The 7/9/24 Bid was electronically signed by Anthony He as manager of H Capital. Anthony He and Antong He are one and the same.

38.    The 7/9/24 Bid states that "[t]he Bid is 100% cash and not subject to any financing."

39.    Upon information and belief, in connection with its 7/9/24 Bid, H Capital represented to CBRE that (i) it is an affiliate of "East One Equities," which is the "current owner and designated redeveloper of" 600 Frank E Rodgers Boulevard, Harrison, New Jersey, (ii) its equity comes from a "family office" in Hong Kong but funds are in the United States, and (iii) **it recently sold a property to the City of New York for approximately $82 million and has access to the funds from such sale**.

40.     Upon information and belief, at the time it submitted its 7/9/24 bid, no such proceeds were available to H Capital for purposes of purchasing the FER Property.

41.     CBRE conveyed the foregoing representations of H Capital to the Debtors, and Debtors relied on this information in evaluating the bids of H Capital.

42.     Pursuant to a revised bid dated July 18, 2024, H Capital proposed to purchase the FER Property for $48 million and the 600 Guyon Property for $8 million. A copy of H Capital's bid dated July 18, 2024, (the "7/18/24 Bid") is attached at **Exhibit "B"** hereto.

43.     The 7/18/24 Bid was signed by Anthony He as manager of H Capital. Anthony He and Antong He are one and the same person.

44.     The 7/18/24 Bid states that "[t]he Bid is 100% cash and not subject to any financing."

45.     The 7/18/24 Bid represents that proof of funds are attached at Exhibit C to the bid. At Exhibit C, H Capital represented that: *"Bidder currently has in excess of $80,000,000.00 in escrow with Fidelity National Title from the successful sale closing of a New York property by an affiliated entity."*

46.     Upon information and belief, at the time that representation was made, H Capital did not have access to more than $80 million in escrow with Fidelity National Title.

47.     The 7/18/24 Bid represents:

> *8. **Corporate Authority.** Attached hereto as Exhibit D is a resolution of H Capital Holdings, LLC and H Equities, LLC authorizing the submission of this bid. H Capital Holdings, LLC is managed by Anthony He in his capacity as the Manager. Bidding resolutions attached hereto. H Capital Holdings LLC is owned 100% by H Equities, LLC. H Equities, LLC is 100% owned by Anthony He.*

48.     The 7/18/24 Bid represents:

> *17. **Consent to Jurisdiction:** Bidder submits to the jurisdiction of the Court and waives any right to a jury trial in connection with any disputes relating*

8

*to the Debtors' qualification of Bids, to the Auction, **the Sale, the Sale Transaction(s)** and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, **and any and all other agreements entered into in connection with any proposed Sale Transaction, and the closing of the Sale Transaction, as applicable.***

(Emphasis added).

49.    Plaintiffs relied on the representations of H Capital in the 7/18/24 Bid in evaluating the bids of H Capital.

50.    H Capital and Supor 600 did not execute an agreement for the purchase and sale of the 600 Guyon Property.

51.    H Capital and Plaintiffs did execute an agreement for the purchase and sale of the FER Property.

**D.     The H Capital Agreement to Purchase the FER Property.**

52.    Plaintiffs entered into a Purchase and Sale Agreement dated as of August 15, 2024, to sell the FER Property to H Capital for $48,000,000 (the "PSA"). A true and correct copy of the PSA is attached to this complaint as **Exhibit "C."**

53.    Section 10.1 of the PSA provided for the following Closing Date:

10.1    Closing Date. The closing of the transaction described in this Agreement (the "Closing") shall occur on the date which is no later than fourteen (14) days following the entry of the Sale Order, or such other date as agreed to in writing between Sellers and Purchaser (the date on which the Closing occurs is referred to herein as the "Closing Date").

54.    On August 23, 2024, Debtors filed a motion to authorize and approve (i) the sale of real property pursuant to the PSA; (ii) assumption and assignment of executory contracts and unexpired leases; (iii) rejection of unexpired leases and (iv) granting related relief (the "FER Sale Motion") [ECF. No. 195]. By way of Order Shortening Time dated August 26, 2024, the FER Sale Motion was originally set for hearing on September 10, 2024 [ECF No. 198].

55.     H Capital submitted an application to the Harrison Redevelopment Authority (the "HRA") seeking approval for the assignment of the Harrison RDA. The hearing on the FER Sale Motion was adjourned from time to time while the Debtors attempted to negotiate with the Town of Harrison and HRA regarding the proposed assignment of the Harrison RDA to H Capital.

56.     On September 24, 2024, the Town of Harrison and the HRA filed a Limited Objection to the FER Sale Motion (the "Harrison Objection") [ECF No. 242]. The Town of Harrison and the HRA are referred to collectively herein as the "Harrison Objectors."

57.     On September 27, 2024, the Debtors submitted a Response to the Harrison Objection [ECF No. 250] which included a Certification executed by Antong He, under penalty of perjury, in support of the FER Sale Motion (the "He Certification"). A true and correct copy of the He Certification is attached to this complaint as **Exhibit "D."**

58.     The He Certification represents that: *"Affiliated entities of the Purchaser, East One Harrison Urban Renewal, LLC and Accordia Harrison Urban Renewal, LLC ("East One Entities") acquired Harrison Yards project. The Harrison Yards project consists of four buildings in two phases. Phase I consists of buildings A & D. Phase II consists of Buildings B & C." Id* at 13. Upon information and belief, the Harrison Yards project is in close proximity to the FER Property.

59.     As reflected in the He Certification and attachments thereto, and as thereafter stated by H Capital Defendants' counsel on more than one occasion, H Capital Defendants at all times relevant hereto have been involved in real estate development projects other than the FER Property and had financial commitments with respect to those other projects.

60.     In a section of the He Certification subtitled *"H Capital Group LLC Financial Capabilities"* at paragraph 31, Antong He swore that H Capital was in possession of *"sufficient*

*funds to purchase the [FER] property, complete pre-development, and commence construction.*
*We have recently completed the sale of several assets with affiliated entities. As of the date of*
*this certification, we have approximately EIGHTY-TWO MILLION and 00/100 DOLLARS held*
*in trust with Fidelity National Title."*

61.    At paragraph 32 of the He Certification, Antong He further averred that H Capital
*"has made arrangements for additional funds available to be available via loan facility with*
*additional funds available through loans from a family trust. Attached is an account statement*
*from HSBC Bank indicating additional liquid funds available."*

62.    Exhibit D to the He Certification attached a statement showing an open account at
HSBC Bank (Acct No. xxx-5608) in the name of the He Family Trust reflecting an ending
balance of $95,000,089.30 as of August 31, 2024.

63.    The HSBC bank statement attached as Exhibit D was also submitted directly to
the HRA as an attachment to a Supplemental Response/Submission in connection with H
Capital's application for a transfer of the Harrison RDA.

64.    The He Certification also included as Exhibit B certain information that He and/or
H Capital had submitted to the HRA, including a purported balance sheet for H Capital. Page 4
of that document states that H Capital is a 100% owner of a hotel property in Long Island City,
Queens, New York, but land records for this property indicate that it is not owned by H Capital,
but rather is owned by an entity called St. John Real Estate Consultant, Inc., which mortgaged
the property in 2018.

65.    Plaintiffs relied on the representations of H Capital and Antong He in the He
Certification in connection with proceeding to prosecute the FER Sale Motion.

66.    Upon information and belief, at the time that the He Certification was delivered, H Capital and Antong He did not have access to (i) "*sufficient funds to purchase the [FER] property, complete pre-development, and commence construction,*" (ii) approximately $82 million in escrow with Fidelity National Title, or (iii) the HSBC Bank account (Acct No. xxx-5608) in the name of the He Family Trust with a balance of $95,000,089.30.

67.    The FER Sale Motion came on for hearing as a contested matter on October 1, 2024. In advance of the hearing, the parties had entered a Stipulation regarding witnesses and the admissibility of certain evidence. At the hearing, the parties conducted extensive negotiations in an attempt to resolve the objection filed by the Harrison Objectors. Ultimately, the Court conducted a status conference at which time it adjourned the hearing on the sale of the FER Property and the confirmation of the First Amended Plan until October 7, 2024, and further set scheduling parameters for the conduct of depositions regarding the contested matters.

68.    The parties ultimately resolved the issues of the Harrison Objectors, and the FER Sale Motion and confirmation hearing proceeded on consent on October 7, 2024.

69.    On October 7, 2024, the Court entered an Order approving the FER Sale Motion (the "Sale Order") [ECF No. 279]. A true and correct copy of the Sale Order is attached as **Exhibit "E"** hereto.

70.    The Sale Order amended and approved the PSA and authorized the Sellers to consummate the sale and related transactions provided for under the PSA. Among other things, paragraph 43(ii) of the Sale Order provided that, so long as an extension fee was paid by H. Capital, the closing of the sale of the FER Property shall occur on November 25, 2024, or such earlier date as agreed to in writing between Sellers and Purchaser.

71.    The Sale Order also states at paragraph 38:

*This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Purchase and Sale Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, (ii) compel delivery of the Properties to the Purchaser or Purchaser Designees; (iii) enforce the injunctions and limitations of liability set forth in this Sale Order, and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Purchased Contracts.*

**E.    Confirmation of the Debtors' First Amended Plan.**

72.    On May 6, 2024, Debtors filed a *Motion for an Order (i) Approving the Joint Disclosure Statement on an Interim Basis, (ii) Scheduling a Combined Hearing to Consider the Adequacy of the Disclosure Statement and Confirmation of the Plan, (iii) Establishing Deadlines and Procedures for Solicitation and Tabulation of Votes, (v) Approving the Form of Ballot and Solicitation Package, (vi) Approving the Form and Manner of Notice Provisions and (vii) Granting Related Relief* [ECF No. 92] (the "Solicitation Motion"). The Solicitation Motion was approved by order dated May 30, 2024 [ECF No. 133].

73.    On September 22, 2024, Debtors filed a First Amended *Joint Disclosure Statement and Plan of Reorganization* (the "Plan" or *"First Amended Plan"*) [ECF No. 240]. The First Amended Plan modified the initial plan by (i) revising certain provisions relative to releases provided under the Plan to resolve the objections of the United States Trustee; (ii) detailing proposed exit transactions for the sale of the FER Property, as well as other Debtor and non-Debtor properties (the "Non-Debtor Property Sales"); (iii) incorporating a Plan Funding Agreement for the contribution of proceeds from the Non-Debtor Property Sales by the non-Debtor entities towards the Debtors' obligations under the First Amended Plan; and (iv) providing for the submission of an Addendum to the RSA between the Debtors and the Lenders providing for the exit Transactions and Funding Agreement as set forth above.

74.    Article XV of the Plan provides that:

> *After Confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to the fullest extent legally permissible for all purposes consistent with the Plan and the Code, which purposes include, but are not limited to (and which are in addition to all other purposes identified in the other provisions of the Plan)"* … [including] *"[t]he determination of all questions and disputes regarding title to the Property of the Estate, and the determination of all causes of action, controversies, disputes, or conflicts, including the right to participate in any Distribution from the Estate, whether or not subject to an action pending as of the Effective Date, between the Reorganized Debtors and any other Person, including, but not limited to, any right of the Reorganized Debtors to recover assets pursuant to the provisions of the Code.*

*See* Plan at pp 113-114.

75.    On October 7, 2024, the Court entered *Findings of Fact and Conclusions of Law and Order (I) Approving the Combined First Amended Disclosure Statements and (II) Confirming the First Amended Plan of Reorganization and/or Liquidation for Debtors* (the "Confirmation Order") [ECF No. 280]. At page 23, the Confirmation Order approved the Bankruptcy Court's retention of jurisdiction as set forth in the Plan.

## F.    **H Capital Defendants Fraudulently Induce the Re-Scheduling of the FER Sale Closing.**

76.    As noted, Section 10.1 of the PSA originally provided for the closing of the transaction no later than fourteen (14) days following the entry of the Sale Order, or such other date as agreed to in writing between Sellers and Purchaser (the "Closing Date"). At the request, and upon various representations and promises, of H Capital, Antong He and their agents, Sellers agreed to extend the Closing Date on several occasions.

(i)    *The First Extension of the FER Closing Date.*

77.    Based upon the sworn statements of Antong He regarding the financial capabilities of H Capital and its access to additional funds for purposes of closing the FER Property sale, the Sale Order provided for the amendment of the PSA to revise the timing and

amounts of the purchase deposit(s) required by H Capital and to extend the date for the closing of the sale of the FER Property to no later than November 25, 2024.

78.     Specifically, paragraph 43 of the Sale Order, *inter alia*, (i) required H Capital to pay an additional deposit of $1.2 million by November 4, 2024 (the "First Additional Deposit"); (ii) required H Capital to pay $1,440,000 by October 8, 2024, to fund $32,000 per day in carry costs for the Lenders' secured claim from October 11, 2024, through the extended outside closing date of November 25, 2024 (the "Extension Fee"); (iii) provided that all contingencies contained in the PSA are deemed satisfied; and (iv) provided that the earnest money deposit was not, under any circumstances, refundable to H Capital.

79.     The First Additional Deposit and the Extension Fee were paid, and the Closing Date for the FER Property was therefore extended to November 25, 2024.

80.     However, the sale of the FER Property did not close on or before November 25, 2024.

*(ii)     The Second Extension of the FER Closing Date.*

81.     Prior to November 25, H Capital requested an extension of the November 25, 2024, Closing Date.

82.     Plaintiffs and H Capital entered into that certain Amendment to the PSA, dated November 25, 2024 ("Second Amendment"). A true and correct copy of the Second Amendment is attached to this complaint as **Exhibit "F."**

83.     The Second Amendment amended the PSA to provide that the closing would occur on or before January 7, 2025, time being of the essence, or such earlier date as agreed to in writing between Sellers and Purchaser.

1600088696.1

84.     In exchange for this extension, H Capital agreed to pay to 1000 Frank E. Rodgers 1, LLC and 1000 Frank E. Rodgers 2, LLC (collectively, "Lenders") a per diem extension fee of $32,000 from November 26, 2024, until the Closing Date, as extended under the Second Amendment. This amount was to be paid into Lenders' attorneys' account by December 2, 2024.

85.     H Capital also agreed that $3,000,000 in previously deposited funds held in escrow for the purchase of the FER Property could be released to the Lenders.

        *(iii)*    *H Capital Defendants Fail to Close in Time and Fraudulently Induce a Third Amendment.*

86.     H Capital did not close on the purchase of the FER Property as required by the Second Amendment. Instead, H Capital Defendants fraudulently induced Plaintiffs to extend the Closing Date yet again.

87.     Prior to January 7, 2025, H Capital requested an extension of the January 7, 2025, Closing Date.

88.     On January 5, 2025, Plaintiffs agreed to extend the Closing Date, subject to certain conditions, including written proof of available funds of H Capital to close the FER Property transaction.

89.     In response to this demand, counsel for H Capital Defendants replied by email dated January 6, 2025, "We can provide proof of funds." (the "January 6 Email"). The next day, H Capital Defendants' counsel transmitted an email to Plaintiffs' counsel including a purported Wells Fargo Account summary showing funds totaling $82,000,950 in a Business Checking account (the "January 7 Email"). True and correct copies of the January 6 Email and the January 7 Email are attached to this complaint as **Exhibit "G."**

90.     H Capital Defendants' representation that it had over $82 million available to close on the FER Property transaction induced Sellers to enter into a third amendment to the PSA.

91.     H Capital Defendants' representation regarding the purported Wells Fargo account was false when made.

92.     Plaintiffs relied on H Capital Defendants' representation and entered into that certain Third Amendment to the PSA, made and entered into as of January 6, 2025, which extended the Closing Date to January 21, 2025 (the "<u>Third Amendment</u>"). A true and correct copy of the Third Amendment is attached to this Verified Complaint as **Exhibit "H."**

93.     Among other things, the Third Amendment provided that the Closing *". . . shall occur on January 21, 2025, TIME OF THE ESSENCE, or such earlier date as agreed to in writing between Sellers and Purchaser."*

94.     The Third Amendment also provides that H Capital *"shall deposit an additional sum of $2,407,500.00 with the Escrow Agent on or before January 13, 2025 (the "<u>Second Additional Earnest Money Deposit</u>"). If the Second Additional Earnest Money Deposit is not delivered by January 13, 2025, it shall be deemed a Purchaser's Default under the PSA."*

95.     H Capital did not deposit the Second Additional Earnest Money Deposit with the Escrow Agent on or before January 13, 2025, or at any time since. This constituted (and continues to constitute) a default under the PSA, as amended.

> (iv)    *The H Capital Defendants Fail to Close on Time and Fraudulently Induce a Further Extension Under the Third Amendment.*

96.     H Capital did not close on the purchase of the FER Property as required by the Third Amendment. Instead, H Capital Defendants subsequently fraudulently induced Plaintiffs to further extend the Closing Date under the Third Amendment to February 4, 2025.

97.     H Capital Defendants made numerous representations to induce Plaintiffs to agree to further extend the closing deadline to February 4, 2025.

98.     On January 22, 2025, H Capital Defendants' counsel advised via email that funds were in transit to his trust account and that he expected the wire to hit his account that day (the "January 22 Email"). A true and correct copy of the January 22 Email is attached to this complaint as **Exhibit "I."**

99.     On January 24, 2025, H Capital Defendants' counsel again stated, via email, that H Capital Defendants had initiated a wire for $50 million and provided a purported wire confirmation from Taipei Fubon Bank Hong Kong Branch ("Fubon Bank") evidencing a wire sent to the title company serving as the escrow agent for the sale of the FER Property (the "January 24 Email"). The title company is referred to herein as the "Escrow Agent." A true and correct copy of the January 24 Email is attached to this complaint as **Exhibit "J."**

100.    Despite numerous representations made by H Capital Defendants' counsel over the next several days that the wire was initiated, was in transit, or would arrive imminently—including representations made via emails dated January 27, January 29, and February 3, 2025 — the wire from Fubon Bank containing H Capital Defendants' funds for the closing never arrived (the "January 27 Email," "January 29 Email, and "February 3 Email," respectively). True and correct copies of the January 27 Email, January 29 Email and February 3 Email are attached to this complaint as collective **Exhibit "K."**

101.    Once the extended Closing Date passed, H Capital Defendants made further misrepresentations to induce Plaintiffs to forbear from exercising their remedies under the PSA.

102.    Via email on February 6, two days after the parties' agreed-upon Closing Date, H Capital Defendants' counsel produced two screenshots of emails allegedly sent by an officer at the Office of Foreign Assets Control ("OFAC"), which stated that Defendant Antong He and his associated companies were removed from the OFAC sanctions list and that their accounts would be

1600088696.1

released that day (the "February 6 Email"). A true and correct copy of the February 6 Email is attached to this complaint as **Exhibit "L."**

103.    According to the website of the United States Department of the Treasury, Office of Foreign Assets Control, OFAC

> *administers and enforces economic and trade sanctions based on US foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States.*

104.    H Capital Defendants repeatedly represented to Plaintiffs that H Capital and/or Antong He are/were on an OFAC sanctions list which resulted in a "freeze" or "hold" on their accounts at financial institutions which prevented H Capital from satisfying its obligations under the PSA.

105.    Despite repeated demands from Plaintiffs and an order of this Court (discussed below), H Capital Defendants never produced verifiable information substantiating H Capital Defendants' claim that their assets were subject to a "freeze" or "hold" referenced in paragraphs 102 and 104, above.

106.    H Capital Defendants' representations to Plaintiffs regarding the OFAC "freeze" or "hold" were false and were made deliberately by H Capital Defendants to mislead Plaintiffs, to fraudulently induce Plaintiffs to forbear from exercising remedies, and to fraudulently induce Plaintiffs to extend the Closing Date on multiple occasions.

107.    On February 13, 2025, H Capital Defendants' counsel stated via email to Plaintiffs that H Capital Defendants had initiated a wire from Chase Bank in Fort Lee, New Jersey to the Escrow Agent.  (the "February 13 Email"). A true and correct copy of the February 13 Email is attached to this complaint as **Exhibit "M."**

108.    The next day, H Capital Defendants' counsel stated in an email to Plaintiffs' counsel that Chase was "insistent that the wire was out" and that the Escrow Agent should have it. H Capital Defendants' counsel then sent Plaintiffs a document purportedly showing a $75 million wire was initiated from Chase Bank to the Escrow Agent (the "February 14 Email"). A true and correct copy of the February 14 Email is attached to this complaint as **Exhibit "N."**

109.    The H Capital Defendants representations set forth on paragraphs107 and 108 were false and the Escrow Agent never received a $75 million wire from Chase Bank.

110.    On February 18, 2024, H Capital Defendants' counsel sent Plaintiffs a purported federal reference number—which he stated was provided by H Capital Defendants—for the alleged wire from Chase Bank and asked that the Escrow Agent track it (the "February 18 Email"). A true and correct copy of the February 18 Email is attached to this complaint as **Exhibit "O."**

111.    The federal reference number provided by H Capital Defendants' counsel was invalid.

   *(v)    H Capital Defendants Fraudulently Induce Plaintiffs to Enter into the Fourth Amendment to the PSA.*

112.    H Capital Defendants continued to misrepresent their possession of the funds required to close on the FER Property to induce Plaintiffs into executing a fourth amendment extending the closing date.

113.    On March 11, 2025, H Capital Defendants' counsel advised Plaintiffs' counsel via telephone call that H Capital Defendants received a $95 million certified check and that Defendant Antong He deposited the check with New York Community Bank ("Flagstar Bank").

114.    H Capital Defendants' counsel further advised counsel for Plaintiffs that he had seen the $95 million certified check.

115.    Antong He also represented to Seller's representatives, Joseph Supor and Kevin Cassidy that (i) H Capital Defendants received a $95 million certified check and that Defendant Antong He deposited the check with Flagstar Bank, and (ii) the certified check would clear shortly – providing H Capital with more than enough money to close the FER Property transaction.

116.    In addition, Antong He told Joseph Supor and Kevin Cassidy that he and/or H Capital would have enough money not only to close the FER Property transaction, but also to enter into transactions with other Debtors (including Supor 600) which would allow Debtors to satisfy their remaining obligations to Lenders and otherwise under the Plan.

117.    As a result of H Capital Defendants' representations, Plaintiffs refrained from noticing a default to H Capital for failing to close as required by the PSA as amended by the Third Amendment.

118.    The representations as to the $95 million "certified check" were not true.

119.    Over the next few days, H Capital Defendants' counsel provided numerous reasons as to why Flagstar Bank had not yet cleared the funds and made various representations that the funds would clear imminently.

120.    On March 18, 2025, H Capital Defendants' counsel sent an email that allegedly provided "third party confirmation" for funding of the purchase price. The letter contained a wire confirmation from Fubon Bank representing a wire containing funds of $51,080,000 had been initiated, which H Capital Defendants' counsel represented was from an investor (Greenland Industrial Limited) who was providing back-up funding given the issues with the alleged certified check deposited to Flagstar Bank that had not yet cleared (the "March 18 Email"). A true and correct copy of the March 18 Email is attached to this complaint as **Exhibit "P."** The beneficiary on the wire confirmation was the Escrow Agent for the proposed sale of the FER Property. The

March 18 Email also stated the buyer "remains committed to closing and requests time to have the funds clear."

121.    The representations set forth in paragraph 120, above were all false, and were made for the purpose of inducing Plaintiffs to (i) forbear from exercising their remedies under the PSA and the Third Amendment and (ii) enter into a fourth amendment to the PSA.

122.    As a result of the foregoing misrepresentations, on March 26, 2025, Plaintiffs entered into a fourth amendment to the PSA, made and entered into as of March 26, 2025 (the "Fourth Amendment"). A true and correct copy of the Fourth Amendment is attached to this complaint as **Exhibit "Q."**

123.    Among other things, the Fourth Amendment provided that the closing *". . . shall occur on March 31, 2025, TIME OF THE ESSENCE, or such earlier date as agreed to in writing between Sellers and Purchaser"*.

> *(vi)    H Capital Defendants' Continued Misrepresentations as the Fourth Amendment Closing Deadline Approached.*

124.    H Capital Defendants continued to misrepresent their possession of the funds required to close on the sale of the FER Property during the days leading up to the March 31, 2025, closing deadline under the Fourth Amendment.

125.    On March 28, 2025, H Capital Defendants' counsel falsely stated that the Fubon Bank wire would clear the Escrow Agent's account by March 28, 2025, and that the closing would happen then (the "March 28 Email"). A true and correct copy of the March 28 Email is attached to this complaint as **Exhibit "R."**

126.    On March 31, 2025, the closing deadline under the Fourth Amendment, H Capital Defendants' counsel stated that he anticipated the wire from Fubon Bank would arrive in the

Escrow Agent's account that day (the "March 31 Email"). A true and correct copy of the March 31 Email is attached to this complaint as **Exhibit "S."**

127.    Later that day, H Capital Defendants' counsel provided a purported email from Fubon Bank, confirming that the wire was in the "SWIFT underwriting department" and would be released after "completion of the underwriting process." (the "March 31 SWIFT Email"). A true and correct copy of the March 31 SWIFT Email is attached to this complaint as **Exhibit "T."**

128.    H Capital Defendants' counsel also stated that the "underwriting process" had already happened (the "March 31 Underwriting Email"). A true and correct copy of the March 31 Underwriting Email is attached to this complaint as **Exhibit "U."**

129.    The funds represented to have been wired by Fubon Bank in the emails of H Capital Defendants' counsel on March 31, 2025, never arrived.

> *(vii)    H Capital Defendants Fail to Close in Time and Fraudulently Induce a Further Extension Under the Fourth Amendment.*

130.    In Plaintiffs' Status Report filed with this Court on March 31, 2025, [ECF No. 366], Plaintiffs outlined H Capital Defendants' representations regarding the status of the wire from Fubon Bank. Plaintiffs then advised this Court that it consented to an extension of the Closing Date under the Fourth Amendment.

131.    H Capital Defendants' representations regarding the Fubon Bank wire induced Plaintiffs into consenting to an extension of the Closing Date for the sale of the FER Property.

132.    On the morning of April 1, 2025, H Capital Defendants' counsel provided another alleged email from Fubon Bank, advising the wire was approved for release and that the funds would arrive "any time from today to 3 business days." (the "April 1 Email"). A true and correct copy of the April 1 Email is attached to this complaint as **Exhibit "V."**

133.    In response to the April 1 Email, Plaintiffs' counsel asked what "3 business days" meant. H Capital Defendants' counsel responded, via email, advising that the "funds will be available by Friday [April 4, 2025] and possibly as early as today [April 1, 2025]." *See* Exhibit V. H Capital Defendants either fabricated or misrepresented the email from Fubon Bank and deliberately misrepresented the date by which the funds would be available.

134.    At a hearing before this Court on the same day, Plaintiffs and H Capital Defendants agreed to modify the Fourth Amendment solely to extend the closing date to no later than April 7, 2025, time being of the essence.

135.    The funds from Fubon Bank were not, in fact, available on April 4, 2025.

136.    H Capital Defendants' misrepresentation as to the imminent availability of the funds from Fubon Bank induced Plaintiffs to enter into the modified Fourth Amendment.

137.    On April 7, 2025, the closing deadline under the modified Fourth Amendment, H Capital Defendants' counsel transmitted an email to Plaintiff's counsel stating

> *[m]y client believes we will be funded today. I understand that my client filed an order to show cause in the NY case. I understand it was heard late Friday, with a positive outcome on our side."* Later that day, he advised *"[t]here is a negotiation occurring as to when the hold is released and what funds will be released and when. I am told that I will have that shareable information shortly.*

(the "April 7 Email"). A true copy of the April 7 Email is attached to this Complaint as **Exhibit "W."**

138.    The foregoing statements were false and were made deliberately by H Capital Defendants to mislead Plaintiffs.

139.    H Capital Defendants repeatedly represented to Plaintiffs (as well as this Court and Lenders) that (i) Antong He was "involved" in an unspecified criminal action before an unidentified judge in the United States District Court for the Southern District of New York (the "New York

Action"), (ii) the New York Action resulted in a "freeze" or "hold" on accounts which prevented H Capital from satisfying its obligations under the PSA; (iii) numerous orders were entered in the New York Action removing the "freeze" or "hold" on accounts which would allow H Capital to satisfying its obligations under the PSA and would allow Antong He and/or H Capital to consummate transactions with other Debtors (including Supor 600) which would allow Debtors to satisfy their remaining obligations to Lender and otherwise under the Plan, and (iv) agreements were entered with unidentified governmental entities in the New York Action removing the "freeze" or "hold" on accounts which would allow H Capital to satisfying its obligations under the PSA and would allow Antong He and/or H Capital to consummate transactions with other Debtors (including Supor 600) which would allow Debtors to satisfy their remaining obligations to Lender and otherwise under the Plan.

140.    Despite repeated demands from Plaintiffs and Lenders, as well as an order of this Court (discussed below), H Capital Defendants never produced documents or other information verifying their representations regarding the New York Action.

141.    H Capital Defendants' representations to Plaintiffs regarding the New York Action were false and were made deliberately by H Capital Defendants to mislead Plaintiffs, to fraudulently induce Plaintiffs to forbear from exercising remedies, and to fraudulently induce Plaintiffs to extend the Closing Date on multiple occasions.

142.    H Capital Defendants did not provide the funds required to close on the FER Property on April 7, 2025.

143.    The closing of the sale of the FER Property did not occur on April 7, 2025.

      (viii)    *The H Capital Defendants Fail to Close on Time and Fraudulently Induce an Extension Under a Fifth Amendment.*

144.    H Capital Defendants continued to misrepresent the availability of funds required to close on the sale of the FER Property and induced the Sellers to enter into a fifth amendment to the PSA to further extend the Closing Date.

145.    On April 8, 2025, H Capital Defendants' counsel provided another email allegedly from Fubon Bank. H Capital Defendants' counsel advised that certain compliance requirements referenced in the Fubon Bank email relating to the Fubon Bank wire had been completed (the "April 8 Email"). A copy of the April 8 Email is attached to this Complaint as **Exhibit "X."**

146.    The Fubon Bank email forwarded via the April 8 Email stated that Fubon Bank expected the wire to be available to the Escrow Agent on or before April 12, 2025.

147.    This statement was false, and H Capital Defendants knew it to be false.

148.    In the April 8 Email, H Capital Defendants' counsel also stated "[w]e are awaiting the wire to hit the account. To the extent the wire has not hit by Thursday's hearing date, we are proposing to put up an additional $2mm that can be released immediately for an extension." *See* Exhibit X.

149.    Despite representing that the $2 million could be "released immediately," the following day, H Capital Defendants' counsel advised via email that if the parties could agree on an extension, the additional $2 million could be funded as early as the following week. *See* Exhibit X.

150.    Because H Capital Defendants' representations regarding the imminent availability of the funds from Fubon Bank and the payment of an additional $2 million, Plaintiffs agreed to enter into the Fifth Amendment to the PSA, entered into as of April 9, 2025 (the "Fifth Amendment"). A true and correct copy of the Fifth Amendment is attached to this complaint as **Exhibit "Y."**

151.    The Fifth Amendment provides that: "*The closing of the transaction described in this Agreement (the "Closing") shall occur on the earlier of (i) May 1, 2025, TIME OF THE ESSENCE, (ii) the availability to Purchaser of the Flagstar Bank Funds, the Fubon Bank Funds or other funds sufficient to satisfy Purchaser's obligations under the Purchase and Sale Agreement, as amended, or (iii) such earlier date as agreed to in writing between Sellers and Purchaser.*"

> *(ix)    H Capital Fails to Perform under the Fifth Amendment and H Capital Defendants Further Induce Plaintiffs to Forbear from Exercising their Remedies under the PSA, as Amended.*

152.    The Fifth Amendment to the PSA also required, among other things, that H Capital pay the Plaintiffs the sum of $32,060 per day (the "Final Extension Fee"). The Final Extension Fee was fully payable by H Capital on the Closing Date, provided however, that $2 million of the Final Extension Fee was due to Lenders' counsel on or before April 15, 2025, at 5:00 p.m.

153.    After the execution of the Fifth Amendment, Plaintiffs made various requests for updates on the status of the funds required to close the sale of the FER Property as well as the payment of the $2 million advance on the Final Extension Fee.

154.    On April 15, 2025, H Capital Defendants' counsel emailed Plaintiffs' counsel and represented that he spoke with H Capital Defendants and a wire was initiated from a TD Bank account which contained the required $2 million payment on account of the Final Extension Fee (the "April 15 Email"). A true copy of the April 15 Email is attached to this Complaint as **Exhibit "Z."** H Capital Defendants' counsel further advised that the wire was being sent to Lenders' counsel's trust account.

155.    On April 17, 2025, H Capital Defendants' counsel advised Plaintiffs' counsel via email that he and H Capital Defendants were going to the bank to wire the $2 million to the

Lender's counsel (the "April 17 Email'). A true copy of the April 17 Email is attached to this Complaint at **Exhibit "AA."**

156.    These representations regarding the $2 million payment were false.

157.    The $2 million payment towards the Final Extension Fee was never paid by or on behalf of Purchaser. This constituted and continues to constitute a default under the Fifth Amendment.

158.    The Fifth Amendment also required that, if the closing did not occur on or before April 16, 2025, H Capital was obligated to take various actions.

159.    First, H Capital was obligated to cause its counsel in the New York Action, Richard Lee, Esq., to provide a status letter (the "Lee Letter") regarding the status of the funds required for closing on the FER Property as they relate to the New York Action.

160.    H Capital Defendants' refusal to provide any verifiable information as to the New York Action has prevented Plaintiffs (and this Court) from ascertaining even the existence of this matter.

161.    Second, H Capital was required to provide this Court with documents reflecting and regarding the New York Action for *in camera* review by this Court (the "*In Camera* Materials").

162.    Finally, H Capital was required to file an application with this Court for an order compelling Fubon Bank to show cause why the funds H Capital Defendants had allegedly wired for use in the purchase of the FER Property were not immediately available to the H Capital Defendants.

163.    Pursuant to the Fifth Amendment, H Capital Defendants' failure to satisfy these three provisions entitled Plaintiffs to immediately terminate the PSA.

164.    On April 28, 2025, Plaintiffs' counsel asked H Capital Defendants' counsel whether H Capital had submitted the *In Camera* Materials to this Court as required under the Fifth Amendment. H Capital Defendants' counsel advised that he would confer with Richard Lee, Esq. to determine if the submission was made.

165.    On May 7, 2025, H Capital Defendants' counsel advised via email that H Capital would not be submitting the *In Camera* Materials to the Court, and that he advised this Court of same (the "May 7 Email"). A true copy of the May 7 Email is attached to this Complaint as **Exhibit "BB."**

166.    H Capital's failure to submit the Lee Letter and *In Camera* Materials constituted and continues to constitute a default under the PSA as amended by the Fifth Amendment.

167.    H Capital Defendants' misrepresentations that wires containing the funds required for closing had been initiated, were in transit and/or would reach the recipient account imminently continued leading up to the May 1, 2025, closing deadline under the Fifth Amendment.

168.    By email dated April 16, 2025, H Capital Defendants' counsel advised "[w]e are anticipating funding this afternoon for the entire purchase price." (the "April 16 Email"). A true copy of the April 16 Email is attached to this Complaint as **Exhibit "CC."**

169.    On April 18, 2025, H Capital Defendants' counsel advised via email that two wires for amounts due under the PSA were initiated from Wells Fargo the prior day (the "April 18 Email"). One of these wires was supposedly for $2 million. H Capital Defendants' counsel further advised that a separate wire for $2 million was wired from TD Bank earlier that week. *See* Exhibit CC; *see also* Exhibit AA and Exhibit Z.

170.    The representation in the April 16 and April 18 Emails were false as the referenced wires from Wells Fargo and TD Bank were not initiated.

171.    On April 23, 2025, H Capital Defendants' counsel sent yet another email again stating that H Capital Defendants anticipated the Wells Fargo wire would be received by 2:00 pm that day (the "April 23 Email"). Plaintiffs' counsel inquired into the status of the funds at 5:48 pm. H Capital Defendants' counsel responded, via email, that he received an internal confirmation number of the wire sent from Wells Fargo with a notation that the wire is in transit. *See* April 23 Email; Exhibit CC.

172.    On April 24, 2025, H Capital Defendants' counsel transmitted an email to Plaintiffs' counsel with information purporting to reference a Wells Fargo wire (the "April 24 Email"). The April 24 Email included a Wells Fargo federal reference number and indicated that the wire was in the amount of $82,554,000.89. H Capital Defendants' counsel further represented that the wire was initiated around 4:00 pm that day. A copy of the April 24 Email is attached to this Complaint as **Exhibit "DD."**

173.    On April 28 and April 29, 2025, respectively, H Capital Defendants' counsel represented, via email to Plaintiffs' counsel, that the funds from the Wells Fargo wire would be available in his account that day (the "April 28 Email" and "April 29 Email," respectively). *See* Exhibit DD.

174.    Contrary to the representations of H Capital Defendants as set forth in paragraphs 168-173 above, the funds required under the PSA to close on the sale of the FER Property never arrived.

175.    H Capital Defendants also represented that various holds placed on the funds had been removed. For example, on April 21, 2025, H Capital Defendants' counsel advised via email that a FinCen hold was removed from two of H Capital Defendants' accounts (the "April 21 Email"). A true copy of the April 21 Email is attached to this Complaint as **Exhibit "EE."**

176.    H Capital Defendants' counsel further stated that the accounts no longer subject to FinCen holds included the Fubon Bank account (with a total of $51 million in funds) and the Wells Fargo account (with a total of $82 million in funds). *See* April 21 Email; **Exhibit EE.**

177.    On April 22, 2025, H Capital Defendants' counsel provided two screenshots of emails allegedly from the OFAC case officer (whose identity was redacted) representing that the holds were removed from the Fubon Bank funds (the "April 22 Email"). A true copy of the April 22 Email is attached to this Complaint as **Exhibit "FF."**

178.    In that same communication, H Capital Defendants' counsel also indicated that he was confident that a wire from Wells Fargo for approximately $80 million would be released within the next 24 hours. H Capital Defendants' counsel also stated that a second wire containing the additional $2 million deposit was also initiated to the Lenders' attorney's account. *See* April 22 Email; **Exhibit FF.**

179.    In the April 22 Email, H Capital Defendants' counsel asked that the parties maintain the Closing Date of May 1, 2025, but stated that H Capital would close the transaction sooner upon receipt of the funds. *See* April 22 Email; **Exhibit FF.**

180.    Neither the $2 million deposit nor the funds required to close the purchase of the FER Property were ever received.

181.    The foregoing misrepresentations induced Plaintiffs to forbear from exercising their remedies under the PSA.

182.    On April 30, 2025, H Capital advised Plaintiffs, the Bankruptcy Court and other interested parties, among other things, that (i) H Capital did not have available funds sufficient to close the transaction as required under the PSA, as amended, (ii) H Capital did not pay the Partial Extension Fee as and when required under the Fifth Amended PSA; (iii) H Capital did not

submit/file the Lee Letter, In Camera Materials or the Fubon OSC as and when required under the Fifth Amendment, and (iv) H Capital suggested that the FER Property be marketed for sale in order to mitigate Purchaser's liability for damages to Sellers.

*(x)  H Capital Defendants' Failure to Comply with Bankruptcy Court Order.*

183.    On May 5, 2025, H Capital Defendants' counsel stated that a judge in the New York Action had entered an order requiring that the holds on H Capital Defendants' funds be released (the "May 5 Email").  A true copy of the May 5 Email is attached to this Complaint as **Exhibit "GG."**

184.    Despite demands, H Capital Defendants never produced the alleged order requiring that the holds on H Capital Defendants' funds be released.

185.    At a hearing before the Bankruptcy Court on May 6, 2025, this Court ordered that (i) unless sufficient funds were released to H Capital to close the sale on May 6, 2025, then (ii) H Capital would provide Judge Meisel with a confidential copy of the order authorizing the release of those funds for the Court's *in camera* review, or, alternatively, (iii) H Capitals would file a document on the Bankruptcy Court docket explaining why the *in camera* submission was not made. A true and correct copy of the transcript from the May 6, 2025, hearing is attached to the complaint as **Exhibit "GGG."**

186.    H Capital did not comply with this Court's order of May 6, 2025.

*(xi)  Additional Misrepresentations made by H Capital Defendants after the May 1 closing date set forth in the Fifth Amendment.*

187.    On May 7, 2025, H Capital Defendants' counsel stated that an appeal had been filed which again froze H Capital Defendants' funds, including the wires. *See* May 7 Email, **Exhibit BB**. Despite demands, H Capital Defendants never produced the alleged appeal.

188.    On May 9 and May 12, 2025, H Capital Defendants' counsel represented that H Capital Defendants' involvement in the New York Action was complete, that all holds were lifted

and that H Capital Defendants' funds were in the process of being released (the "May 9 Email" and the "May 12 Email"). True copies of the May 9 Email and the May 12 Email are attached to this complaint as **Exhibit "HH."**

189.    Despite demands, H Capital Defendants did not provide any verification as to the representations in the May 9 Email or the May 12 Email.

190.    Despite the representations by H Capital Defendants in the May 9 Email and May 12 Email, the funds required to close on the sale of the FER Property, and to satisfy H Capital's other obligations under the PSA, were never received.

191.    H Capital Defendants also continued to misrepresent the availability of additional funds that would allow H Capital to close on the FER Property to induce Sellers to forbear from exercising their remedies under the PSA.

192.    For example, in the May 7 Email, H Capital Defendants' counsel represented that he and his clients were in a closing on an $80 million loan from an investor that would provide funding for the purchase of the FER Property the following day. *See* May 7 Email, **Exhibit BB**.

193.    H Capital Defendants' counsel further stated in the May 7 Email that "[w]e strongly believe that funding will occur tomorrow."

194.    The next day, H Capital Defendants' counsel stated the wire with these proceeds was flagged, which delayed its initiation, but that all conditions had since been resolved (the "May 8 Email"). A true copy of the May 8 Email is attached to this Complaint as **Exhibit "II."**

195.    The funds referenced in the May 7 Email and May 8 Email never arrived, and H Capital did not close on the transaction on or about May 8. 2025.

196.    Moreover, at a hearing before the Bankruptcy Court on May 13, 2025, H Capital represented that an undisclosed order had been entered by an undisclosed court removing a "freeze"

on accounts, which removal would enable H Capital to close the transaction no later than May 15, 2025.

197.    On May 14, 2025, H Capital Defendants' counsel emailed Plaintiffs' counsel stating that "[w]e are on track for funding today." A true copy of the email where H Capital Defendants' counsel made this statement is attached to this Complaint as **Exhibit "JJ."**

198.    On May 15, 2025, in an effort to mislead Plaintiffs, H Capital Defendants' counsel advised via email to Plaintiffs' counsel that two wires were authorized to be released. These two wires included (i) a wire from Bank of America to his attorney trust account totaling $82 million and (ii) a wire from Flagstar Bank to his trust account totaling $95 million (the "May 15 Email"). A true copy of the May 15 Email is attached to this Complaint as **Exhibit "KK."**

199.    The alleged wires referenced in the May 15 Email were never received.

200.    H Capital did not close the transaction contemplated by the PSA, as amended, on May 15, 2025.

201.    H Capital has never provided Sellers with any valid proof of its access to funds sufficient to close the FER Property transaction.

202.    H Capital Defendants' representations regarding the alleged availability of funds sufficient to close the FER Property transaction were false, knowingly false, and were made deliberately by H Capital Defendants to mislead Plaintiffs, to fraudulently induce Plaintiffs to forbear from exercising remedies and to fraudulently induce Plaintiffs to extend the Closing Date on multiple occasions.

**G.    At All Relevant Times, Plaintiffs Were Ready, Willing, and Able to Perform the PSA.**

203.    Plaintiffs performed all of their contractual obligations under the PSA and each of its subsequent amendments.

204.    At various status conferences before this Court concerning the FER Property transaction, Plaintiffs advised H Capital, the Court and interested parties that Plaintiffs were ready, willing and able to sell the FER Property to H Capital pursuant to the PSA, as amended – as soon as H Capital was in possession of sufficient funds to satisfy the balance of the purchase price.

205.    In fact, Plaintiffs executed the closing documents required from Plaintiffs on January 17, 2025, and delivered them to the Escrow Agent to be held in escrow on January 21, 2025, in anticipation of closing.

## H.    **The Plaintiffs' Termination of the PSA.**

206.    On May 16, 2025, Sellers issued a Notice of Default and Termination of Purchase and Sale Agreement to H Capital Defendants (the "Termination Notice"). A true and correct copy of the Termination Notice is attached hereto as **Exhibit "LL."**

207.    The Termination Notice specified that the termination of the PSA was effective as of May 21, 2025, at 11:59 p.m. eastern standard time (the "Termination Date").

208.    Per Section 4.3 of the Fifth Amended PSA:

> *If the Purchase and Sale Agreement is terminated because of a Purchaser Default, then, in addition to all other rights and remedies available to Sellers at law or in equity:*
>
> (i)    *all deposits and extension fees paid by Purchaser prior to effective termination of the Purchase and Sale Agreement shall be retained by Lenders and credited by Lenders against Lenders' Allowed Secured Claim, for the benefit of Sellers, and as partial damages of such Purchaser Default;*
>
> (ii)    *within five (5) days after the effective termination of the Purchase and Sale Agreement, the Second Additional Earnest Money Deposit shall be fully payable by Purchaser to Sellers as partial damages of Sellers for such Purchaser Default;*
>
> (iii)    *within five (5) days after the effective termination of the Purchase and Sale Agreement, the Final Extension Fee shall be fully payable*

by Purchaser to Sellers as partial damages of Sellers for such Purchaser Default;

(iv)   within five (5) days after the effective termination of the Purchase and Sale Agreement, the amounts consistent with Section 6 of the Fourth Amended PSA (real estate taxes on the Property and interest thereon accruing from January 24, 2025 through the effective date of termination of the Purchase and Sale Agreement, plus the sum of $75,000) shall be fully payable by Purchaser to Sellers as partial damages of Sellers for such Purchaser Default; and

(v)   within five (5) days after the effective termination of the Purchase and Sale Agreement, the Fifth Amendment Increases shall be fully payable by Purchaser to Sellers as partial damages of Sellers for such Purchaser Default.

209.   In the Termination Notice, without waiver of their additional claims against Purchaser, Sellers demanded full payment of the amounts due under Sections 4.3 (ii) – (v) of the Fifth Amendment within five (5) days of the Termination Date.

210.   H Capital has not paid Plaintiffs any of the amounts demanded in the Termination Notice.

211.   H Capital has not responded to the Termination Notice.

**I.     H Capital Defendants Made Numerous Misrepresentations as to the Contents of Bank Accounts Under Their Control in Order to Induce Plaintiffs to Amend the PSA and to Forbear from Exercising Remedies Under the PSA.**

212.   From August 2024 through the filing of this Action, H Capital Defendants represented that they controlled numerous accounts which would be used to fund the purchase of the FER Property pursuant to the PSA.

213.   On May 15, 2025, H Capital Defendants' counsel represented that a wire containing funds of $82 million was initiated from a Bank of America bank account (the "May 15 Email"). *See* May 15 Email; Exhibit KK.

214.   The He Certification, which submission represented under penalty of perjury that H Capital had sufficient funds to close the FER Property transaction, included in H Capital

1600088696.1

Defendants' submission in connection with H Capital's application for a transfer of the Harrison RDA, at Section IV, paragraph 10 represented that H Capital's principal bank account was held at Global Bank, located at 8 Catherine Street, New York, New York 10038.

215.    The He Certification also represented that H Capital had access to approximately $82 million held in escrow with Fidelity National Title to close a purchase of the FER Property. *See* Exhibit D.

216.    The He Certification also averred that certain funds were available to H Capital by specifically attaching a statement showing an open account at HSBC Bank (Acct No. xxx-5608), located at Level 6, HSBC Main Building 1, Queen's Road Central, Central, Hong Kong, in the name of the He Family Trust and reflecting an ending balance of $95,000,089.30 as of August 31, 2024.

217.    On January 13, 2025, H Capital Defendants' counsel provided Plaintiffs' counsel with an email containing a "SWIFT" confirmation purporting to show that a wire containing certain funds required under the PSA had been initiated (the "January 13 Email"). This wire was initiated from an account with J.P. Morgan Private Bank in China and contained $2,485,000. A copy of the January 13 Email is attached to the Complaint as **Exhibit "MM."**

218.    The February 14 Email identified the alleged $75 million wire as initiated from a Chase Bank account (Acct No. xxx-7789). *See* February 14 Email; Exhibit N.

219.    On the purported wire confirmations from Fubon Bank, H Capital Defendants referenced an "A/C No." of xxx-4595 and xxx-4414. *See* Exhibit J and Exhibit P.

220.    H Capital Defendants' representations as to the alleged wire from TD Bank of $2 million in funds required under the Fifth Amendment did not identify a specific account or account number. *See* Exhibit Z.

221.    H Capital Defendants' representations regarding funds purportedly held in or wired from a Wells Fargo bank account identified a Business Checking account (Acct No. xxx-9204) and Business Savings account (Acct. No. xxx-4021). *See* Exhibit G and Exhibit DD.

222.    H Capital Defendants represented on numerous occasions, that over $95 million was available in a Flagstar Bank account (Acct No. xxx-5494) to fund the closing. In conjunction with those representations, on March 14, H Capital Defendants' counsel provided Plaintiffs with an image purporting to reflect a balance of $95,000,250 available in the Flagstar Bank account (the "March 14 Email"). A copy of the March 14 Email is attached to this Complaint as **Exhibit "NN."**

223.    The foregoing bank accounts referenced in paragraphs 212-222 are referred to collectively as "Defendants' Accounts."

224.    H Capital Defendants represented that Defendants' Accounts were within their control.

225.    H Capital Defendants represented that H Capital effectively controlled, owned, and/or had access to Defendants' Accounts and could access the funds in such accounts to satisfy its obligations under the PSA.

226.    H Capital Defendants' misrepresentations concerning their control over Defendants' Accounts, and that the bank accounts contained funds that would allow H Capital to perform its obligations under the PSA, induced Plaintiffs to enter into agreements extending the closing date and to forbear from exercising their remedies under the PSA.

**J.    Supor Enterprises' Parking Lot Claims.**

227.    For all time periods relevant herein Plaintiff Supor Enterprises owned and controlled FER 1 Property.

228.    The FER 1 Property consists of a 1,050-vehicle parking lot adjacent to the PATH

Train Station and the Red Bull Arena in Harrison, New Jersey (the "Parking Lot").

229.    Prior to December 1, 2024, the Parking Lot was operated by M&J Comprelli, LLC ("M&J") pursuant to a Parking Facility Management Agreement dated October 1, 2015, between M&J and S & B Realty Partnership (the "M&J Management Agreement"). Supor Enterprises became the successor in interest to S & B Realty Partnership under the M&J Management Agreement.

230.    Among other things, the M&J Management Agreement granted M&J the exclusive right and obligation to administer, manage, and operate daily commuter parking at the FER 1 Property. Among other things, the Management Agreement required M&J to initially pay S & B Realty Partnership $70,000 per month.

231.    In addition to the M&J Management Agreement, Supor Enterprises M&J and its principal entered into a separate verbal agreement related to parking for events taking place at Red Bull Arena (the "Red Bull Parking Agreement"). Pursuant to the Red Bulls Parking Agreement, M&J and its principal agreed to (i) manage the parking for events at Red Bulls Arena; (ii) pay over the net proceeds to Supor Enterprises after the deduction of 15% of the gross revenue to the Town of Harrison, costs of police officers, employee payments, insurance, and garbage removal; and (iii) account to Supor Enterprises for all revenue collected and expenses.

232.    By letter dated October 28, 2024, M&J and its principal noticed termination of the M&J Management Agreement (and the Red Bulls Parking Agreement) effective November 30, 2024.

233.    The Sale Order was entered on October 7, 2024. The Sale Order provided for the amendment of the PSA to revise the timing and amounts of the purchase deposit(s) required by H

Capital and to extend the date for the closing of the sale of the FER Property to no later than November 25, 2024.

234.    Given the anticipated closing of the PSA, in November of 2024, Plaintiffs asked Antong He if H Capital had a preferred vendor to manage the Parking Lot after H Capital acquired the FER Property.

235.    In November of 2024, Antong He advised Plaintiffs that "SP Plus" managed parking at the Harrison Yards project owned by East One and Accordia.  East One and Accordia are affiliates of H Capital.

236.    In November of 2024, Antong He advised Plaintiffs that after closing the PSA, H Capital intended to hire "SP Plus" to manage the Parking Lot.

237.    In November of 2024, Antong He told Plaintiffs that if the PSA transaction closed prior to December 1, 2024, that H Capital would enter into an agreement with "SP Plus" to manage the Parking Lot once the M&J agreements terminated on November 30, 2024.

238.    In November of 2024, Antong He told Plaintiffs that if the PSA transaction did not close prior to December 1, 2024, that Antong He requested that Plaintiffs enter into an agreement with "SP Plus" to manage the Parking Lot once the M&J agreements terminated on November 30, 2024, and that agreement could be assigned to H Capital upon closing of the PSA transaction.

239.    The M&J agreements terminated on November 30, 2024.

240.    The PSA transaction had not closed on November 30, 2024.

241.    Plaintiffs negotiated an agreement with SP Plus and its affiliate Metropolis Tennessee to manage the Parking Lot as of December 1, 2024.

1600088696.1

242.    SP Plus and/or its affiliate Metropolis Tennessee have managed the Parking Lot since December 1, 2024.

243.    There is no executed written agreement between Supor Enterprises (or any other Plaintiff or Debtor) and SP Plus and/or its affiliate Metropolis Tennessee regarding the Parking Lot.

244.    Upon information and belief, since December 1, 2024, SP Plus and/or its affiliate Metropolis Tennessee have received at least $800,000 in parking fees related to the Parking Lot.

245.    Neither Supor Enterprises nor any other Plaintiff or Debtor has received any money on account of the Parking Lot since December 1, 2024, although Plaintiffs have derived and continue to derive income from the use and occupancy of the FER Property by third parties unrelated to the Parking Lot.

246.    Despite managing the Parking Lot since December 1, 2024, neither SP Plus nor Metropolis Tennessee have paid any money to Supor Enterprises (or any other Plaintiff or Debtor) on account of the Parking Lot.

247.    Upon information and belief, revenue from the Parking Lot that should have been paid by SP Plus and/or its affiliate Metropolis Tennessee to Supor Enterprises, was diverted to H Holdco, East One, Accordia, Antong He, Invictus and/or presently unidentified parties that are not affiliated with Supor Enterprises.

248.    Upon information and belief, Invictus is the property manager of "Harrison Yards" for East One and Accordia.

249.    Upon information and belief, East One and Accordia are both owned or controlled by Antong He.

250.    Specifically, and without limitation:

1600088696.1

(a) In response to an e-mail from Sameh Jacob of SP Plus requesting remittance information, by e-mail of January 29, 2025, Eric Scheffler, Esq. Managing Partner of Invictus stated: *"I will provide the remittance information we are setting up the bank account at Chase"*.

(b) By e-mail of February 24, 2025, Nouredine Sadik of SP Plus asked Eric Scheffler of Invictus:

*Eric*
*I am following on this to see if we have the account setup along with the other requested documents.*
*In addition, the first Red Bull game is taking place this Saturday, March 1st, and we wanted to know if the closing on the trailer's lot took place and if partial of that lot can be used this Saturday for public parking?*
*Thank you*

(c) By e-mail of February 24, 2025, Eric Scheffler of Invictus advised Nouredine Sadik of SP Plus:

*just hold the $ for a few more days*

*You can use the trailer lot for the additional parking (and I think they usually charge more for that day)*

(d) By e-mail of March 21, 2025, Nouredine Sadik of SP Plus advised Eric Scheffler of Invictus:

*Hi Eric,*
*Hope all is well! I am following up to see if you guys had the account number set up yet. Also, do you happen to have the map that clearly shows the spaces the Port Authority is entitled to? The current operator isn't playing nice and wanted to make sure we have the accurate information.*
*Thank you!*

(e) By e-mail of March 21, 2025, Eric Scheffler of Invictus advised Nouredine Sadik of SP Plus:

*How much cash do we have accumulated?*

*The map we previously sent is all we have depicting the number of spaces they have. I thought there is also a physical delineation or current barrier.*

(f) By e-mail of March 26, 2025, Eric Scheffler of Invictus advised Nouredine Sadik of SP Plus:

*Nouredine,*

*Kindly wire $200k to the below account (you can call me for verbal confirmation)*

The account information provided by Eric Scheffler of Invictus to Nouredine Sadik of SP Plus is for an account of Accordia Harrison Urban Renewal LLC at Customers Bank in New York.

(g)  By e-mail of March 26, 2025, Nouredine Sadik of SP Plus advised Eric Scheffler of Invictus:

*Thanks Eric! Can you also share the W-9 please so we can get this setup asap*

(h)  By e-mail of March 26, 2025, Eric Scheffler of Invictus advised Nouredine Sadik of SP Plus:

*W-9 Attached*
*pls confirm when the wire goes out*

The W-9 provided is for Accordia Harrison Urban Renewal LLC.

(i) By e-mail of March 27, 2025, Eric Scheffler of Invictus advised Nouredine Sadik of SP Plus:

*Nouredine*
*Did this wire get out today?*

(j) By e-mail of March 28, 2025, Nouredine Sadik of SP Plus advised Eric Scheffler of Invictus:

*Hi, Eric*
*The ACH setup usually takes a couple of weeks. Now that we have the W-9, I can have accounting issue a check for the YTD balance, and starting with March NOI, we can get the ACH processed. Is that something that works for you? If so, I just need the address where you want the check to be sent to.*
*Thank you!*

(k) By e-mail of March 28, 2025, Eric Scheffler of Invictus advised Nouredine Sadik of SP Plus:

*Pls send the check to me (Anthony - I will deposit into the Accordia Harrison Urban Renewal LLC - DACA account at Customer's bank)*

Upon information and belief, the "Anthony" referred to in this e-mail is Antong He, who is copied on the e-mail

Copies of the foregoing e-mails are attached at to this Complaint as **Exhibit "OO."**

251.   Neither Supor Enterprises nor any other Plaintiff or Debtor authorized Invictus to provide any direction to SP Plus regarding the FER 1 Property, the Parking Lot, the revenue therefrom, or anything else.

252.   Neither Supor Enterprises nor any other Plaintiff or Debtor authorized East One, Accordia or H Holdco to provide any direction to SP Plus regarding the FER 1 Property, the Parking Lot, the revenue therefrom, or anything else.

253.   Neither Supor Enterprises nor any other Plaintiff or Debtor authorized SP Plus to accept direction from Invictus regarding the FER 1 Property, the Parking Lot, the revenue therefrom, or anything else.

254.   Neither Supor Enterprises nor any other Plaintiff or Debtor authorized SP Plus to accept direction from East One, Accordia or H Holdco regarding the FER 1 Property, the Parking Lot, the revenue therefrom, or anything else.

255.   On June 5, 2025, Plaintiffs requested that SP Plus provide an accounting of receipts and disbursements regarding its management of the Parking Lot and also advised that SP Plus was not authorized to send any payments to anyone other than J. Supor (on behalf of Supor Enterprises).

256.   By e-mail of June 6, 2025, SP Plus provided information identifying receipts and disbursements regarding its management of the Parking Lot. A copy of this e-mail and its attachments are attached at to this Complaint as **Exhibit "PP"**. In the e-mail of June 6, 2025, SP Plus advised:

> *Regarding the payments, the first check to H HOLDCO LLC was sent on April 16th and covered the combined amount for December 2024 through March 2025, totaling $375,899.95. This was due to a delay in receiving the necessary bank information.*
> *The second check, for April, was sent on May 16th in the amount of $146,917.94. The total year-to-date disbursements are $522,817.89.*
> *As Issa mentioned, May numbers are still preliminary, but we expect a strong*

*month with gross revenue over $242,000, a record high. The May payment should be issued around June 16th once finalized.*
*Please find attached an Excel sheet with a breakdown of revenue, expenses, and net revenue, as well as a copy of the two checks.*
*Please feel free to reach out with any questions or concerns you may have. If not, have a great weekend.*

## FIRST COUNT
*(Breach of Contract)*

257.    Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

258.    The PSA and all amendments thereto constitute a valid contract between Plaintiffs and H Capital.

259.    Plaintiffs performed as required by the PSA.

260.    At all relevant times, Plaintiffs were ready, willing, and able to close the sale of the FER Property as and when required by the PSA.

261.    H Capital breached the PSA, as set forth herein.

262.    Without limiting the generality of the foregoing, H Capital breached the PSA by, among other things:

    a.    Failing to close as and when required by the PSA, as amended;

    b.    Failing to tender the Second Additional Earnest Money Deposit as and when required by the Third Amendment;

    c.    Failing to tender the Partial Extension Fee as and when required by the Fifth Amendment;

    d.    Failing to pay the amounts due under Sections 4.3(ii)-(v) of the Fifth Amendment as demanded in the Termination Notice;

    e.    Failing to provide the Lee Letter;

1600088696.1

     f.   Failing to file the Fubon OSC; and

     g.   Failing to provide the In Camera Materials.

263.    As a result of these breaches of the PSA, Plaintiffs have been damaged in an amount to be proven at trial based on the facts alleged herein.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendant H Capital as follows:

     a.   Awarding Plaintiffs damages in an amount to be determined at trial, including, but not limited to, the damages demanded in the Termination Notice;

     b.   Awarding Plaintiffs their costs and attorneys' fees;

     c.   (i) Enjoining any further transfer, assignment, encumbrance, or other disposition of funds from the Defendants' Accounts without further order of this Court; (ii) issuing a Pre-judgment Writ of Attachment on any depository accounts maintained by or for the benefit of Defendant H Capital at the financial institutions identified in this Verified Complaint, including the Defendants' Accounts; (iii) requiring that Defendant H Capital provide Plaintiffs with documents identifying the Defendants' Accounts, including the identity of the financial institution, the account number, the name of the account holder and a statement from the financial institution reflecting the account's current balance; and (iv) finding H Capital to be in contempt of Court for failing to comply with the prior orders and direction of this Court; and

     d.   Granting Plaintiffs such other and further relief as the Court deems equitable and just.

### SECOND COUNT
*(Fraud in the Inducement as to the PSA)*

1600088696.1

264.    Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

265.    As set forth above, H Capital Defendants made representations to Plaintiffs on behalf of H Capital Defendants regarding H Capital's capabilities to satisfy its obligations under the PSA and close on the transaction.

266.    As set forth above, H Capital Defendants also made representations to Plaintiffs that certain funds required to close on the transaction were about to be sent, had been sent, or would imminently arrive and be made available for the closing.

267.    These representations were material.

268.    H Capital Defendants made these representations to Plaintiffs to induce Plaintiffs to enter into the PSA, and to induce Plaintiffs to forbear from exercising their remedies under the PSA.

269.    The representations made by H Capital Defendants to Plaintiffs were false.

270.    H Capital Defendants knew these misrepresentations were false when they made them.

271.    H Capital Defendants made these misrepresentations with the intent of inducing Plaintiffs to rely on them.

272.    H Capital Defendants made these representations wantonly, recklessly and/or maliciously.

273.    Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to enter into the PSA and, but for the misrepresentations, would not have entered into same.

274.    Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to forbear from exercising their remedies under the PSA and, but for the misrepresentations,

1600088696.1

would not have done so.

275.    H Capital Defendants' misrepresentations, and Plaintiffs' reliance on said misrepresentations, proximately caused Plaintiffs to suffer loss, injury and damages.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendants H Capital and Antong He, jointly and severally, as follows:

a.   Awarding Plaintiffs damages in an amount to be determined at trial;

b.   Awarding Plaintiffs their costs and attorneys' fees;

c.   (i) Enjoining any further transfer, assignment, encumbrance, or other disposition of funds from the Defendants' Accounts without further order of this Court; (ii) issuing a Pre-judgment Writ of Attachment on any depository accounts maintained by or for the benefit of Defendants H Capital and Antong He at the financial institutions identified in this Verified Complaint, including the Defendants' Accounts; (iii) requiring that Defendants H Capital and Antong He provide Plaintiffs with documents identifying the Defendants' Accounts, including the identity of the financial institution, the account number, the name of the account holder and a statement from the financial institution reflecting the account's current balance; and (iv) finding H Capital to be in contempt of Court for failing to comply with the prior orders and direction of this Court; and

d.   Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## **THIRD COUNT**
*(Fraud in the Inducement as to the Second Amendment)*

276.    Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs

of this Complaint, as if set forth at length herein.

277.    As set forth above, H Capital Defendants made representations to Plaintiffs on behalf of H Capital Defendants regarding H Capital's capabilities to satisfy its obligations under the PSA and close on the transaction.

278.    As set forth above, H Capital Defendants also made representations to Plaintiffs that certain funds required to close on the transaction were about to be sent, had been sent, or would imminently arrive and be made available for the closing.

279.    These representations were material.

280.    H Capital Defendants made these representations to Plaintiffs to induce Plaintiffs to enter into the Second Amendment, and to induce Plaintiffs to forbear from exercising their remedies under the PSA.

281.    The representations made by H Capital Defendants to Plaintiffs were false.

282.    H Capital Defendants knew these misrepresentations were false when they made them.

283.    H Capital Defendants made these misrepresentations with the intent of inducing Plaintiffs to rely on them.

284.    H Capital Defendants made these representations wantonly, recklessly and/or maliciously.

285.    Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to enter into the Second Amendment and, but for the misrepresentations, would not have entered into same.

286.    Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to forbear from exercising their remedies under the PSA, as amended, and, but for the

1600088696.1

misrepresentations, would not have done so.

287.    H Capital Defendants' misrepresentations, and Plaintiffs' reliance on said misrepresentations, proximately caused Plaintiffs to suffer loss, injury and damages.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendants H Capital and Antong He, jointly and severally, as follows:

a.    Awarding Plaintiffs damages in an amount to be determined at trial;

b.    Awarding Plaintiffs their costs and attorneys' fees;

c.    (i) Enjoining any further transfer, assignment, encumbrance, or other disposition of funds from the Defendants' Accounts without further order of this Court; (ii) issuing a Pre-judgment Writ of Attachment on any depository accounts maintained by or for the benefit of Defendants H Capital and Antong He at the financial institutions identified in this Verified Complaint, including the Defendants' Accounts; (iii) requiring that Defendants H Capital and Antong He provide Plaintiffs with documents identifying the Defendants' Accounts, including the identity of the financial institution, the account number, the name of the account holder and a statement from the financial institution reflecting the account's current balance; and (iv) finding H Capital to be in contempt of Court for failing to comply with the prior orders and direction of this Court; and

d.    Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## FOURTH COUNT
*(Fraud in the Inducement as to the Third Amendment)*

288.    Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs

1600088696.1

of this Complaint, as if set forth at length herein.

289.   As set forth above, H Capital Defendants made representations to Plaintiffs on behalf of H Capital Defendants regarding H Capital's capabilities to satisfy its obligations under the PSA and close on the transaction.

290.   As set forth above, H Capital Defendants also made representations to Plaintiffs that certain funds required to close on the transaction were about to be sent, had been sent, or would imminently arrive and be made available for the closing.

291.   These representations were material.

292.   H Capital Defendants made these representations to Plaintiffs to induce Plaintiffs to enter into the Third Amendment and to induce Plaintiffs to forbear from exercising their remedies under the PSA.

293.   H Capital Defendants also made these representations to Plaintiffs to induce Plaintiffs to agree to an extension of the Closing Date under the Third Amendment.

294.   The representations made by H Capital Defendants to Plaintiffs were false.

295.   H Capital Defendants knew these misrepresentations were false when they made them.

296.   H Capital Defendants made these misrepresentations with the intent of inducing Plaintiffs to rely on them.

297.   H Capital Defendants made these representations wantonly, recklessly and/or maliciously.

298.   Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to enter into the Third Amendment and, but for the misrepresentations, would not have entered into same.

299.    Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to forbear from exercising their remedies under the PSA, as amended, and, but for the misrepresentations, would not have done so.

300.    Plaintiffs relied on H Capital Defendants' misrepresentations when they agreed to extend the Closing Date under the Third Amendment and, but for the misrepresentations, would not have agreed to same.

301.    H Capital Defendants' misrepresentations, and Plaintiffs' reliance on said misrepresentations, proximately caused Plaintiffs to suffer loss, injury and damages.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendants H Capital and Antong He, jointly and severally, as follows:

a.    Awarding Plaintiffs damages in an amount to be determined at trial;

b.    Awarding Plaintiffs their costs and attorneys' fees;

c.    (i) Enjoining any further transfer, assignment, encumbrance, or other disposition of funds from the Defendants' Accounts without further order of this Court; (ii) issuing a Pre-judgment Writ of Attachment on any depository accounts maintained by or for the benefit of Defendants H Capital and Antong He at the financial institutions identified in this Verified Complaint, including the Defendants' Accounts; (iii) requiring that Defendants H Capital and Antong He provide Plaintiffs with documents identifying the Defendants' Accounts, including the identity of the financial institution, the account number, the name of the account holder and a statement from the financial institution reflecting the account's current balance; and (iv) finding H Capital to be in contempt of Court for failing to comply with the prior orders and

1600088696.1

direction of this Court; and

    d.   Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## FIFTH COUNT
### *(Fraud in the Inducement as to the Fourth Amendment)*

302.    Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

303.    As set forth above, H Capital Defendants made representations to Plaintiffs on behalf of H Capital Defendants regarding H Capital's capabilities to satisfy its obligations under the PSA and close on the transaction.

304.    As set forth above, H Capital Defendants also made representations to Plaintiffs that certain funds required to close on the transaction were about to be sent, had been sent, or would imminently arrive and be made available for the closing.

305.    These representations were material.

306.    H Capital Defendants made these representations to Plaintiffs to induce Plaintiffs to enter into the Fourth Amendment, and to induce Plaintiffs to forbear from exercising their remedies under the PSA.

307.    H Capital Defendants also made these representations to Plaintiffs to induce Plaintiffs to agree to an extension of the Closing Date under the Fourth Amendment.

308.    The representations made by H Capital Defendants to Plaintiffs were false.

309.    H Capital Defendants knew these misrepresentations were false when they made them.

310.    H Capital Defendants made these misrepresentations with the intent of inducing Plaintiffs to rely on them.

1600088696.1

311.   H Capital Defendants made these representations wantonly, recklessly and/or maliciously.

312.   Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to enter into the Fourth Amendment and, but for the misrepresentations, would not have entered into same.

313.   Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to forbear from exercising their remedies under the PSA, as amended, and, but for the misrepresentations, would not have done so.

314.   Plaintiffs relied on H Capital Defendants' misrepresentations when they agreed to extend the Closing Date under the Fourth Amendment and, but for the misrepresentations, would not have agreed to same.

315.   H Capital Defendants' misrepresentations, and Plaintiffs' reliance on said misrepresentations, proximately caused Plaintiffs to suffer loss, injury and damages.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendants H Capital and Antong He, jointly and severally, as follows:

a.   Awarding Plaintiffs damages in an amount to be determined at trial;

b.   Awarding Plaintiffs their costs and attorneys' fees;

c.   (i) Enjoining any further transfer, assignment, encumbrance, or other disposition of funds from the Defendants' Accounts without further order of this Court; (ii) issuing a Pre-judgment Writ of Attachment on any depository accounts maintained by or for the benefit of Defendants H Capital and Antong He at the financial institutions identified in this Verified Complaint, including the Defendants' Accounts; (iii) requiring that Defendants H Capital and

1600088696.1

Antong He provide Plaintiffs with documents identifying the Defendants' Accounts, including the identity of the financial institution, the account number, the name of the account holder and a statement from the financial institution reflecting the account's current balance; and (iv) finding H Capital to be in contempt of Court for failing to comply with the prior orders and direction of this Court; and

d. Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## SIXTH COUNT
*(Fraud in the Inducement as to the Fifth Amendment)*

316.    Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

317.    As set forth above, H Capital Defendants made representations to Plaintiffs on behalf of H Capital Defendants regarding H Capital's capabilities to satisfy its obligations under the PSA and close on the transaction.

318.    As set forth above, H Capital Defendants also made representations to Plaintiffs that certain funds required to close on the transaction were about to be sent, had been sent, or would imminently arrive and be made available for the closing.

319.    These representations were material.

320.    H Capital Defendants made these representations to Plaintiffs to induce Plaintiffs to enter into the Fifth Amendment, and to induce Plaintiffs to forbear from exercising their remedies under the PSA.

321.    The representations made by H Capital Defendants to Plaintiffs were false.

322.    H Capital Defendants knew these misrepresentations were false when they made

1600088696.1

them.

323.   H Capital Defendants made these misrepresentations with the intent of inducing Plaintiffs to rely on them.

324.   H Capital Defendants made these representations wantonly, recklessly and/or maliciously.

325.   Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to enter into the Fifth Amendment and, but for the misrepresentations, would not have entered into same.

326.   Plaintiffs relied on H Capital Defendants' misrepresentations when they decided to forbear from exercising their remedies under the PSA, as amended, and, but for the misrepresentations, would not have done so.

327.   H Capital Defendants' misrepresentations, and Plaintiffs' reliance on said misrepresentations, proximately caused Plaintiffs to suffer loss, injury and damages.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendants H Capital and Antong He, jointly and severally, as follows:

a.   Awarding Plaintiffs damages in an amount to be determined at trial;

b.   Awarding Plaintiffs their costs and attorneys' fees;

c.   (i) Enjoining any further transfer, assignment, encumbrance, or other disposition of funds from the Defendants' Accounts without further order of this Court; (ii) issuing a Pre-judgment Writ of Attachment on any depository accounts maintained by or for the benefit of Defendants H Capital and Antong He at the financial institutions identified in this Verified Complaint, including the Defendants' Accounts; (iii) requiring that Defendants H Capital and

1600088696.1

Antong He provide Plaintiffs with documents identifying the Defendants' Accounts, including the identity of the financial institution, the account number, the name of the account holder and a statement from the financial institution reflecting the account's current balance; and (iv) finding H Capital to be in contempt of Court for failing to comply with the prior orders and direction of this Court; and

d.  Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## SEVENTH COUNT
*(Breach of Duty of Good Faith and Fair Dealing)*

328.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

329.    All contracts are governed by an implied covenant of good faith and fair dealing.

330.    H Capital breached its duty of good faith and fair dealing by acting in bad faith with respect to its obligations under the PSA.

331.    H Capital acted in bad faith by, among other things, acting dishonestly and consistently misrepresenting its ability to perform its obligations under the PSA.

332.    H Capital further acted in bad faith by continuously frustrating Plaintiffs' efforts to obtain information from H Capital regarding the status of funds required to perform its obligations under the PSA.

333.    H Capital acted with an improper motive and injured the rights of Plaintiffs to receive their benefits and reasonable expectations under the PSA.

334.    The breach by H Capital of its duty of good faith has caused Plaintiffs significant harm and damage.

1600088696.1

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendant H Capital as follows:

a.  Awarding Plaintiffs damages in an amount to be determined at trial;

b.  Awarding Plaintiffs their costs and attorneys' fees;

c.  (i) Enjoining any further transfer, assignment, encumbrance, or other disposition of funds from the Defendants' Accounts without further order of this Court; (ii) issuing a Pre-judgment Writ of Attachment on any depository accounts maintained by or for the benefit of Defendant H Capital at the financial institutions identified in this Verified Complaint, including the Defendants' Accounts; (iii) requiring that Defendant H Capital provide Plaintiffs with documents identifying the Defendants' Accounts, including the identity of the financial institution, the account number, the name of the account holder and a statement from the financial institution reflecting the account's current balance; and (iv) finding H Capital to be in contempt of Court for failing to comply with the prior orders and direction of this Court; and

d.  Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## EIGHTH COUNT
*(Accounting – SP Plus and Metropolis Tennessee)*

335.  Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

336.  Supor Enterprises is equitably entitled to and demands a full and complete accounting from SP Plus and Metropolis Tennessee reflecting all funds collected by SP Plus and/or Metropolis Tennessee related to the Parking Lot, and all disbursements of such funds by SP Plus

and/or Metropolis Tennessee, from December 1, 2024.

337.    SP Plus and/or Metropolis Tennessee have full and complete control of this data.

**WHEREFORE**, Plaintiff Supor Enterprises respectfully requests that this Court enter judgment in its favor and against Defendants SP Plus and Metropolis Tennessee directing SP Plus and Metropolis Tennessee to provide Supor Enterprises with a full and complete accounting of all funds collected by SP Plus and/or Metropolis Tennessee related to the Parking Lot, and all disbursements of such funds by SP Plus and/or Metropolis Tennessee, from December 1, 2024.

## NINTH COUNT
*(Accounting – H Holdco, East One, Accordia, Antong He and Invictus)*

338.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

339.    Supor Enterprises is equitably entitled to and requests a full and complete accounting from H Holdco, East One, Accordia, Antong He, and Invictus reflecting all funds received by H Holdco, East One, Accordia, Antong He, and Invictus related to the Parking Lot from SP Plus, Metropolis Tennessee or otherwise, from December 1, 2024, as well as the disposition of such funds.

340.    H Holdco, East One, Accordia, Antong He, and Invictus have full and complete control of this data.

**WHEREFORE**, Plaintiff Supor Enterprises respectfully requests that this Court enter judgment in its favor and against Defendants H Holdco, East One, Accordia, Antong He, and Invictus:

a.    Directing H Holdco, East One, Accordia, Antong He, and Invictus to provide Supor Enterprises with a full and complete accounting reflecting all funds received by H Holdco, East One, Accordia, Antong He, and Invictus related to

1600088696.1

the Parking Lot from SP Plus, Metropolis Tennessee or otherwise, from

December 1, 2024, as well as the disposition of such funds;

b.  Awarding Supor Enterprises its costs and attorneys' fees; and

c.  Granting Plaintiffs such other and further relief as the Court deems equitable

and just.

## TENTH COUNT
*(Declaratory Judgment – H Holdco, East One, Accordia, Antong He and Invictus)*

341.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs

of this Complaint, as if set forth at length herein.

342.    H Holdco, East One, Accordia, Antong He, and Invictus have no legal or equitable

interest in the FER 1 Property, including the Parking Lot, or any income derived therefrom.

343.    H Holdco, East One, Accordia, Antong He, and Invictus have no legal or equitable

authority to provide any direction to SP Plus (or anyone else) regarding the FER 1 Property,

including the Parking Lot, or the income derived therefrom.

**WHEREFORE**, Plaintiff Supor Enterprises respectfully requests that this Court enter

judgment in its favor and against Defendants H Holdco, East One, Accordia, Antong He, and

Invictus:

a.  Declaring that H Holdco, East One, Accordia, Antong He, and Invictus (i)

have no legal or equitable interest in the FER 1 Property, including the Parking

Lot, or any income derived therefrom and (ii) have no legal or equitable

authority to provide any direction to SP Plus (or anyone else) regarding the FER

1 Property, including the Parking Lot, or the income derived therefrom;

b.  Declaring and directing that SP Plus and Metropolis Tennessee shall remit all

net revenue derived from the FER 1 Property, including the Parking Lot, to

1600088696.1

Supor Enterprises pending further order of this Court;

   c.  Awarding Supor Enterprises its costs and attorneys' fees; and

   d.  Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## **ELEVENTH COUNT**
*(Conversion – H Holdco, East One, Accordia, Antong He and Invictus)*

344.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

345.    Supor Enterprises is the rightful owner of the FER 1 Property, including the Parking Lot, and the income derived therefrom.

346.    H Holdco, East One, Accordia, Antong He and/or Invictus have no lawful interest in the FER 1 Property, including the Parking Lot, or any income derived therefrom.

347.    Nevertheless, H Holdco, East One, Accordia, Antong He and/or Invictus have interfered with Supor Enterprises' rights by exercising possession, control and dominion over income derived from the Parking Lot.

348.    H Holdco, East One, Accordia, Antong He and/or Invictus have also interfered with Supor Enterprises' rights by exercising possession, control and dominion over the FER 1 Property, including the Parking Lot, by directing SP Plus to take actions regarding the Parking Lot.

349.    Supor Enterprises has suffered damages as a direct and proximate cause of the actions of H Holdco, East One, Accordia, Antong He and/or Invictus.

**WHEREFORE**, Plaintiff Supor Enterprises respectfully requests that this Court enter judgment in its favor and against Defendants H Holdco, East One, Accordia, Antong He, and Invictus:

   a.  Awarding Supor Enterprises damages in an amount to be determined at trial;

    b.  Awarding Supor Enterprises pre-judgment interest as well as its costs and attorneys' fees; and

    c.  Granting Plaintiffs such other and further relief as the Court deems equitable and just.

**TWELFTH COUNT**

*(Unjust Enrichment – H Holdco, East One, Accordia, Antong He and Invictus)*

350.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

351.    Supor Enterprises is the rightful owner of the FER 1 Property, including the Parking Lot, and the income derived therefrom.

352.    H Holdco, East One, Accordia, Antong He and/or Invictus have no lawful interest in the FER 1 Property, including the Parking Lot, or any income derived therefrom.

353.    Nevertheless, H Holdco, East One, Accordia, Antong He and/or Invictus have received a benefit by exercising possession, control and dominion over income derived from the Parking Lot.

354.    Supor Enterprises expected and is entitled to the income from the Parking Lot that was diverted to H Holdco, East One, Accordia, Antong He and/or Invictus.

**WHEREFORE**, Plaintiff Supor Enterprises respectfully requests that this Court enter judgment in its favor and against Defendants H Holdco, East One, Accordia, Antong He, and Invictus:

    a.  Awarding Supor Enterprises damages in an amount to be determined at trial;

    b.  Awarding Supor Enterprises pre-judgment interest as well as its costs and attorneys' fees; and

    c.  Granting Plaintiffs such other and further relief as the Court deems equitable

1600088696.1

and just.

Respectfully submitted,

K&L Gates LLP

/s/Daniel M. Eliades
**K&L GATES LLP**
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq.
David S. Catuogno, Esq.
Benjamin I. Rubinstein, Esq.
*Special Counsel for the Debtors*

**FORMAN HOLT**
365 West Passaic Street
Suite 400
Rochelle Park, NJ 07662
Telephone: (201) 857-7110
Facsimile: (201) 665-6650
Michael E. Holt, Esq.
*Counsel for the Debtors*

Dated:  June 16, 2025

1600088696.1

**VERIFICATION**

Joseph Supor III, of full age, being duly sworn accordingly to law, upon his oath, deposes and says:

1.    I am a direct or indirect principal or beneficiary of each of the Plaintiffs in this action and I am authorized to submit this Verification on behalf of each Plaintiff.

2.    I have read the foregoing Verified Complaint and all of the allegations contained therein.  Except as to allegations alleged upon information and belief, which allegations I believe to be true, all of the allegations in the Verified Complaint are true based on my personal knowledge, the records of the Plaintiffs or information available through the employees and/or agents of the Plaintiffs.

3.    I note that certain various paragraphs of the Verified Complaint state conclusions of law; I do not verify as to the accuracy of those conclusions of law, but only as to the facts upon which those conclusions are based.

Joseph Supor III
Joseph Supor III

June 9, 2025

70